### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

```
-------------------------------------------------------x
                                     :
In re                                :    Chapter 11
                                     :
HALCÓN RESOURCES                     :    Case No. 16-11724 (___)
CORPORATION, et al.,                 :
                                     :    Joint Administration Requested
         Debtors.¹                   :
-------------------------------------------------------x
```

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) SCHEDULING COMBINED HEARING ON (A) ADEQUACY OF DISCLOSURE STATEMENT AND (B) CONFIRMATION OF PREPACKAGED PLAN; (II) FIXING DEADLINE TO OBJECT TO DISCLOSURE STATEMENT AND PREPACKAGED PLAN; (III) APPROVING PREPETITION SOLICITATION PROCEDURES AND FORM AND MANNER OF NOTICE OF COMMENCEMENT, COMBINED HEARING, AND OBJECTION DEADLINE; (IV) CONDITIONALLY (A) DIRECTING THE UNITED STATES TRUSTEE NOT TO CONVENE SECTION 341 MEETING OF CREDITORS AND (B) WAIVING REQUIREMENT OF FILING STATEMENTS OF FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES; AND (V) GRANTING RELATED RELIEF

Halcón Resources Corporation ("**Holdings**") and certain of its subsidiaries and

affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully

represent as follows in support of this motion (this "**Motion**"):

### Relief Requested

1.    By this Motion, pursuant to sections 105(a), 341, 1125, 1126, and 1128 of

title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 1007(b), 2002, 2003, 3016,

3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Halcón Resources Corporation (0684); Halcón Holdings, Inc. (5102); HK Resources, LLC (9194); The 7711 Corporation (4003); Halcón Gulf States, LLC (2976); Halcón Louisiana Operating, L.P. (9727); Halcón Field Services, LLC (0280); Halcón Energy Properties, Inc. (5292); Halcón Operating Co., Inc. (3588); Halcón Williston I, LLC (9550); Halcón Williston II, LLC (9676); Halcón Resources Operating, Inc. (4856); HRC Energy Louisiana, LLC (1433); HRC Energy Resources (WV), Inc. (2713); HRC Production Company (3501); Halcón Energy Holdings, LLC (0538); HRC Energy, LLC (5010); HK Energy, LLC (8956); HK Louisiana Operating, LLC (4549); HK Oil & Gas, LLC (0502); HK Energy Operating, LLC (8107); HRC Operating, LLC (5129).  The Debtors' mailing address is 1000 Louisiana Street, Suite 6700, Houston, Texas 77002.

**Rules**"), and Rules 1007-1, 3017-1, and 9006-1 of the Local Rules of Bankruptcy Practice and

Procedure of the United States District Court for the District of Delaware (the "**Local Rules**"),

the Debtors respectfully request entry of an order:

i.     scheduling a combined hearing (the "**Combined Hearing**") to (a) approve the *Proposed Disclosure Statement for Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation, et al. Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplement from time to time, the "**Disclosure Statement**[2]") and (b) consider confirmation of the *Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation, et al. Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplement from time to time, the "**Plan**[3]");

ii.     establishing the deadline (the "**Objection Deadline**") to object to the adequacy of the Disclosure Statement and confirmation of the Plan;

iii.     approving the Solicitation Procedures (as herein defined) with respect to the Plan, including the forms of Ballots (as herein defined);

iv.     approving the form and manner of the notice of the commencement of the Debtor' chapter 11 cases, the Combined Hearing and the Objection Deadline;

v.     conditionally (a) directing the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") not to convene an initial meeting of creditors under section 341(a) of the Bankruptcy Code (the "**341 Meeting**"), and (b) waiving the requirement that the Debtors file statements of financial affairs ("**SOFAs**"), schedules of assets and liabilities ("**Schedules**"); and

vi.     granting related relief.

2.     A proposed form of order granting the relief requested herein is annexed

hereto as **<u>Exhibit A</u>** (the "**Scheduling Order**").

---

[2] A copy of the Disclosure Statement (with the Plan annexed as an exhibit thereto) has been filed contemporaneously with this Motion.

[3] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan.

WEIL:\95674135\18\51351.0003

3.      Below is a table highlighting the key dates relevant to the Solicitation

Procedures and setting forth the Debtors' proposed dates for the mailing of the Combined Notice

(as defined below), the Objection Deadline, and the Combined Hearing.

| Event | Date/Deadline |
|---|---|
| Voting Record Date | June 13, 2016 |
| Commencement of Solicitation | June 20, 2016 |
| Voting Deadline | July 20, 2016, at 5:00 p.m. (Prevailing Eastern Time) |
| Plan/Disclosure Statement Objection Deadline | August 29, 2016, at 5:00 p.m. (Prevailing Eastern Time) |
| Plan/Disclosure Statement Reply Deadline | September 5, 2016, at 5:00 p.m. (Prevailing Eastern Time) |
| Combined Hearing | September 8, 2016, at _:00 a/p.m. (Prevailing Eastern Time) |

4.      Also, summarized below are the attachments and exhibits cited throughout

this Motion:

| Pleading | Exhibit |
|---|---|
| Proposed Scheduling Order | Exhibit A to this Motion |
| Combined Notice | Exhibit 1 to the Proposed Scheduling Order |
| Ballots | |
| Forms of Master Ballot for Third Lien Note Claims, Unsecured Note Claims, and Preferred Stock Interests | Exhibits B-1 through B-3 to this Motion |
| Forms of Beneficial Ballot for Third Lien Note Claims, Unsecured Note Claims and Preferred Stock Interests | Exhibits B-4 through B-6 to this Motion |
| Form of Convertible Note Claim Ballot | Exhibit B-7 to this Motion |

## Jurisdiction

5.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware dated February 29, 2012.  This is a core proceeding pursuant

to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of

a final order by the Court in connection with this Motion to the extent that it is later determined

that the Court, absent consent of the parties, cannot enter final orders or judgments consistent

3

with Article III of the United States Constitution.  Venue is proper before the Court pursuant to

28 U.S.C. §§ 1408 and 1409.

**Background**

6.       On the date hereof (the "**Petition Date**"), each of the Debtors commenced

with the Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue

to operate their businesses and manage their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory

committee of creditors has been appointed in these chapter 11 cases.

7.       Contemporaneously herewith, the Debtors have filed a motion requesting

joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

8.       The Debtors are pleased to be before the Court with a prepackaged chapter

11 plan of reorganization (the "**Plan**") that has been accepted by each class of voting creditors

and interest holders, which will enable them to leave their business intact and substantially de-

levered, providing for the reduction of approximately $1.8 billion of the Debtors' existing net

debt and approximately $200.0 million of the Debtors' annual cash interest expense upon the

completion of the restructuring.  Through extensive negotiations over the past several months,

the Debtors built consensus around the terms of a comprehensive financial restructuring, which

culminated in the Debtors entering into a Restructuring Support Agreement, dated June 9, 2016

(together with all exhibits and attachments thereto, the "**Restructuring Support Agreement**")

with holders of (i) approximately 83% of the outstanding principal amount of the Debtors' senior

secured third lien notes, (ii) approximately 61% of the outstanding principal amount of the

Debtors' senior unsecured notes, (iii) 100% of the outstanding principal amount of the Debtors'

senior unsecured convertible note, and (iv) approximately 63% of the Debtors' perpetual

4

convertible Series A preferred stock (collectively, the "**Consenting Creditors**" and, together with the Debtors, the "**Plan Support Parties**")*.*

9.      In addition to the support of the Consenting Creditors, the Debtors are commencing these chapter 11 cases with the support of holders of over 51% of the outstanding principal amount of the Debtors' senior secured second lien notes, which will be reinstated under the Plan, and a commitment from the lenders under their senior revolving credit agreement to provide debtor-in-possession financing that will convert to an exit facility upon emergence from chapter 11.

10.      In accordance with the terms of the Restructuring Support Agreement, the Debtors commenced solicitation of the Plan on June 20, 2016, and the Plan received overwhelming and wide-spread support.  Specifically, the Debtors received sufficient levels of support from each voting class of impaired creditors and interest holders to support confirmation of the Plan.  Pursuant to the Plan, the Debtors are proposing a restructuring, with the support of each of the voting classes of claims and interests and certain other interested parties, that, among other things, provides the following:

- An agreement with the Debtors' first lien revolving credit agreement lenders to provide financing during the chapter 11 cases in the form of a $600 million debtor-in-possession financing facility that will convert to an exit facility upon emergence from chapter 11;

- Reinstatement of the Debtors' senior secured second lien notes;

- Conversion of the Debtors' senior secured third lien notes into a pro rata share of approximately 76.5% of the equity in Reorganized Holdings (as defined in the Plan), together with a cash payment of approximately $33.8 million;

- Conversion of the Debtors' senior unsecured notes into a pro rata share of approximately 15.5% of the equity in Reorganized Holdings, warrants to purchase an additional 4.0% of the new equity in Reorganized Holdings, and approximately $37.6 million in cash;

5

- Conversion of the Debtors' convertible note into approximately 4.0% of the equity in Reorganized Holdings, warrants to purchase an additional 1.0% of the new equity in Reorganized Holdings, and $15.0 million in cash;

- Payment in full, in the ordinary course, of the Debtors' trade and other general unsecured creditors;

- Full and final satisfaction of the Debtors' perpetual convertible Series A preferred stock for $11.1 million in cash to be distributed pro rata to the holders of such interests; and

- Full and final satisfaction of the Debtors' existing common equity for approximately 4.0% of the equity in Reorganized Holdings to be distributed pro rata to the holders of such interests.

11.    Additional information regarding the circumstances leading to the commencement of these chapter 11 cases and information regarding the Debtors' business and capital structure is set forth in the *Declaration of Stephen W. Herod in Support of the Debtors' Chapter 11 Petitions and Related Requests for Relief* (the "**Herod Declaration**"), which has been filed contemporaneously herewith and is incorporated herein by reference.

## Basis for Relief Requested

### A.    Scheduling a Combined Hearing

12.    The Debtors seek a Combined Hearing to consider approval of the Disclosure Statement and the Plan.  In order to meet the timeline set forth in the Restructuring Support Agreement, an order confirming the Plan must be entered no later than forty-five (45) days after the Petition Date.  Accordingly, the Debtors request that the Combined Hearing be held, subject to the Court's schedule, on September 8, 2016 (the "**Combined Hearing Date**"). This request is consistent with the practice for prepackaged cases in this District, applicable statutes, and rules, and will facilitate an expeditious reorganization on a schedule consistent with the dates set forth in the Restructuring Support Agreement.  The Debtors further request that the

6

Scheduling Order provide that the Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or at the Combined Hearing and that notice of such adjourned date(s) will be available on the electronic case filing docket.

13.    Bankruptcy Rules 2002(b) and 3017(a) require twenty-eight (28) days' notice be given by mail to all creditors of the time fixed for filing objections to approval of a disclosure statement or confirmation of a plan of reorganization, subject to the Court's discretion to shorten such period under Bankruptcy Rule 9006(c)(1).  Section 1128(a) of the Bankruptcy Code provides, "[a]fter notice, the court shall hold a hearing on confirmation of a plan."  In addition, Bankruptcy Rule 3017(c) provides, "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation."  Section 105(d)(2)(B)(vi) of the Bankruptcy Code provides that the Court may combine the hearing on approval of a disclosure statement with the hearing on confirmation of the related plan.  11 U.S.C. § 105(d)(2)(B)(vi).

14.    The most sensitive and difficult task required to effectuate a successful reorganization—the negotiation of consensual agreements with critical creditor constituencies— has already been concluded in advance of the Petition Date.  Likewise, the most critical and complex task required to effectuate a successful reorganization—the negotiation, formulation and solicitation of a chapter 11 plan of reorganization—has already been accomplished.  Accordingly, a Combined Hearing in these chapter 11 cases would promote judicial economy and would allow the Debtors to expeditiously effectuate their restructuring and preserve value.  The adverse effects of the chapter 11 filings upon the Debtors' businesses and going-concern

value will be minimized, and the benefit to creditors maximized, through prompt distributions to holders of claims against, and interests in, the Debtors.  Likewise, an expeditious restructuring will serve to minimize administrative expenses of the estates.  Such benefits are the hallmarks of a prepackaged plan of reorganization.  In addition to the reasons set forth above, it is appropriate to enter the Scheduling Order at this time so that parties in interest may be informed as promptly as possible of the anticipated schedule of events for confirmation of the Plan.

15.     The proposed schedule affords creditors, interest holders and all other parties in interest ample notice of these chapter 11 cases and the Combined Hearing.  Specifically, the proposed schedule affords more than forty-two (42) days after notice of the Confirmation Hearing for parties to evaluate their rights in respect of the Plan prior to the proposed Combined Hearing thereon and, therefore, no party in interest will be prejudiced by the requested relief.[4]

16.     Therefore, the Debtors respectfully request entry of the Scheduling Order, pursuant to section 105(d)(2)(B)(vi) of the Bankruptcy Code, setting September 8, 2016, as the date for the Combined Hearing.

**B.      Approval of the Disclosure Statement**

17.     At the Combined Hearing, the Debtors will seek approval of the Disclosure Statement.  Under Bankruptcy Code section 1125, a plan proponent must provide holders of impaired claims with "adequate information" regarding a debtor's proposed plan of reorganization, which is defined as:

> information of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the
> debtor and the condition of the debtor's books and records,

---

[4] *See* Local Rule 3017-1 (requiring the hearing date on a disclosure statement to be at least thirty-five (35) days following service thereof).

WEIL:\95674135\18\51351.0003

> including a discussion of the potential material Federal tax
> consequences of the plan to the debtor, any successor to the debtor,
> and a hypothetical investor typical of the holders of claims or
> interests in the case, that would enable such hypothetical investor
> of the relevant class to make an informed judgment about the plan

11 U.S.C. § 1125(a)(1).

18.     Whether a disclosure statement contains adequate information is intended

by Congress to be a flexible, fact-specific inquiry left within the discretion of the bankruptcy

court:

> Precisely what constitutes adequate information in any particular
> instance will develop on a case-by-case basis.  Courts will take a
> practical approach as to what is necessary under the circumstances
> of each case, such as the cost of preparation of the statements, the
> need for relative speed in solicitation and confirmation, and, of
> course, the need for investor protection.  There will be a balancing
> of interests in each case.   In reorganization cases, there is
> frequently great uncertainty.  Therefore the need for flexibility is
> greatest.

H.R. Rep. 95-595, at 409 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6365.  *See also Oneida*

*Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (observing that

"adequate information will be determined by the facts and circumstances of each case"); *Tex.*

*Extrusion Corp. v. Lockheed Corp. (In re Tex.  Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir.

1988) (opining that what constitutes adequate information is "subjective," "made on a case-by-

case basis," and "largely in the discretion of the bankruptcy court").

19.     The Disclosure Statement is extensive and comprehensive.  It contains

descriptions of, among other things: (i) the Plan; (ii) the operation of the Debtors' businesses;

(iii) key events leading to the commencement of these chapter 11 cases; (iv) the Debtors'

significant prepetition indebtedness; (v) the proposed capital structure of the Reorganized

Debtors; (vi) financial information and valuations that would be relevant to creditors'

determinations of whether to accept or reject the Plan; (vii) a liquidation analysis setting forth the

9

estimated return that holders of claims and interests would receive in a hypothetical chapter 7 liquidation; (viii) risk factors affecting the Plan; and (ix) federal tax law consequences of the Plan.

20.    Based on the foregoing, the Debtors will request at the Combined Hearing that this Court approve the Disclosure Statement as meeting the requirements for "adequate information" under Bankruptcy Code section 1125(a).

## C.    Approval of the Solicitation Procedures and Forms of Solicitation Materials

21.    The Debtors also request that the Court approve the solicitation, balloting, tabulation, and related activities undertaken in connection with the Plan, all of which were commenced and completed by the Debtors prior to the Petition Date (collectively, the "**Solicitation Procedures**").  As set forth below, the Debtors submit that the Solicitation Procedures comply with the various applicable provisions of the Bankruptcy Rules and Bankruptcy Code and should be approved.

### 1.    Non-Solicitation of Classes Presumed to Accept or Deemed to Reject the Plan

22.    The Plan provides that specific Classes of claims against, and interests in, the Debtors are presumed to accept or deemed to reject the Plan (collectively, the "**Non-Voting Holders**").  Specifically, the Plan provides that holders of claims and equity interests in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Credit Agreement Claims), Class 4 (Second Lien Note Claims), Class 8 (General Unsecured Claims), Class 9 (Intercompany Claims), and Class 10 (Intercompany Interests) are unimpaired.  Pursuant to Bankruptcy Code section 1126(f), each holder of a claim or interest in an unimpaired class is "conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class . . . is not required." 11 U.S.C. § 1126(f).  Accordingly, holders of claims and equity

WEIL:\95674135\18\51351.0003

interests in each of the above-mentioned unimpaired Classes are conclusively presumed to accept the Plan and were not solicited.

23.     Section 1126(g) of the Bankruptcy Code provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the Plan on account of such claims or interests." 11 U.S.C. § 1126(g).  The holders of claims in Class 13 (Section 510(b) Claims) are not entitled to any distribution or to retain any property pursuant to the Plan.  Additionally, although the holders of Existing Equity Interests in Class 12 are receiving a small equity interest in the Reorganized Debtors as a part of the settlement and compromises under the Plan, and as agreed to and accepted by each of the impaired voting Classes under the Plan, the holders of such existing common equity interests are conclusively "out of the money" and are not entitled to any distribution or to retain any property pursuant to the Plan.  Accordingly, pursuant to section 1126(g) of the Bankruptcy Code, such holders of claims and interests are conclusively deemed to have rejected the Plan and, thus, are not entitled to vote.  Accordingly, the Debtors have not solicited votes from such holders.

24.     The Debtors are requesting a waiver of the requirement that they mail copies of the Plan and Disclosure Statement to holders of claims and equity interests presumed to accept or deemed to reject the Plan, including the holders of Existing Equity Interests in Class 12.  *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders).  The Debtors submit that Bankruptcy Rule 3017(d) does not apply here because the Debtors solicited acceptances and rejections of the Plan on a prepetition basis, and, thus, there is no disclosure statement that was "approved by the court" to transmit.  Alternatively, the Court should order

WEIL:\95674135\18\51351.0003

that the Debtors are not required to provide those materials to unimpaired Classes.  Moreover, it would be a significant and unnecessary administrative burden on the Debtors to transmit the Disclosure Statement and Plan to holders of claims or interests that have been deemed to accept or reject the Plan.

25.     In lieu of furnishing each of the Non-Voting Holders with a copy of the Plan and Disclosure Statement, the Debtors propose to send to such Non-Voting Holders the Combined Notice, which sets forth a summary of the Plan and the treatment of such Non-Voting Holders Claims or Interests and sets forth the manner in which a copy of the Prepackaged Plan and the Disclosure Statement may be obtained.  In addition, the Debtors have made the Disclosure Statement and the Plan available at no cost on the website of the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC (the "**Voting Agent**") at (http://dm.epiq11.com/Halcon).

26.     The Solicitation Procedures undertaken by the Debtors and described herein with respect to the Non-Voting Holders comply with the Bankruptcy Code and should be approved.  Accordingly, the Debtors respectfully request that the Court approve the Solicitation Procedures with respect to these Classes.

**2.     Solicitation of Impaired Classes Entitled to Vote to Accept or Reject the Plan**

27.     Three Classes of claims and one class of equity interests are impaired and were entitled to vote to accept or reject the Plan—Class 5 (Third Lien Note Claims), Class 6 (Unsecured Note Claims), and Class 7 (Convertible Note Claims) and Class 11 (Preferred Stock Interests) (collectively, the "**Voting Classes**").

28.     On June 20, 2016, the Debtors commenced soliciting votes from members of the Voting Classes by transmitting copies of the solicitation package containing the Disclosure Statement, including the Plan and other exhibits thereto, a cover letter from the Debtors, and one

or more ballots (the "**Ballots**"), as applicable, to each holder of an impaired claim or equity

interest entitled to vote on the Plan (*i.e.*, the Third Lien Note Claims, Unsecured Note Claims,

Convertible Note Claims, and Preferred Stock Interests) (the "**Solicitation Package**") via first

class mail.

        29.     The Solicitation Package advised recipients, among other things, that the

deadline for submitting a Ballot containing a vote to accept or reject the Plan was July 20, 2016

at 5:00 p.m. (Prevailing Eastern Time) (the "**Voting Deadline**").  The Solicitation Package

further advised recipients that Ballots must be returned to the Voting Agent, and specified that

Ballots must be returned by regular mail, hand delivery, or overnight courier to an address

specified on the Ballot.  Each Ballot also contained detailed instructions on how to complete it

and how to make any applicable elections contained therein.

        30.     Moreover, the materials in the Solicitation Package established and

communicated how the Voting Agent would tabulate the votes and elections contained in the

Ballot.  Those tabulation rules provided, among other things, that: (i) a timely properly

completed Ballot submitted by a holder of claims in a Voting Class superseded and revoked any

prior Ballot(s) submitted by that holder; (ii) Ballots that attempt to partially accept and partially

reject the Plan would not be counted; (iii) illegible Ballots would not be counted; (iv) Ballots

containing insufficient information to identify the claimant would not be counted; (v) any form

of ballot other than the official form of Ballot sent by the Voting Agent would not be counted;

and (vi) Ballots received after the Voting Deadline (provided that the Voting Deadline has not

been extended) would not be counted.  As specified on the Ballot, any Ballot that was otherwise

properly completed, executed and timely returned to the Voting Agent, but did not indicate an

acceptance or rejection of the Plan, or that indicated both an acceptance and rejection of the Plan would not be counted as a vote in determining acceptance or rejection of the Plan.

### 3.    Form of Ballot

31.    Bankruptcy Rule 3017(d) requires that the Debtors use a form of ballot substantially conforming to Official Form No. 14.  The Ballots, copies of which are annexed as **Exhibits B-1 through B-7** to this Motion, are based on Official Form No. 14, but were modified to address the particular aspects of these chapter 11 cases and to be relevant and appropriate for each Voting Class.  With respect to the Voting Classes, the Debtors distributed seven forms of Ballots: (i) three forms of Ballots for beneficial owners holding Third Lien Note Claims, Unsecured Note Claims or Preferred Stock Interests through a nominee or as record holder in its own name (each, a "**Beneficial Owner Ballot**"); (ii) three forms of Ballot for a nominee that is the registered holder of Third Lien Note Claims, Unsecured Note Claims or Preferred Stock Interests (or agent thereof) to transmit the votes of one or more beneficial owners (the "**Master Ballot**"); and (iii) a form of Ballot for the holder of Convertible Note Claims.  As set forth above, to be counted as votes to accept or reject the Plan, the Ballots were required to be properly executed, completed, and delivered to the Voting Agent so that they were received no later than the Voting Deadline; *provided, however*, that beneficial holders of Third Lien Note Claims, Unsecured Note Claims or Preferred Stock Interests who received a Beneficial Owner Ballot from a bank or brokerage firm (or its agent) were advised to return the Beneficial Owner Ballot to such intermediary firm (or its agent) with sufficient time for such intermediary to complete and return the Master Ballot to the Voting Agent prior to the Voting Deadline.  In addition, each of the Ballots was specifically designed to conform to the Plan.

14

4.    **Compliance with Non-Bankruptcy Securities Laws**
      **Applicable to Prepetition Solicitation**

32.    Bankruptcy Code section 1126(b) expressly permits a debtor to solicit votes from holders of claims and equity interests prepetition without a court-approved disclosure statement if the solicitation complies with applicable non-bankruptcy law—including generally applicable federal and state securities laws or regulations—or, if no such laws exist, the solicited holders receive "adequate information" within the meaning of Bankruptcy Code section 1125(a).

33.    The Solicitation Procedures comply with all applicable non-bankruptcy laws governing the adequacy of disclosure in connection with the solicitation. The Debtors' prepetition Solicitation Procedures are exempt from registration pursuant to section 4(a)(2) and Regulation D of the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa (as amended from time to time, the "**Securities Act**") and under state "Blue Sky" laws, or any similar rules, regulations, or statutes. Specifically, Section 4(a)(2) of the Securities Act creates an exemption from the registration requirements under the Securities Act for transactions not involving a "public offering." *See* Securities Act, 15 U.S.C. § 77(d)(a)(2); *see also* § 77(R)(a)(1)(a), (b)(4)(F) (exempting transactions covered by the public offering exception from Blue Sky laws). The Debtors have complied with the requirements of Section 4(a)(2) of the Securities Act and Regulation D thereunder, as the prepetition solicitation of acceptances would constitute a private placement of securities. The solicitation on the Plan with respect to the holders of Third Lien Note Claims and Unsecured Note Claims was made only to those creditors who were Accredited Investors as defined in Rule 501 of the Securities Act; *provided, however*, that all holders of Allowed Third Lien Note Claims and Allowed Unsecured Note Claims will be entitled to receive distributions under the Plan. *See, e.g.*, Regulation D, 17 C.F.R. § 230.506 (deeming a transaction a non-public offering under section 4(a)(2) of the Securities Act if the transaction only involves

accredited investors, provided certain other conditions are satisfied).  Therefore, the requirements

of section 1126(b)(1) of the Bankruptcy Code are inapplicable to the Debtors' prepetition

solicitation,

    34.  Accordingly, the Debtors respectfully submit that the Solicitation

Procedures satisfy Bankruptcy Code section 1126(b)(2) because all holders in the Voting Classes

received "adequate information" as that term is used in Bankruptcy Code section 1125(a) and,

accordingly, the Solicitation Procedures should be approved.

    **5.**  **Voting Record Date and Voting Deadline**

    35.  Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting

votes in connection with the confirmation of a plan of reorganization, "creditors and equity

security holders shall include holders of stock, bonds, debentures, notes and other securities of

record on the date the order approving the disclosure statement is entered or another date fixed

by the court, for cause, after notice and a hearing." Fed R. Bankr. P. 3017(d).  Bankruptcy

Rule 3018(a) contains a similar provision regarding determination of the record date for voting

purposes.  Bankruptcy Rule 3018(b) provides, among other things, that prepetition acceptances

or rejections of a plan are valid only if the plan was "transmitted to substantially all creditors and

equity security holders of the same class" and that the time for voting was not "unreasonably

short."

    36.  The Solicitation Packages were distributed to all holders of claims and

equity interests in the Voting Classes as of June 13, 2016 (the "**Voting Record Date**").  The

Voting Record Date and the Voting Deadline were clearly identified in the Disclosure Statement

and each of the Ballots.

    37.  All holders of claims and equity interests in the Voting Classes had

adequate time to consider the materials in the Solicitation Packages.  As an initial matter, the

Plan Support Parties, who represent over a majority in amount of each of the Voting Classes,

played an instrumental role in negotiating the terms of the Plan and Disclosure Statement with

the Debtors and certain other key constituencies over a period of several months.  Through their

participation in that process, the Plan Support Parties had ample time to extensively review the

Plan and Disclosure Statement, whether directly, or through their professional advisors.  Given

these circumstances and the fact that the Voting Deadline was approximately thirty (30) days

after the commencement of solicitation, the Debtors submit that the members of the Voting

Classes had a sufficient amount of time to make an informed decision to accept or reject the

Plan.

**D.**     **Confirmation of the Plan**

38.     The Debtors believe that the Plan satisfies all of the requirements for

confirmation under the Bankruptcy Code.  As noted above, the Debtors have requested that the

Court schedule the Combined Hearing, at which time the Debtors will seek confirmation of the

Plan.  Before the Combined Hearing, the Debtors will file a brief in support of confirmation that,

among other things, (i) demonstrates that the Plan satisfies the requirements for plan

confirmation set forth in Bankruptcy Code section 1129 and (ii) responds to objections to

confirmation, if any.

**E.**     **Deadline and Procedures for Objections to the**
         **Disclosure Statement and Confirmation of the Prepackaged Plan**

39.     Bankruptcy Rule 3017(a) authorizes the Court to fix a time for filing

objections to the adequacy of a disclosure statement and Bankruptcy Rule 3020(b)(1) authorizes

the Court to fix a time for filing objections to a plan of reorganization.  Further, Bankruptcy Rule

2002(b) requires at least twenty-eight (28) days' notice be given by mail to all creditors of the

time fixed for filing objections to approval of a disclosure statement and confirmation of a plan of reorganization.

40.    The Debtors request that the Court set August 29, 2016, at 5:00 p.m. (Prevailing Eastern Time), as the deadline to file objections to the adequacy of the Disclosure Statement or confirmation of the Plan (the "**Objection Deadline**").  The proposed Objection Deadline will provide creditors and equity interest holders with sufficient notice of the deadline for filing objections to the Disclosure Statement and Plan, while still affording the Debtors and any parties in interest time to file a responsive brief and resolve consensually as many of those objections as possible.

41.    The Debtors further request that the Court direct that any responses or objections to the adequacy of the Disclosure Statement or confirmation of the Plan must: (i) be in writing; (ii) conform to the applicable Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof; and (iv) be filed with the Court, together with proof of service.  In addition to being filed with the Court, any such responses or objections must be served on the following parties so as to be received by the Objection Deadline: (i) the Debtors, c/o Halcón Resources Corporation, 1000 Louisiana Street, Suite 6700, Houston, TX 77002 (Attn: David S. Elkouri, Esq. (delkouri@halconresources.com)); (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Gary T. Holtzer, Esq. (gary.holtzer@weil.com) and Joseph H. Smolinsky, Esq.( joseph.smolinsky@weil.com)), counsel to the Debtors; (iii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 100 North King Street, Wilmington, DE 19801 (Attn: Robert S. Brady, Esq.(rbrady@ycst.com) and Jaime Luton Chapman, Esq. (jchapman@ycst.com)), co-counsel to the Debtors; (iv) the U.S. Trustee, J. Caleb Boggs Federal

18

Building, 844 North King Street, Suite 2207, Wilmington, DE 19801 (Attn: Natalie Cox, Esq. (Natalie.Cox@usdoj.gov) and Mark Kenney, Esq. (Mark.Kenney@usdoj.gov)); (v) Simpson Thatcher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017 (Attn: Elisha D. Graff, Esq. (egraff@stblaw.com)), counsel to JPMorgan Chase Bank, N.A., as administrative agent under the Revolving Credit Facility Agreement, dated as of February 8, 2012; (vi) Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022 (Attn: Richard A. Levy, Esq. (richard.levy@lw.com) and J. Michael Chambers, Esq. (michael.chambers@lw.com)), counsel to the Consenting Third Lien Noteholders; (vii) O'Melveny & Myers LLP, 7 Times Square, New York, NY 10036 (Attn: John J. Rapisardi, Esq. (jrapisardi@omm.com) and Joseph Zujkowski, Esq. (jzujkowski@omm.com)), counsel to the ad hoc group of Second Lien Noteholders; (viii) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Andrew N. Rosenberg, Esq. (arosenberg@paulweiss.com) and Samuel E. Lovett, Esq. (slovett@paulweiss.com)), counsel to the Consenting Unsecured Noteholders; and (ix) Jones Day, 2727 North Harwood Street, Dallas, TX 75201 (Attn: Gregory M. Gordon, Esq. (gmgordon@JonesDay.com) and Dan Prieto, Esq. (dbprieto@jonesday.com)), counsel to the Convertible Noteholder.

42.     The Debtors further request that they be authorized to file replies to any objections or responses to confirmation received by the Objection Deadline by September 5, 2016.

**F.    Approval of Form and Manner of Notice of the Commencement of the Chapter 11 Cases, the Combined Hearing, and the Objection Deadline**

43.     The Debtors propose to mail (or cause to be mailed) within two (2) business days of the entry of the Scheduling Order or as soon as reasonably possible thereafter, to all known holders of claims against and interests in the Debtors a notice (the "**Combined**

Notice"), substantially in the form annexed as **Exhibit 1** to the Scheduling Order, setting forth, among other things, (i) the notice of commencement of the Debtors' chapter 11 cases, (ii) the date, time, and place of the Combined Hearing, (iii) instructions for obtaining copies of the Disclosure Statement and Plan, (iv) the Objection Deadline and procedures for filing objections to the adequacy of the Disclosure Statement and/or confirmation of the Plan, and (v) a summary of the Plan.

44.     The Debtors propose to send the Combined Notice to holders of Second Lien Note Claims, Third Lien Note Claims, Unsecured Note Claims and Preferred Stock Interests as reflected in the records maintained by the Debtors' transfer agent(s) or trustee(s) as of the close of business on the Record Date.  The Debtors realize, however, that the records maintained by such transfer agent(s) or trustee(s) reflect the brokers, dealers, commercial banks, trust companies, or other agents or nominees (collectively, "**Nominees**") through which the beneficial owners hold the various securities.  Accordingly, the Debtors request that the Court authorize (i) the Debtors to provide the Nominees with sufficient copies of the Combined Notice to forward to the beneficial holders and (ii) the Nominees to forward the Combined Notice or copies thereof to the beneficial holders within five (5) business days of the receipt by such Nominee of the Combined Notice.  To the extent the Nominees incur out-of-pocket expenses in connection with distribution of the Combined Notice, the Debtors request authority to reimburse such entities for their reasonable and customary expenses incurred in this regard.

45.     Bankruptcy Rule 2002(f)(1) provides that notice of "the order for relief" shall be sent by mail to all creditors.  Bankruptcy Rule 2002(d) similarly provides that, unless otherwise ordered by the court, notice of the "order for relief" shall be given to all of the Debtors' equity security holders.

WEIL:\95674135\18\51351.0003

46.     In addition, Bankruptcy Rule 2002(1) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  The Debtors request that the Court authorize them, in their sole discretion, to provide supplemental publication notice of the Combined Hearing not less than fourteen (14) days prior to the Combined Hearing Date in the *Houston Chronicle* and the national edition of *USA Today*, and any other trade or other publications the Debtors deem prudent in their sole discretion.  The Debtors believe that the publication of certain of the contents of the Combined Notice in this manner would provide sufficient notice of the date, time, and place of the Combined Hearing and the Objection Deadline (and related procedures) to persons who do not otherwise receive the Combined Notice by mail.  Accordingly, the Debtors respectfully request that this Court approve the form and manner of service of the Combined Notice in the foregoing manner.

47.     To provide another layer of notice to parties in interest in these cases, the Debtors will propose to post to the Voting Agent's website various chapter 11 documents, including the following: (i) the Plan, (ii) the Disclosure Statement, (iii) this Motion and any orders entered in connection with this Motion, and (iv) the Combined Notice.  Moreover, notice of commencement of the Debtors' chapter 11 cases will be filed with the Securities and Exchange Commission on Form 8-K and, thus, will be available to interested parties through the Securities and Exchange Commission's EDGAR website.

48.     The proposed service of the Combined Notice will provide sufficient notice to all parties in interest in the Debtors' chapter 11 cases of the commencement of such cases, the date, time, and place of the Combined Hearing, and the procedures for objecting to the adequacy of the Disclosure Statement or the confirmation of the Plan.  In addition, the

21

Publication Notice will provide sufficient notice to person who did not otherwise receive notice pursuant to the Combined Notice.

**G.     The Second Lien Note Prepetition Negotiations,
          Support Agreement, and Proposed Amendment**

49.     As described in further detail in the Herod Declaration, in connection with their prepetition discussions with certain of the Second Lien Noteholders that approached the Debtors, the Debtors have agreed, subject to the occurrence of the Effective Date of the Plan, to commence a solicitation for consents to a proposed amendment to certain provisions of the Second Lien Indentures on or reasonably following the Effective Date but in no event later than 30 days following the Effective Date (the "**Proposed Second Lien Amendment**").  To effectuate this commitment, the Debtors and holders of more than 51% of the aggregate principal amount of Second Lien Notes, including the members of the Second Lien Ad Hoc Group, entered into a support agreement, dated July 22, 2016 (the "**Second Lien Support Agreement**").

50.     If agreed to by the requisite holders of Second Lien Notes, the Proposed Second Lien Amendment would, among other things, tighten certain covenants and restrictions under the Second Lien Indentures with respect to the Debtors' ability to incur additional indebtedness, grant new liens and make payments on account of junior indebtedness.  In exchange for agreeing to support the Plan and any transaction contemplated thereby, the Debtors have agreed to pay to each holder of Second Lien Notes that agrees to the Proposed Second Lien Amendment and is either party to the Second Lien Support Agreement or does not object or take any action in contravention to the Plan a consent fee equal to 1.25% of the aggregate principal amount of such holder's outstanding Second Lien Notes subject to the occurrence of the Effective Date of the Plan and, with respect to the 8.625% Second Lien Notes, the effectiveness

WEIL:\95674135\18\51351.0003

of the Second Lien Amendment.  The Debtors have further agreed to pay the professional fees of the advisors to the ad hoc group of Second Lien Noteholders up to a capped amount of $500,000.

51.    The terms of the Proposed Second Lien Amendment and the proposed post-Effective Date solicitation will be set forth in the Combined Notice; however, the Debtors are not seeking any relief from the Court with respect to the Proposed Second Lien Amendment or the Second Lien Support Agreement.

**H.    Extension and Conditional Waiver of the
341 Meeting and the Filing of SOFAs and Schedules**

52.    The Debtors also request that the Scheduling Order provide that: (i) the 341 Meeting shall not be scheduled by the U.S. Trustee before September 30, 2016, which is approximately sixty (60) days from the Petition Date; (ii) the time for filing the SOFAs and Schedules be extended until the same date; and (iii) if the Plan is confirmed on or before September 30, 2016, the 341 Meeting will be waived, and the Debtors will be excused from filing the SOFAs and Schedules, in each case without further order of the Court.  This relief is appropriate under the circumstances, because the Debtors anticipate the near-term confirmation of the Plan and subsequent emergence from chapter 11, with all holders of Allowed General Unsecured Claims paid in full, in cash.  Granting this relief conditionally at the outset of the chapter 11 cases also allows the U.S. Trustee to schedule a 341 Meeting, if it eventually becomes appropriate to do so.

53.    While section 341 of the Bankruptcy Code requires the U.S. Trustee to convene and preside at a meeting of creditors, it also provides for the following exception:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

23

11 U.S.C. § 341(e).  The Debtors solicited the requisite acceptances of the Plan by the Voting

Classes before the Petition Date, and, therefore, the requested conditional relief pursuant to

section 341(e) is appropriate here.

54.     The Debtors also request that the time for filing their SOFAs and

Schedules be extended until September 30, 2016 and to be waived in the event the Plan is

confirmed.  As a matter of course, the Debtors are already entitled to an extension to thirty (30)

days from the Petition Date because the Debtors' claims agent is maintaining the consolidated

creditor matrix as of the Petition Date, and the Debtors have over 200 creditors.  *See* Local Rule

1007-1(b).  The Court is authorized to grant the Debtors' further extension "for cause" pursuant

to Bankruptcy Rule 1007(c) and Local Rule 1007-1(b).  Sufficient cause exists here because

requiring the Debtors to file Schedules in the first thirty (30) days of these cases would divert

management's time and attention from ensuring a smooth transition into chapter 11.  The SOFAs

and Schedules, even if filed on the current deadline, would be of little benefit to most parties in

interest in these chapter 11 cases at that point, while requiring a substantial expenditure of time

and resources by the Debtors to prepare and file.  Therefore, the Court should only require the

Debtors to file SOFAs and Schedules if the Plan is not confirmed within the timetable

contemplated by the Debtors and their major constituencies.

55.     Courts in this District have waived the requirements for a debtor to file

Schedules and SOFAs and for the U.S. Trustee to convene a 341 Meeting in other prepackaged

chapter 11 cases under similar circumstances.  *See e.g., In re RCS Capital Corp.*, No. 16-0223

(MFW) (Bankr. D. Del. Mar. 29, 2016) (ECF No. 423); *In re Offshore Group Inv. Ltd.,* No. 15-

12422 (BLS) (Bankr. D. Del. Dec. 4, 2015) (ECF No. 37); *In re Otelco Inc.*, No. 13-10593

(MFW) (Bankr. D. Del. Mar. 26, 2013 and Apr. 18, 2013) (ECF Nos. 43 & 107); *In re Dex One*

*Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013) (ECF No. 64); *In re Supermedia, Inc.*,

No. 13-10545 (KG) (Bankr. D. Del. Mar. 19, 2013) (ECF No. 45); *In re CHL, Ltd.*, No. 12-

12437 (KJC) (Bankr. D. Del. Aug. 31, 2012) (ECF No. 58).

56.     The Debtors reserve the right to supplement this Motion and request that

any relief granted be without prejudice to the Debtors' ability to seek further extension or

modification of the requirements to file Schedules and SOFAs and for the U.S. Trustee to

convene a 341 meeting.  In this regard, the Debtors request that the Court authorize the Debtors

to further extend the deadline to file Schedules and SOFAs and convene a 341 Meeting without

filing a supplemental motion so long as they have procured advance consent from the U.S.

Trustee.

## Request for Bankruptcy Rule 6004 Waivers

57.     The Debtors request a waiver of any applicable notice requirements under

Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant

to Bankruptcy Rule 6004(h).  As explained above and in the Herod Declaration, the relief

requested herein is necessary to avoid immediate and irreparable harm to the Debtors.

Accordingly, ample cause exists to justify the waiver of the notice requirements under

Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the

extent such notice requirements and such stay apply.

## Notice

58.     Notice of this Motion has been provided to (i) the Office of the United

States Trustee for the District of Delaware (Attn: Natalie Cox, Esq. and Mark Kenney, Esq.);

(ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) Simpson

Thatcher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017 (Attn: Elisha D. Graff,

Esq.), counsel to JPMorgan Chase Bank, N.A., as administrative agent under the Revolving

Credit Facility Agreement; (iv) Foley & Lardner LLP, 321 North Clark Street, Suite 2800, Chicago, IL 60654 (Attn: Mark L. Prager, Esq.) and 90 Park Avenue, New York, NY 10016 (Attn: Richard J. Bernard, Esq.), counsel to the trustee for the Second Lien Notes; (v) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038 (Attn: Jayme T. Goldstein, Esq.), counsel to the trustee for the Third Lien Notes; (vi) Arent Fox LLP, 1675 Broadway, New York, NY 10019 (Attn: Andrew Silfen, Esq. and Leah M. Eisenberg, Esq.), counsel to the trustee for the Unsecured Notes; (vii) Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022 (Attn: Richard A. Levy, Esq. and J. Michael Chambers, Esq.), counsel to the Consenting Third Lien Noteholders; (viii) O'Melveny & Myers LLP, 7 Times Square, New York, NY 10036 (Attn: John J. Rapisardi, Esq. and Joseph Zujkowski, Esq. ), counsel to the ad hoc group of Second Lien Noteholders; (viii) O'Melveny & Myers LLP, 7 Times Square, New York, NY 10036 (Attn: John J. Rapisardi, Esq. and Joseph Zujkowski, Esq. ), counsel to the ad hoc group of Second Lien Noteholders; (ix) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Andrew N. Rosenberg, Esq. and Samuel E. Lovett, Esq.), counsel to the Consenting Unsecured Noteholders; (x) Jones Day, 2727 North Harwood Street, Dallas, TX 75201 (Attn: Gregory M. Gordon, Esq. and Dan Prieto, Esq.), counsel to the Convertible Noteholder; (xi) the Securities and Exchange Commission; (xii) the Internal Revenue Service; and (xiii) the United States Attorney's Office for the District of Delaware.

59.    Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

WEIL:\95674135\18\51351.0003

WHEREFORE, the Debtors respectfully request entry of the Scheduling Order granting the relief requested and any other relief as is just and proper.

Dated:    July 27, 2016
          Wilmington, Delaware

                              /s/ Jaime Luton Chapman
                              YOUNG CONAWAY STARGATT & TAYLOR, LLP
                              Robert S. Brady (No. 2847)
                              Michael R. Nestor (No. 3526)
                              Jaime Luton Chapman (No. 4936)
                              Patrick A. Jackson (No. 4976)
                              Rodney Square
                              1000 North King Street
                              Wilmington, Delaware  19801
                              Telephone: (302) 571-6600
                              Facsimile:  (302) 571-1253

                              -and-

                              WEIL, GOTSHAL & MANGES LLP
                              Gary T. Holtzer
                              Joseph H. Smolinsky
                              767 Fifth Avenue
                              New York, New York  10153
                              Telephone:  (212) 310-8000
                              Facsimile:   (212) 310-8007

                              *Proposed Attorneys for the Debtors
                              and Debtors in Possession*

**Exhibit A**

**Proposed Scheduling Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

```
------------------------------------------------------x
                                                      :
In re                                                 :        Chapter 11
                                                      :
HALCÓN RESOURCES                                      :        Case No. 16-11724 (___)
CORPORATION, et al.,                                  :
                                                      :        (Jointly Administered)
        Debtors.¹                                     :
------------------------------------------------------x        Re: Docket No.
```

**ORDER (I) SCHEDULING COMBINED HEARING ON (A) ADEQUACY DISCLOSURE**
**STATEMENT AND (B) CONFIRMATION OF PREPACKAGED PLAN;**
**(II) FIXING DEADLINE TO OBJECT TO DISCLOSURE STATEMENT AND**
**PREPACKAGED PLAN; (III) APPROVING PREPETITION SOLICITATION**
**PROCEDURES AND FORM AND MANNER OF NOTICE OF COMMENCEMENT,**
**COMBINED HEARING, AND OBJECTION DEADLINE; (IV) CONDITIONALLY**
**(A) DIRECTING THE UNITED STATES TRUSTEE NOT TO CONVENE**
**CREDITORS' MEETING AND (B) WAIVING REQUIREMENT OF FILING**
**STATEMENTS OF FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS**
**AND LIABILITIES; AND (V) GRANTING RELATED RELIEF**

Upon the motion, dated July 27, 2016 (the "**Motion**")² of Halcón Resources

Corporation ("**Holdings**") and certain of its subsidiaries and affiliates, as debtors and debtors in

possession (collectively, the "**Debtors**"), pursuant to sections 105(a), 341, 1125, 1126 and 1128

of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 1007(b), 2002, 2003,

3016, 3017, 3018, 3020 and 9006 of the Federal Rules of Bankruptcy Procedure (the

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Halcón Resources Corporation (0684); Halcón Holdings, Inc. (5102); HK Resources, LLC (9194); The 7711 Corporation (4003); Halcón Gulf States, LLC (2976); Halcón Louisiana Operating, L.P. (9727); Halcón Field Services, LLC (0280); Halcón Energy Properties, Inc. (5292); Halcón Operating Co., Inc. (3588); Halcón Williston I, LLC (9550); Halcón Williston II, LLC (9676); Halcón Resources Operating, Inc. (4856); HRC Energy Louisiana, LLC (1433); HRC Energy Resources (WV), Inc. (2713); HRC Production Company (3501); Halcón Energy Holdings, LLC (0538); HRC Energy, LLC (5010); HK Energy, LLC (8956); HK Louisiana Operating, LLC (4549); HK Oil & Gas, LLC (0502); HK Energy Operating, LLC (8107); HRC Operating, LLC (5129). The Debtors' mailing address is 1000 Louisiana Street, Suite 6700, Houston, Texas 77002.

² Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

"**Bankruptcy Rules**"), and Rules 1007-1, 3017-1 and 9006-1 of the Local Rules of Bankruptcy

Practice and Procedure of the United States District Court for the District of Delaware (the

"**Local Rules**"), for entry of an order (the "**Scheduling Order**"):

      i.    scheduling a combined hearing (the "**Combined Hearing**") to (a) approve the *Proposed Disclosure Statement for Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation, et al. Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplement from time to time, the "**Disclosure Statement**") and (b) consider confirmation of the *Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation, et al. Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplement from time to time, the "**Plan**");

      ii.    establishing the deadline (the "**Objection Deadline**") to object to the adequacy of the Disclosure Statement and confirmation of the Plan;

      iii.    approving the Solicitation Procedures with respect to the Plan, including the forms of Ballots;

      iv.    approving the form and manner of the notice of the commencement of the Debtor' chapter 11 cases, the Combined Hearing and the Objection Deadline (the "**Combined Notice**");

      v.    conditionally (a) directing the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") not to convene an initial meeting of creditors under section 341(a) of the Bankruptcy Code (the "**341 Meeting**"), and (b) waiving the requirement that the Debtors file statements of financial affairs ("**SOFAs**"), schedules of assets and liabilities ("**Schedules**"); and

      vi.    granting related relief,

 all as more fully set forth in the Motion; and upon consideration of the Herod Declaration; and

this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to

28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware dated February 29, 2012; and consideration of

the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

WEIL:\95674135\18\51351.0003

proper notice of the Motion having been provided to the parties listed therein, and it appearing

that no other or further notice need be provided; and this Court having reviewed the Motion; and

this Court having held a hearing on the Motion; and this Court having determined that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and it

appearing that the relief requested in the Motion is in the best interests of the Debtors, their

estates, their creditors, and all parties in interests; and upon all of the proceedings had before this

Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      The Combined Hearing (at which time this Court will consider, among

other things, the adequacy of the Disclosure Statement and confirmation of the Plan) will be held

before the Honorable _____, United States Bankruptcy Judge, in Room _____ of

the United States Bankruptcy Court for the District of Delaware, 824 Market Street, _____ Floor,

Wilmington, Delaware 19801, **on _____, 2016 at _____ (Prevailing Eastern Time)**.

The Combined Hearing may be continued from time to time by the Court without further notice

other than adjournments announced in open court in the filing of a notice or a hearing agenda in

these chapter 11 cases.

3.      Any responses or objections to the adequacy of the Disclosure Statement

or confirmation of the Plan must: (i) be in writing; (ii) conform to the applicable Federal Rules of

Bankruptcy Procedure and the Local Rules; (iii) set forth the name of the objecting party, the

basis for the objection, and the specific grounds thereof; and (iv) be filed with this Court,

together with proof of service.  In addition to being filed with the Court, any such responses or

objections must be served on the following parties so as to be received by **5:00 p.m. (prevailing**

**Eastern Time) on _____, 2016** (the "**Objection Deadline**"): (i) the Debtors, c/o Halcón Resources Corporation, 1000 Louisiana Street, Suite 6700, Houston, TX 77002 (Attn: David S. Elkouri, Esq. (delkouri@halconresources.com)); (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Gary T. Holtzer, Esq. (gary.holtzer@weil.com) and Joseph H. Smolinsky, Esq. (joseph.smolinsky@weil.com)), counsel to the Debtors; (iii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 100 North King Street, Wilmington, DE 19801 (Attn: Robert S. Brady, Esq.(rbrady@ycst.com) and Jaime Luton Chapman, Esq. (jchapman@ycst.com)), co-counsel to the Debtors; (iv) the U.S. Trustee, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, DE 19801 (Attn: Natalie Cox, Esq. (Natalie.Cox@usdoj.gov) and Mark Kenney, Esq. (Mark.Kenney@usdoj.gov)); (v) Simpson Thatcher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017 (Attn: Elisha D. Graff, Esq. (egraff@stblaw.com)), counsel to JPMorgan Chase Bank, N.A., as administrative agent under the Revolving Credit Facility Agreement, dated as of February 8, 2012; (vi) Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022 (Attn: Richard A. Levy, Esq. (richard.levy@lw.com) and J. Michael Chambers, Esq. (michael.chambers@lw.com)), counsel to the Consenting Third Lien Noteholders; (vii) O'Melveny & Myers LLP, 7 Times Square, New York, NY 10036 (Attn: John J. Rapisardi, Esq. (jrapisardi@omm.com) and Joseph Zujkowski, Esq. (jzujkowski@omm.com)), counsel to the ad hoc group of Second Lien Noteholders; (viii) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Andrew N. Rosenberg, Esq. (arosenberg@paulweiss.com) and Samuel E. Lovett, Esq. (slovett@paulweiss.com)), counsel to the Consenting Unsecured Noteholders; and (ix) Jones Day, 2727 North Harwood Street, Dallas, TX 75201 (Attn: Gregory M. Gordon, Esq. (gmgordon@JonesDay.com) and Dan Prieto, Esq. (dbprieto@jonesday.com)), counsel to the

WEIL:\95674135\18\51351.0003

Convertible Noteholder.  **Any objections not timely filed and served in the manner set forth in this Scheduling Order may not be considered and may be overruled**.

       4.      The Debtors may file reply briefs in response to any objections by September 5, 2016.

       5.      The Debtors are authorized to combine the notice of the Combined Hearing and the Objection Deadline (and related procedures) with the notice of commencement of these chapter 11 cases.

       6.      Notice of the Combined Heading as proposed in the Motion and the form of Combined Notice, substantially the form attached hereto as **<u>Exhibit 1</u>**, shall be deemed good and sufficient notice of the Combined Hearing and no further notice need be given.  The Debtors shall cause Epiq Bankruptcy Solutions, LLC (the "**Voting Agent**") to mail a copy of the Combined Notice to the parties set forth in the Motion within two (2) businesses day of the entry of this Scheduling Order or as soon as reasonably possible.  The notice procedures set forth in this paragraph 6 constitute good and sufficient notice of the commencement of the Debtors' chapter 11 cases, the Combined Hearing, the Objection Deadline, and procedures for objecting to the adequacy of the Disclosure Statement and to confirmation of the Plan.

       7.      The Debtors are authorized to mail the Combined Notice to the Non-Voting Holders, in accordance with the terms of this Scheduling Order, in lieu of sending such Non-Voting Holders copies of the Disclosure Statement and the Plan and, except to the extent necessary to comply with Local Rule 3017-1(c), the requirements under the Bankruptcy Rules or the Local Rules, including Bankruptcy Rule 3017(d), to transmit copies of the Disclosure Statement and Plan to Non-Voting Holders are hereby waived with respect to such Non-Voting Holders.

8.      To the extent the Nominees incur out-of-pocket expenses in connection with distribution of the Combined Notice, the Debtors are authorized, but not directed, to reimburse such entities for their reasonable and customary expenses incurred in this regard.

9.      The Debtors are authorized, but not directed, pursuant to Bankruptcy Rule 2002(1), to give supplemental publication notice of the Combined Hearing and Objection Deadline (in a form substantially similar to the Combined Notice or a summary thereof) not less than fourteen (14) days prior to the Combined Hearing Date in the *Houston Chronicle* and the national edition of *USA Today*, and any other trade or other publications the Debtors deem necessary in their sole discretion, which publication notice shall constitute good and sufficient notice of the Combined Hearing and the Objection Deadline (and related procedures) to persons who do not receive the Combined Notice by mail.

10.      The Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages as set forth in the Motion in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code and the Bankruptcy Rules and are conditionally approved.

11.      The Ballots, substantially in the forms attached to the Motion as **Exhibits B-1**, **B-2**, **B-3**, **B-4**, **B-5**, **B-6**, and **B-7** are approved.

12.      The procedures used for tabulations of votes to accept or reject the Plan as set forth in the Motion and as provided by the ballots are approved.

13.      The 341 Meeting shall be waived unless the Plan is not confirmed on or before September 30, 2016.

14.      Cause exists to extend the time by which the Debtors must file SOFAs and Schedules until September 30, 2016, without prejudice to the Debtors' rights to request further

6

extensions thereof; *provided, however*, that if the Plan is confirmed by this Court on or before

September 30, 2016 the requirement to file SOFAs and Schedules in the Debtors' chapter 11

cases shall be waived.

15.     The Debtors shall file the Plan Supplement (as defined in the Plan) no

later than five (5) calendar days prior to the Combined Hearing.

16.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h),

the terms and conditions of this Scheduling Order shall be immediately effective and enforceable

upon its entry.

17.     Notice of the Motion as provided therein shall be deemed good and

sufficient notice of such Motion and the requirements of Bankruptcy Rules 4001(d) and 6004(a)

are waived.

18.     The Debtors are authorized and empowered to take all actions necessary

or appropriate to implement the relief granted in this Scheduling Order.

19.     This Court shall retain jurisdiction with respect to all matters arising from

or related to the interpretation or implementation of this Scheduling Order.

Dated:  _____, 2016
        Wilmington, Delaware

                                            _____
                                           UNITED STATES BANKRUPTCY JUDGE

WEIL:\95674135\18\51351.0003

**<u>Exhibit 1 to Scheduling Order</u>**

**Combined Notice**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------x
                                  :

In re                            :        **Chapter 11**
                                    :

**HALCÓN RESOURCES**    :        **Case No. 16-11724 (___)**
**CORPORATION,** *et al.,*    :
                                    :        **Jointly Administered**

          **Debtors.**[1]        :
---------------------------------------------------x

**NOTICE OF COMMENCEMENT OF CASES**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**-AND-**

**SUMMARY OF JOINT PREPACKAGED CHAPTER 11 PLAN AND NOTICE OF**
**HEARING TO CONSIDER (A) DEBTORS' COMPLIANCE WITH DISCLOSURE**
**REQUIREMENTS AND (B) CONFIRMATION OF PLAN OF REORGANIZATION**

**NOTICE IS HEREBY GIVEN** as follows:

       1.     On July 27, 2016 (the "**Petition Date**"), Halcón Resources Corporation ("**Holdings**") and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

       2.     On the Petition Date, the Debtors filed a "prepackaged" plan of reorganization (the "**Plan**") and a proposed disclosure statement (the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' voting agent, Epiq Bankruptcy Solutions, LLC (the "**Voting Agent**"), at http://dm.epiq11.com/Halcon.  Copies of the Plan and Disclosure Statement may also be obtained by calling the Voting Agent at (646) 282-2400 or (866) 734-9393 (toll free), or sending an electronic mail message to tabulation@epiqsystems.com with "Halcón" in the subject line.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Halcón Resources Corporation (0684); Halcón Holdings, Inc. (5102); HK Resources, LLC (9194); The 7711 Corporation (4003); Halcón Gulf States, LLC (2976); Halcón Louisiana Operating, L.P. (9727); Halcón Field Services, LLC (0280); Halcón Energy Properties, Inc. (5292); Halcón Operating Co., Inc. (3588); Halcón Williston I, LLC (9550); Halcón Williston II, LLC (9676); Halcón Resources Operating, Inc. (4856); HRC Energy Louisiana, LLC (1433); HRC Energy Resources (WV), Inc. (2713); HRC Production Company (3501); Halcón Energy Holdings, LLC (0538); HRC Energy, LLC (5010); HK Energy, LLC (8956); HK Louisiana Operating, LLC (4549); HK Oil & Gas, LLC (0502); HK Energy Operating, LLC (8107); HRC Operating, LLC (5129).  The Debtors' mailing address is 1000 Louisiana Street, Suite 6700, Houston, Texas 77002.

3.       The Debtors are proposing a Restructuring that, pursuant to the Plan, will provide substantial benefits to the Debtors and all of their stakeholders, including, without limitation, the following:

(i)      The Restructuring will leave the Debtors' business intact and substantially de-levered, providing for the reduction of $1.8 billion of the Debtors' existing debt and approximately $200 million of the Debtors' annual cash interest expense upon the completion of the Restructuring.  This deleveraging will enhance the Debtors' long-term growth prospects and competitive position and allow the Debtors to emerge from their chapter 11 cases (the "**Chapter 11 Cases**") as reorganized entities better positioned to withstand depressed oil and natural gas prices.

(ii)     In addition, the Restructuring will allow the Debtors' management team to focus on operational performance and value creation.  A significantly improved balance sheet will enable the Reorganized Debtors to pursue value-creating acquisitions in a depressed commodity price environment.  Post-Restructuring, the Debtors will have access to capital markets that are not available to them today.  Furthermore, by enhancing their capital structure, the Debtors will have the ability to accelerate drilling activity when prices recover.

(iii)    Moreover, the Restructuring proposed under the Plan provides recoveries to **<u>all</u>** of the Debtors' stakeholders.  As set forth below, the Plan provides for a recovery to each class of Creditors and Interest Holders under the Plan in the form of New Common Shares, Cash, Warrants or a combination thereof.  Distributions of equity in the Reorganized Debtors will allow certain stakeholders to participate in potential future upside in the Reorganized Debtors.  The proposed Restructuring has the additional benefit of ensuring that management remains highly committed to the future of the Reorganized Debtors.

**Summary of the Prepackaged Plan**[2]

4.       Solicitation of votes on the Plan commenced prior to the Petition Date.  The following chart summarizes the treatment provided by the Plan to each class of Claims and Interests:

---

[2] The statements contained herein are summaries of the provisions contained in the Disclosure Statement and the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein.  For a more detailed description of the Plan, please refer to the Disclosure Statement. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.  For example, the distributions for certain of the classes set forth herein were subject to certain conditions precedent, including that each impaired class senior in priority voted to accept the Plan; however, as set forth in the *Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Cast on Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation, et al. Under Chapter 11 of the Bankruptcy Code*, filed on the Petition Date, each impaired voting class voted to accept the Plan and, therefore, those conditions have been satisfied.

WEIL:\95674859\3\51351.0003

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan | Approx. Percentage Recovery[3] |
|-------|-------------------------|-----------|------------------------|-------------------------------|-------------------------------|
| 1 | Other Priority Claims | Except to the extent that a holder of an Allowed Other Priority Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such holder will receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, in each case, or as soon as reasonably practical thereafter. | Unimpaired | No (Presumed to accept) | 100% |
| 2 | Other Secured Claims | Except to the extent that a holder of an Allowed Other Secured Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each holder of an Allowed Other Secured Claim will receive, at the option of the Debtors or the Reorganized Debtors, with the reasonable consent of the Requisite Third Lien Noteholders, either (i) payment in full in Cash in full and final satisfaction of such Claim, payable on the later of the Effective Date and the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, or, in each case, as soon as reasonably practical thereafter, (ii) Reinstatement pursuant to section 1124 of the Bankruptcy Code or (iii) such other recovery necessary to satisfy section 1129 of the Bankruptcy Code. | Unimpaired | No (Presumed to accept) | 100% |
| 3 | Revolving Credit Agreement Claims | The Revolving Credit Agreement Claims will be Allowed as Secured Claims with respect to funded loans and the face amount of undrawn letters of credit as of the Effective Date in the approximate aggregate principal (or face) amount of $450,000,000 as of the Effective Date (which amount shall be reduced by any portion of the Revolving Credit Agreement Claims that are repaid or otherwise "rolled up" into a DIP Financing, plus any unpaid accrued interest, letter of credit fees, other fees, and unpaid reasonable fees and expenses as of the Effective Date, in each case as required under the terms of the Revolving Credit Agreement and to the extent not already paid pursuant to the Adequate Protection Order). On the Effective Date, or as soon as practicable thereafter, each holder of an Allowed Revolving Credit Agreement Claim will receive, in full and final satisfaction of such Allowed Revolving Credit Agreement Claim, its Pro | Unimpaired | No (Presumed to accept) | 100% |

---

[3] The ranges set forth under Approximate Percentage Recovery are based on the range of reorganized equity value of the Debtors as described in the Valuation Analysis set forth in the Disclosure Statement.

| | | | | | |
|---|---|---|---|---|---|
| | | Rata share of the commitments and/or loans made pursuant to the Amended Revolving Credit Agreement and will receive its benefits and be bound by the obligations therein, which will also provide for the renewal of existing letters of credit and the issuance of new letters of credit on the terms and conditions to be set forth in the Amended Revolving Credit Agreement. | | | |
| 4 | Second Lien Note Claims | The Second Lien Note Claims will be Allowed in the amount of $824,413,181 (including accrued and unpaid interest as of the Effective Date), plus any other amounts and obligations payable under the Second Lien Note Indenture as of the Effective Date, and will not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any person or entity. The legal, equitable, and contractual rights of the holders of Allowed Second Lien Note Claims are unaltered by the Plan. On the Effective Date, the holders of Allowed Second Lien Note Claims will have their Allowed Second Lien Note Claims Reinstated. | Unimpaired | No (Presumed to accept) | 100% |
| 5 | Third Lien Note Claims | The Third Lien Note Claims will be Allowed in the amount of $1,045,907,621 (including accrued and unpaid interest as of the Petition Date), plus any other amounts and obligations payable under the Third Lien Note Indenture as of the Petition Date, and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any person or entity. On the Effective Date, each holder of an Allowed Third Lien Note Claim will be entitled to receive, in full and final satisfaction of such Allowed Third Lien Note Claim, its Pro Rata share of: (i) the Third Lien New Common Shares; and (ii) the Third Lien Noteholder Cash Distribution. | Impaired | Yes | 50% |
| 6 | Unsecured Note Claims | The Unsecured Notes Claims will be Allowed in the amount of $662,711,319 (including accrued and unpaid interest as of the Petition Date), plus any other amounts and obligations payable under the Unsecured Note Indentures as of the Petition Date, and will not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other | Impaired | Yes | 21% |

4

| | | | | | |
|---|---|---|---|---|---|
| | | challenges under any applicable law or regulation by any person or entity. On the Effective Date, each holder of an Allowed Unsecured Note Claim will be entitled to receive, in full and final satisfaction of such Allowed Unsecured Note Claim, its Pro Rata share of: (i) the Unsecured Noteholder Cash Distribution; (ii) the Unsecured Noteholder New Common Shares; and (iii) the Unsecured Noteholder New Warrants. | | | |
| 7 | Convertible Note Claims | The Convertible Note Claims will be Allowed in the amount of $297,586,588 (including accrued and unpaid interest as of the Petition Date), plus any other amounts and obligations payable under the Convertible Note Purchase Agreement as of the Petition Date, and will not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any person or entity. On the Effective Date, the holder of the Allowed Convertible Note Claims will be entitled to receive, in full and final satisfaction of such Allowed Convertible Note Claims: (i) the Convertible Noteholder Cash Distribution; (ii) the Convertible Noteholder New Common Shares; and (iii) the Convertible Noteholder New Warrants. | Impaired | Yes | 14% |
| 8 | General Unsecured Claims | Except to the extent that a holder of an Allowed General Unsecured Claim against any of the Debtors has agreed to less favorable treatment of such Claim, the legal, equitable, and contractual rights of the holders of General Unsecured Claims are unaltered by the Plan. On and after the Effective Date, except to the extent that a holder of a General Unsecured Claim agrees to different treatment, the Debtors or Reorganized Debtors, as applicable, shall continue to pay or dispute each General Unsecured Claim in the ordinary course of business as if the Chapter 11 Cases had never been commenced. | Unimpaired | No (Presumed to accept) | 100% |
| 9 | Intercompany Claims | On the Effective Date, all Intercompany Claims will be paid, adjusted, reinstated or discharged to the extent reasonably determined to be appropriate by the Debtors subject to the consent of the Requisite Third Lien Noteholders and the Requisite Unsecured Noteholders, which consent will not be unreasonably withheld. | Unimpaired | No (Presumed to accept) | 100% |
| 10 | Intercompany Interests | The Intercompany Interests will be Unimpaired under the Plan. | Unimpaired | No (Presumed to accept) | 100% |
| 11 | Preferred Stock Interests | The Preferred Stock Interests are Allowed in the amount of $222,454,000, and will not be subject to any avoidance, reductions, setoff, offset, recoupment, | Impaired | Yes | 5% |

WEIL:\95674859\3\51351.0003

| | | | | | |
|---|---|---|---|---|---|
| | | recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any person or entity. On the Effective Date, each holder of an Allowed Preferred Stock Interest will be entitled to receive, in full and final satisfaction of such Allowed Preferred Stock Interest, its Pro Rata share of the Preferred Stock Cash Distribution. | | | |
| 12 | Existing Equity Interests | On the Effective Date, (i) all Existing Equity Interests will be cancelled, and (ii) the holders of Existing Equity Interests will receive New Common Shares representing, in the aggregate, 4.0% of the total outstanding shares of Reorganized Holdings (subject to dilution by the Management Incentive Plan and, to the extent applicable, the exercise of the New Warrants).  Holders of Existing Warrants will have until the Warrant Record Date to exercise their respective rights under the Existing Warrants to purchase common stock of the Debtors and to have such common stock interests treated as Existing Equity Interests under the Plan.  To the extent a holder of Existing Warrants does not exercise its Existing Warrants prior to the Warrant Record Date, such Existing Warrants will be cancelled and the holders of such Existing Warrants will not receive or retain any value under the Plan on account of such non-exercised Existing Warrants. | Impaired | No (Deemed to reject) | N/A |
| 13 | Section 510(b) Claims | The holders of Section 510(b) Claims will not receive or retain any property under the Plan on account of such Section 510(b) Claims and the obligations of the Debtors and the Reorganized Debtors on account of Section 510(b) Claims will be discharged. | Impaired | No (Deemed to reject) | N/A |

**The Proposed Second Lien Note Amendment and
Post-Effective Date Consent Solicitation**

The Debtors have agreed, subject to the occurrence of the Effective Date of the Plan, to commence a solicitation for consents to a proposed amendment to certain provisions of the Second Lien Indentures on or reasonably following the Effective Date but in no event later than 30 days following the Effective Date (the "**Proposed Second Lien Amendment**").  To effectuate this commitment, the Debtors and holders of more than 51% of the aggregate principal amount of Second Lien Notes entered into a support agreement, dated July 22, 2016 (the "**Second Lien Support Agreement**").

If agreed to by the requisite holders of Second Lien Notes, the Proposed Second Lien Amendment would, among other things, tighten certain covenants and restrictions under the Second Lien Indentures with respect to the Debtors' ability to incur additional indebtedness, grant new liens and make payments on account of junior indebtedness.  In exchange for agreeing to support the Plan and any transaction contemplated thereby, the Debtors have agreed to pay to each holder of Second Lien Notes that agrees to the Proposed Second Lien Amendment and is either party to the Second Lien Support Agreement or does not object or take any action in contravention to the Plan a consent fee equal to 1.25%

6

of the aggregate principal amount of such holder's outstanding Second Lien Notes subject to the occurrence of the Effective Date of the Plan and, with respect to the 8.625% Second Lien Notes, the effectiveness of the Second Lien Amendment.  The Debtors have further agreed to pay the professional fees of the advisors to the ad hoc group of Second Lien Noteholders up to a capped amount of $500,000.

### NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN

PLEASE BE ADVISED THAT THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, INCLUDING:

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Definitive Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties will be deemed forever released and discharged, to the maximum extent permitted by law, by (i) the holders of all Claims or Interests who vote to accept the Plan, (ii) the holders of Claims or Interests that are Unimpaired under the Plan, (iii) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, and (iv) the holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Restructuring Support Agreement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that constitutes fraud, gross negligence or willful misconduct.**

**OTHER RELEASE, EXCULPATION AND INJUNCTION PROVISIONS ARE FOUND IN SECTION X OF THE PLAN.  YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**Hearing to Consider Compliance with Disclosure Requirements and Confirmation of the Prepackaged Plan**

5.    A combined hearing to consider compliance with the Bankruptcy Code's disclosure requirements and any objections thereto and to consider confirmation of the Prepackaged Plan and any objection thereto will be held before the Honorable _____, United States Bankruptcy

Judge, in Room _____ of the United States Bankruptcy Court, 824 Market Street, _____ Floor, Wilmington, Delaware 19801, on September 8, 2016 at __:__ _.m. (Prevailing Eastern Time) or as soon thereafter as counsel may be heard (the "**Combined Hearing**").  The Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Combined Hearing and will be available on the electronic case filing docket and the Voting Agent's website at http://dm.epiq11.com/Halcon.

       6.     Any objections to the Disclosure Statement and/or the Plan must (i) be in writing, filed with the Clerk of the United States Bankruptcy for the District of Delaware together with proof of service thereof, (ii) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, (iii) state the legal and factual basis for such objection, and (iv) **be served upon the following so as to be received no later than 5:00 p.m. (Eastern Time) on August 29, 2016:**

(i)     the Debtors, c/o Halcón Resources Corporation, 1000 Louisiana Street, Suite 6700, Houston, TX 77002 (Attn: David S. Elkouri, Esq. (delkouri@halconresources.com));

(ii)    Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Gary T. Holtzer, Esq. (gary.holtzer@weil.com) and Joseph H. Smolinsky, Esq. (joseph.smolinsky@weil.com)), counsel to the Debtors;

(iii)   Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Robert S. Brady, Esq. (rbrady@ycst.com) and Jaime Luton Chapman, Esq. (jchapman@ycst.com)), co-counsel to the Debtors;

(iv)   the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, DE 19801 (Attn: Natalie Cox, Esq. (Natalie.Cox@usdoj.gov) and Mark Kenney, Esq. (Mark.Kenney@usdoj.gov));

(v)    Simpson Thatcher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017 (Attn: Elisha D. Graff, Esq. (egraff@stblaw.com)), as administrative agent under the Revolving Credit Facility Agreement, dated as of February 8, 2012;

(vi)   Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022 (Attn: Richard A. Levy, Esq. and J. Michael Chambers, Esq.), counsel to the Consenting Third Lien Noteholders;

(vii)  O'Melveny & Myers LLP, 7 Times Square, New York, NY 10036 (Attn: John J. Rapisardi, Esq. (jrapisardi@omm.com) and Joseph Zujkowski, Esq. (jzujkowski@omm.com)), counsel to the ad hoc group of Second Lien Noteholders;

(viii) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Andrew N. Rosenberg, Esq. (arosenberg@paulweiss.com) and Samuel E. Lovett, Esq. (slovett@paulweiss.com)); and

(ix)   Jones Day, 2727 North Harwood Street, Dallas, TX 75201 (Attn: Gregory M. Gordon, Esq. (gmgordon@JonesDay.com) and Dan Prieto, Esq. (dbprieto@jonesday.com)).

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

Dated:  Wilmington, Delaware
_____, 2016                                        BY ORDER OF THE COURT

WEIL, GOTSHAL & MANGES LLP                    YOUNG CONAWAY STARGATT & TAYLOR, LLP
Gary T. Holtzer                                              Robert S. Brady (No. 2847)
Joseph H. Smolinsky                                      Michael R. Nestor (No. 3526)
767 Fifth Avenue                                           Jaime Luton Chapman (No. 4936)
New York, New York  10153                           Patrick A. Jackson (No. 4976)
Telephone:  (212) 310-8000                            Rodney Square
Facsimile:  (212) 310-8007                             1000 North King Street
                                                                    Wilmington, Delaware  19801
                                                                    Telephone: (302) 576-2615
                                                                    Facsimile:  (302) 571-1253

*Attorneys for Debtors and*
*Debtors in Possession*                                    *Attorneys for Debtors and*
                                                                    *Debtors in Possession*

9

**Exhibit B-1**

**Form of Master Ballot for Third Lien Note Claims**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**Halcón Resources Corporation, *et al.*,[1]**<br><br>                                    **Debtors.** | Chapter 11 (Voluntary)<br><br>IMPORTANT: No chapter 11 cases have been commenced as of the date of distribution of this ballot.  This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization.  If chapter 11 cases are commenced, the Debtors will request joint administration of such cases. |

## MASTER BALLOT FOR ACCEPTING OR REJECTING THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF HALCÓN RESOURCES CORPORATION, *ET AL.* UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### CLASS 5: THIRD LIEN NOTE CLAIMS

**Only Eligible Third Lien Noteholders may vote to accept or reject the Plan using this Ballot.**

> **PLEASE READ THIS ENTIRE MASTER BALLOT BEFORE COMPLETING.   PLEASE COMPLETE, DATE AND SIGN THIS MASTER BALLOT AND RETURN IT TO THE VOTING AGENT (AS DEFINED BELOW).   THIS MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE JULY 20, 2016 AT 5:00 P.M. (PREAVILING EASTERN TIME) (THE "VOTING DEADLINE").**

This master ballot (the "**Master Ballot**") is being submitted to brokers, dealers, commercial banks, trust companies, or other agent nominees ("**Nominees**") of beneficial holders of certain Claims (a "**Beneficial Holder**") against Halcón Resources Corporation ("**Holdings**") and certain of its affiliates and subsidiaries (collectively, the "**Debtors**") in connection with the Debtors' solicitation of votes to accept or reject the *Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation Et Al. Under Chapter 11 of the Bankruptcy Code* (as amended, modified or supplemented from time to time, the "**Plan**[2]") in connection with cases (the "**Chapter 11 Cases**") to be commenced by the Debtors under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  Specifically, this Master Ballot is being submitted to Nominees of Beneficial Holders that are Eligible Holders of Claims against

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Halcón Resources Corporation (0684); Halcón Holdings, Inc. (5102); HK Resources, LLC (9194); The 7711 Corporation (4003); Halcón Gulf States, LLC (2976); Halcón Louisiana Operating, L.P. (9727); Halcón Field Services, LLC (0280); Halcón Energy Properties, Inc. (5292); Halcón Operating Co., Inc. (3588); Halcón Williston I, LLC (9550); Halcón Williston II, LLC (9676); Halcón Resources Operating, Inc. (4856); HRC Energy Louisiana, LLC (1433); HRC Energy Resources (WV), Inc. (2713); HRC Production Company (3501); Halcón Energy Holdings, LLC (0538); HRC Energy, LLC (5010); HK Energy, LLC (8956); HK Louisiana Operating, LLC (4549); HK Oil & Gas, LLC (0502); HK Energy Operating, LLC (8107); HRC Operating, LLC (5129).  The Debtors' mailing address is 1000 Louisiana Street, Suite 6700, Houston, Texas 77002.

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan.

the Debtors arising under or relating to that certain Indenture, dated as of September 10, 2015, by and among Holdings, as issuer, the guarantors party thereto, and U.S. Bank, National Association, as trustee, pursuant to which Holdings issued certain 13% Senior Secured Notes due 2022 (the "**Third Lien Note Claims**" and the holders of such Third Lien Note Claims, the "**Third Lien Note Claimholders**"). Nominees should use this Master Ballot to tabulate votes on behalf of holders of Eligible Third Lien Note Claims to accept or reject the Plan.

> **BALLOTS ARE ONLY BEING SOLICITED FROM <u>ELIGIBLE</u> HOLDERS OF CLASS 5 THIRD LIEN NOTE CLAIMS.  TO BE AN ELIGIBLE HOLDER, A THIRD LIEN NOTEHOLDER MUST BE, AS OF THE DATE SET FORTH IN THE DISCLOSURE STATEMENT, AN ACCREDITED INVESTOR AS DEFINED IN RULE 501 OF REGULATION D UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") AND CERTIFY TO THAT EFFECT, OR THE DEBTORS REASONABLY BELIEVE IS AN ACCREDITED INVESTOR.  IF A BENEFICIAL HOLDER IS A HOLDER OF CLASS 5 THIRD LIEN NOTE CLAIMS AND IS NOT AN <u>ELIGIBLE</u> THIRD LIEN NOTEHOLDER, SUCH HOLDER'S VOTE WILL NOT BE COUNTED.**

The Plan is attached as Exhibit A to the *Proposed Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation Et Al. Under Chapter 11 of the Bankruptcy Code* (as amended, modified or supplemented from time to time, the "**Disclosure Statement**"), which accompanies this Master Ballot.  The Disclosure Statement provides information to assist holders of Claims and Interests in deciding whether to accept or reject the Plan.  If you or a Third Lien Noteholder do not have a copy of the Disclosure Statement, you may obtain a copy from the Debtors' solicitation agent, Epiq Bankruptcy Solutions, LLC (the "**Voting Agent**"), by calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an electronic mail message to tabulation@epiqsystems.com with "Halcón" in the subject line and requesting that a copy be provided to you.  Upon receipt of these materials, you should <u>immediately</u> forward to the Beneficial Holders the Disclosure Statement and the form of ballot for such holders (the "**Beneficial Holder Ballot**") with a return envelope addressed to you, as provided in the attached instructions.

> ### IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 5
>
> As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 cases are commenced, the Plan is confirmed, and the Effective Date occurs, holders of Allowed Third Lien Note Claims will receive their Pro Rata share of: (a) common shares, par value $0.0001 per share, of Reorganized Holdings to be issued under the Plan (the "**New Common Shares**"), which New Common Shares will represent, after giving effect to the Restructuring, in the aggregate, 76.5% of the total outstanding shares of Reorganized Holdings (subject to dilution by the Management Incentive Plan and, to the extent applicable, the exercise of the New Warrants); and (b) Cash in the amount of $33,825,588 (the "**Third Lien Noteholder Cash Distribution**").
>
> In accordance with the Restructuring Support Agreement, the Debtors have agreed, at least five (5) business days prior to the Petition Date, and on the same date, to pay cash interest with respect to the Third Lien Noteholders through the later of May 15, 2016, and the date on which interest and/or dividends are paid on the Unsecured Notes, the Convertible Note or the Preferred Stock.  The Third Lien Noteholder Cash Distribution assumes that additional cash interest will be paid to the Third Lien Noteholders prior to the Commencement Date in the amount of $33,084,025, of which $16.2 million is attributable to the period from and after April 1, 2016 through May 15, 2016 (the "**Third Lien Interest Payment**").  From and after the Support Effective Date, the Debtors will not make any interest or dividend payments on account of the Convertible Note, Preferred Stock or otherwise, except as provided above.  The Debtors have further agreed to accrue interest through the Petition Date on the Third Lien Notes, the Unsecured Notes, the Convertible Note and the Preferred Stock in accordance with the terms

2

thereof, and all such interest, to the extent not paid as set forth above, will be deemed part of the Third Lien Note Claims, Unsecured Note Claims, Convertible Note Claims, and Preferred Stock Interests, as applicable.

**The Plan further provides that, in the event the classes of Unsecured Note Claims, the Convertible Note Claims, or Preferred Stock Interests vote to reject the Plan (a "Rejecting Class") then: (i) any class of claims or interests junior in priority to such Rejecting Class will not receive or retain any value under the Plan; (ii) any New Warrants that were to be distributed to such junior classes of creditors will be cancelled and will not be issued under the Plan; (iii) the New Common Shares that were to be distributed to such junior classes of creditors or interest holders will be reallocated and distributed as set forth in the Plan, and (iv) the Cash that was to be distributed to such junior classes of creditor or interest holders will remain property of the Debtors and will vest in the Reorganized Debtors on the Effective Date.  In the event the Unsecured Note Claims is a Rejecting Class (a) the Convertible Noteholder New Warrants will not be issued under the Plan; (b) the New Common Shares that were to be distributed to the Convertible Noteholder and Existing Equity Interests will be reallocated and distributed pro rata to the Third Lien Noteholders; and (c) if the Debtors elect not to terminate the Restructuring Support Agreement, then the distributions to be received by the General Unsecured Claims will be modified so as to comply with section 1129(b) of the Bankruptcy Code, subject to the Consenting Third Lien Noteholders' rights under Section 9 of the Restructuring Support Agreement.  In the event the Preferred Stock Interests is a Rejecting Class, the Preferred Holders will not receive or retain any distributions on account of their Preferred Stock Interests.**

After the Debtors commence their Chapter 11 Cases, the Plan can be confirmed by United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and thereby made binding on the Beneficial Holders if: (i) it is accepted by the holders of (a) at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) at least two-third in amount of the Interests voted in each Impaired Class of Interests; and (ii) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on the Beneficial Holders whether or not a Beneficial Holder votes or if a Beneficial Holder votes to reject the Plan.

The Debtors intend to file their Chapter 11 Cases approximately thirty (30) calendar days after the date of the Disclosure Statement, but may file their Chapter 11 Cases sooner and before the Voting Deadline.  Receipt of this Master Ballot does not signify that a Beneficial Holder's Claim(s) has been or will be Allowed.  This Master Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 5 Third Lien Note Claims.

3

### NOTICE REGARDING CERTAIN RELEASE, EXCULPATION
### AND INJUNCTION PROVISIONS IN THE PLAN

If a Beneficial Holder (i) votes to accept the Plan, (ii) does not vote either to accept or to reject the Plan, or (iii) votes to reject the Plan but do not opt out of granting the releases set forth in the Plan, such Beneficial Holder shall be deemed to have consented to the releases contained in Section 10.7 of the Plan, which provides as follows:

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Definitive Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law, by (i) the holders of all Claims or Interests who vote to accept the Plan, (ii) the holders of Claims or Interests that are Unimpaired under the Plan, (iii) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, and (iv) the holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, in each case from any and all Claims, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Restructuring Support Agreement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that constitutes fraud, gross negligence or willful misconduct.

**OTHER RELEASE, EXCULPATION AND INJUNCTION PROVISIONS ARE FOUND IN SECTION X OF THE PLAN.  YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

4

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT.**

PLEASE COMPLETE ALL OF THE ITEMS BELOW.  IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY COMPLETED, THE VOTES OF THE BENEFICIAL HOLDERS MAY NOT BE COUNTED.

**Item 1.  Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐      is a Nominee for the Beneficial Holders in the principal amount of Class 5 Third Lien Note Claims listed in Item 2 below and is the registered holder of such Class 5 Third Lien Note Claims;

☐      is acting under a power of attorney and/or agency (a copy of which must be provided upon request) granted by a Nominee that is the registered holder of Class 5 Third Lien Note Claims in the principal amount listed in Item 2 below; or

☐      has been granted a proxy (an original of which is annexed hereto) from a Nominee or a Beneficial Holder that is the registered holder of the principal amount of Class 5 Third Lien Note Claims listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Class 5 Third Lien Note Claims listed in Item 2 below.

**Items 2.  Vote on the Plan.**

The undersigned transmits the following votes of Beneficial Holders in respect of their Class 5 Third Lien Note Claims and certifies that the following Beneficial Holders, as identified by their respective customer account numbers set forth below, are Beneficial Holders as of the Voting Record Date and have delivered to the undersigned, as Nominee, Beneficial Holder Ballots casting such votes.[3]

---

[3] Indicate in the appropriate column the principal amount of the Third Lien Note Claims voted for each account, or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of such Beneficial Holder's Claims or Interests to accept or to reject the Plan and may not split such vote.  Any ballot executed by a Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and has not been corrected by the Voting Deadline, shall not be counted.

5

| Your Customer Account Number for Each Beneficial Holder of Class 5 Third Lien Note Claims that Voted | Principal Amount of Third Lien Note Claims Held by Your Customer | Item 2. Vote on Plan | | Item 3. Optional Release Election |
|---|---|---|---|---|
| | | ACCEPT | REJECT | Place a check below if the Beneficial Holder checked the box in Item 3 |
| 1. | | ☐ | ☐ | ☐ |
| 2. | | ☐ | ☐ | ☐ |
| 3. | | ☐ | ☐ | ☐ |
| 4. | | ☐ | ☐ | ☐ |
| 5. | | ☐ | ☐ | ☐ |
| 6. | | ☐ | ☐ | ☐ |
| 7. | | ☐ | ☐ | ☐ |
| 8. | | ☐ | ☐ | ☐ |
| 9. | | ☐ | ☐ | ☐ |
| 10. | | ☐ | ☐ | ☐ |

**Item 4.   Certification as to Transcription of Information from Item 3 of the Beneficial Holder Ballots as to Class 5 Third Lien Note Claims Voted Through Other Ballots.**

The undersigned certifies that the undersigned has transcribed in the following table the information, if any, Beneficial Holders have provided in Item 3 of the Beneficial Holder Ballot, identifying any Class 5 Third Lien Note Claims for which such Beneficial Holders have submitted other ballots (other than to the undersigned):

6

| Your Customer Account Number for Each Beneficial Holder That Completed Item 3 of the Beneficial Holder Ballot | TRANSCRIBE FROM ITEM 3 OF THE BALLOTS: | | | |
|---|---|---|---|---|
| | Account Number | Name of Beneficial Holder | Principal Amount of Class 5 Third Lien Note Claim Voted | CUSIP Number of other Class 5 Note Claim Voted |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Item 5.  Certification.**

By signing this Master Ballot, the undersigned certifies that:

(a)      (i) the undersigned has received a copy of the Disclosure Statement, Master Ballot and Beneficial Holder Ballot, and has delivered the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders holding Class 5 Third Lien Note Claims through the undersigned with a return envelope; (ii) the undersigned has received a completed and signed Beneficial Holder Ballot from each such Beneficial Holder as provided in this Master Ballot; (iii) the undersigned is the registered holder of the securities being voted or agent thereof; and (iv) the undersigned has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

(b)      the undersigned has properly disclosed: (i) the number of Beneficial Holders voting Class 5 Third Lien Note Claims through the undersigned; (ii) the respective amounts of Class 5 Third Lien Note Claims owned by each such Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the customer account or other identification number for each such Beneficial Holder;

(c)      if the undersigned is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class 5 Third Lien Note Claims, the undersigned confirms and attests to each of the certifications in Item 4 of the Beneficial Holder Ballot;

(d)      each such Beneficial Holder has certified to the undersigned that such beneficial holder is a Beneficial Holder and is otherwise eligible to vote on the Plan; and

(e)      the undersigned will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

7

**Item 6.  Nominee Information and Signature.**

Name of Nominee:

_____
(Print or Type)
Participant Number:_____

Name of proxy holder or agent for Nominee (if applicable):

_____
(Print or Type)

_____
Signature:

Name of Signatory:_____

Title:_____

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Date Completed:_____

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

> **EPIQ CORPORATE RESTRUCTURING**
> **777 THIRD AVENUE, 12TH FLOOR**
> **NEW YORK, NY 10017**
> **ATTN: HALCON PROCESSING**
> **TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS JULY 20, 2016 AT 5:00 P.M. (EASTERN TIME).**

8

IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HALCÓN" IN THE SUBJECT LINE.

## MASTER BALLOT INSTRUCTIONS

1.     To have the votes of your Beneficial Holders count, you should already have delivered to each such holder a copy of the Disclosure Statement, along with a Beneficial Holder Ballot with a return envelope addressed to you, so such holder may return their Beneficial Holder Ballot to you in sufficient time for you to complete and return the Master Ballot to the Voting Agent, so that the Voting Agent *actually receives* the Master Ballot before the Voting Deadline.

2.     The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you and the Beneficial Holders (i) it is accepted by the holders of (a) at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) at least two-third in amount of the Interests voted in each Impaired Class of Interests; and (ii) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it, and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

3.     With regard to any Beneficial Holder Ballots returned to you, to have the vote of your Beneficial Holders count, you must: (a) retain such Beneficial Holder Ballots in your files and transfer the requested information from each such Beneficial Holder Ballot onto the Master Ballot; (b) execute the Master Ballot; and (c) deliver the Master Ballot to the Voting Agent in accordance with these instructions.

4.     Please keep any records of Beneficial Holder Ballots for at least one year after the Voting Deadline (or such other date as is set by order of the Bankruptcy Court).  You may be ordered to produce the Beneficial Holder Ballots to the Debtors or the Bankruptcy Court.

5.     If you are both the Nominee and Beneficial Holder, and you wish to vote such Class 5 Third Lien Note Claims for which you are a Beneficial Holder, you may return either a Beneficial Holder Ballot or the Master Ballot for such Claims or Interests.

6.     In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

7.     The Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.

8.     The Master Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

9.     The following ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (b) any ballot cast by a Person that does not hold a Claim or Interest in a Class entitled to vote on the Plan, (c) any unsigned ballot, (d) any ballot that does not contain an

9

original signature and (e) any ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

10.     If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors.  The method of delivery of the Master Ballot to the Voting Agent is at your election and risk.

11.     The Master Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

12.     There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

13.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

14.     IF YOU HAVE ANY QUESTIONS CONCERNING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HALCÓN" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

15.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

> **EPIQ CORPORATE RESTRUCTURING**
> **777 THIRD AVENUE, 12TH FLOOR**
> **NEW YORK, NY 10017**
> **ATTN: HALCÓN PROCESSING**
> **TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS JULY 20, 2016 AT 5:00 P.M. (EASTERN TIME).**

10

## "Accredited Investor"

Rule 501(a) under Regulation D of the Securities Act of 1933, in relevant part, states that an "accredited investor" shall mean any person who comes within any of the below listed categories, or who the issuer reasonably believes comes within any of the below listed categories, at the time of the sale of the securities to that person.

(1) Any bank as defined in section 3(a)(2) of the Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2) Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(3) Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4) Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

(5) Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000, subject to the calculation of such net worth as set forth in such Rule;

(6) Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7) Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in § 230.506(b)(2)(ii); and

(8) Any entity in which all of the equity owners are accredited investors.

11

## **Exhibit B-2**

**Form of Master Ballot for Unsecured Note Claims**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | Chapter 11 (Voluntary) |
| **Halcón Resources Corporation, *et al.*,**[1] | |
| **Debtors.** | IMPORTANT: No chapter 11 cases have been commenced as of the date of distribution of this ballot. This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization. If chapter 11 cases are commenced, the Debtors will request joint administration of such cases. |

**MASTER BALLOT FOR ACCEPTING OR REJECTING THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF HALCÓN RESOURCES CORPORATION, *ET AL*. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS 6: UNSECURED NOTE CLAIMS**

**Only Eligible Unsecured Noteholders may vote to accept or reject the Plan using this Ballot.**

> **PLEASE READ THIS ENTIRE MASTER BALLOT BEFORE COMPLETING. PLEASE COMPLETE, DATE AND SIGN THIS MASTER BALLOT AND RETURN IT TO THE VOTING AGENT (AS DEFINED BELOW). THIS MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE JULY 20, 2016 AT 5:00 P.M. (PREAVILING EASTERN TIME) (THE "VOTING DEADLINE").**

This master ballot (the "**Master Ballot**") is being submitted to brokers, dealers, commercial banks, trust companies, or other agent nominees ("**Nominees**") of beneficial holders of certain Claims (a "**Beneficial Holder**") against Halcón Resources Corporation ("**Holdings**") and certain of its affiliates and subsidiaries (collectively, the "**Debtors**") in connection with the Debtors' solicitation of votes to accept or reject the *Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation Et Al. Under Chapter 11 of the Bankruptcy Code* (as amended, modified or supplemented from time to time, the "**Plan**[2]") in connection with cases (the "**Chapter 11 Cases**") to be commenced by the Debtors under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). Specifically, this Master Ballot is being submitted to Nominees of Beneficial Holders that are Eligible Holders of Claims against the Debtors arising under or relating to: (1) that certain indenture, dated as of November 6, 2012, by and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Halcón Resources Corporation (0684); Halcón Holdings, Inc. (5102); HK Resources, LLC (9194); The 7711 Corporation (4003); Halcón Gulf States, LLC (2976); Halcón Louisiana Operating, L.P. (9727); Halcón Field Services, LLC (0280); Halcón Energy Properties, Inc. (5292); Halcón Operating Co., Inc. (3588); Halcón Williston I, LLC (9550); Halcón Williston II, LLC (9676); Halcón Resources Operating, Inc. (4856); HRC Energy Louisiana, LLC (1433); HRC Energy Resources (WV), Inc. (2713); HRC Production Company (3501); Halcón Energy Holdings, LLC (0538); HRC Energy, LLC (5010); HK Energy, LLC (8956); HK Louisiana Operating, LLC (4549); HK Oil & Gas, LLC (0502); HK Energy Operating, LLC (8107); HRC Operating, LLC (5129). The Debtors' mailing address is 1000 Louisiana Street, Suite 6700, Houston, Texas 77002.

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan.

among Holdings, as issuer, each of the guarantors named therein, and U.S. Bank National Association, as trustee; (2) that certain indenture, dated as of August 13, 2013, by and among Holdings, as issuer, each of the guarantors named therein, and U.S. Bank National Association, as trustee; and (3) that certain indenture, dated as of July 16, 2012, by and among Holdings, as issuer, each of the guarantors named therein, and U.S. Bank National Association, as trustee (collectively, the "**Unsecured Note Claims**" and the holders of such Unsecured Note Claims, the "**Unsecured Note Claimholders**").  Nominees should use this Master Ballot to tabulate votes on behalf of holders of Eligible Unsecured Note Claims to accept or reject the Plan.

---

**BALLOTS ARE ONLY BEING SOLICITED FROM <u>ELIGIBLE</u> HOLDERS OF CLASS 6 UNSECURED NOTE CLAIMS.  TO BE AN ELIGIBLE HOLDER, AN UNSECURED NOTEHOLDER MUST BE, AS OF THE DATE SET FORTH IN THE DISCLOSURE STATEMENT, AN ACCREDITED INVESTOR AS DEFINED IN RULE 501 OF REGULATION D UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") AND CERTIFY TO THAT EFFECT, OR THE DEBTORS REASONABLY BELIEVE IS AN ACCREDITED INVESTOR.  IF A BENEFICIAL HOLDER IS A HOLDER OF CLASS 6 UNSECURED NOTE CLAIMS AND IS NOT AN <u>ELIGIBLE</u> UNSECURED NOTEHOLDER, SUCH HOLDER'S VOTE WILL NOT BE COUNTED.**

---

The Plan is attached as Exhibit A to the *Proposed Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation Et Al. Under Chapter 11 of the Bankruptcy Code* (as amended, modified or supplemented from time to time, the "**Disclosure Statement**"), which accompanies this Master Ballot.  The Disclosure Statement provides information to assist holders of Claims and Interests in deciding whether to accept or reject the Plan.  If you or an Unsecured Noteholder do not have a copy of the Disclosure Statement, you may obtain a copy from the Debtors' solicitation agent, Epiq Bankruptcy Solutions, LLC (the "**Voting Agent**"), by calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an electronic mail message to tabulation@epiqsystems.com with "Halcón" in the subject line and requesting that a copy be provided to you.  Upon receipt of these materials, you should <u>immediately</u> forward to the Beneficial Holders the Disclosure Statement and the form of ballot for such holders (the "**Beneficial Holder Ballot**") with a return envelope addressed to you, as provided in the attached instructions.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS**

As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 cases are commenced, the Plan is confirmed, and the Effective Date occurs, subject to the limitations set forth below, holders of Allowed Unsecured Note Claims will receive their Pro Rata share of: (a) New Common Shares, representing, after giving effect to the Restructuring, in the aggregate, 15.5% of the total outstanding shares of Reorganized Holdings (subject to dilution by the Management Incentive Plan and, to the extent applicable, the exercise of the New Warrants); (b) Cash in the amount of $37,595,657 (the "**Unsecured Noteholder Cash Distribution**"); and (c) warrants to purchase 4.0% of the New Common Shares outstanding as of the Effective Date, subject to dilution by the Management Incentive Plan, exercisable for a four (4) year period commencing on the Effective Date at a per share exercise price equal to $1,330,000,000 divided by the total number of New Common Shares issued and outstanding as of the Effective Date (the "**Unsecured Noteholder New Warrants**"); provided, <u>however</u>, that if the Unsecured Note Claims Class is a Rejecting Class, then: (i) the Convertible Noteholder New Warrants will not be issued under the Plan; (ii) the New Common Shares that were to be distributed to the holder of Allowed Convertible Note Claims and Allowed Existing Equity Interests will be reallocated and distributed Pro Rata to the holders of Allowed Third Lien Note Claims on the Effective Date; and (iii) if the Debtors elect not to terminate the Restructuring Support Agreement, then the distributions to be received by the holders of Allowed General Unsecured Claims will be modified so as to comply with section 1129(b) of the Bankruptcy Code, subject to the Consenting Third Lien Noteholders' rights under Section 9 of the

---

2

Restructuring Support Agreement.

In accordance with the Restructuring Support Agreement, the Debtors have agreed, at least five (5) business days prior to the Petition Date, and on the same date, to pay cash interest with respect to the Unsecured Noteholders through the later of May 15, 2016, and the date on which interest and/or dividends are paid on the Third Lien Notes, the Convertible Note or the Preferred Stock. The Unsecured Noteholder Cash Distribution (i) accounts for the cash interest paid to holders of the 8.875% Senior Unsecured Notes on May 16, 2016, and (ii) assumes that additional cash interest will be paid to the holders of the 9.25% Senior Unsecured Notes and 9.75% Senior Unsecured Notes prior to the Petition Date in the amount of $11,114,999, of which $4.2 million is attributable to the period from and after April 1, 2016 through May 15, 2016  (the "**Unsecured Interest Payment**").  From and after the Support Effective Date, the Debtors will not make any interest or dividend payments on account of the Convertible Note, Preferred Stock or otherwise, except as provided above.  The Debtors have further agreed to accrue interest through the Petition Date on the Third Lien Notes, the Unsecured Notes, the Convertible Note and the Preferred Stock in accordance with the terms thereof, and all such interest, to the extent not paid as set forth above, will be deemed part of the Third Lien Note Claims, Unsecured Note Claims, Convertible Note Claims, and Preferred Stock Interests, as applicable.

**The Plan further provides that, in the event the classes of Unsecured Note Claims, the Convertible Note Claims, or Preferred Stock Interests vote to reject the Plan (a "Rejecting Class") then: (i) any class of claims or interests junior in priority to such Rejecting Class will not receive or retain any value under the Plan; (ii) any New Warrants that were to be distributed to such junior classes of creditors will be cancelled and will not be issued under the Plan; (iii) the New Common Shares that were to be distributed to such junior classes of creditors or interest holders will be reallocated and distributed as set forth in the Plan, and (iv) the Cash that was to be distributed to such junior classes of creditor or interest holders will remain property of the Debtors and will vest in the Reorganized Debtors on the Effective Date.  In the event the Unsecured Note Claims is a Rejecting Class (a) the Convertible Noteholder New Warrants will not be issued under the Plan; (b) the New Common Shares that were to be distributed to the Convertible Noteholder and Existing Equity Interests will be reallocated and distributed pro rata to the Third Lien Noteholders; and (c) if the Debtors elect not to terminate the Restructuring Support Agreement, then the distributions to be received by the General Unsecured Claims will be modified so as to comply with section 1129(b) of the Bankruptcy Code, subject to the Consenting Third Lien Noteholders' rights under Section 9 of the Restructuring Support Agreement.  In the event the Preferred Stock Interests is a Rejecting Class, the Preferred Holders will not receive or retain any distributions on account of their Preferred Stock Interests.**

After the Debtors commence their Chapter 11 Cases, the Plan can be confirmed by United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and thereby made binding on the Beneficial Holders if: (i) it is accepted by the holders of (a) at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) at least two-third in amount of the Interests voted in each Impaired Class of Interests; and (ii) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on the Beneficial Holders whether or not a Beneficial Holder votes or if a Beneficial Holder votes to reject the Plan.

The Debtors intend to file their Chapter 11 Cases approximately thirty (30) calendar days after the date of the Disclosure Statement, but may file their Chapter 11 Cases sooner and before the Voting

Deadline.  Receipt of this Master Ballot does not signify that a Beneficial Holder's Claim(s) or Interest(s) has been or will be Allowed.  This Master Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 6 Unsecured Note Claims.

**NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN**

**If a Beneficial Holder (i) votes to accept the Plan, (ii) does not vote either to accept or to reject the Plan, or (iii) votes to reject the Plan but do not opt out of granting the releases set forth in the Plan, such Beneficial Holder shall be deemed to have consented to the releases contained in Section 10.7 of the Plan, which provides as follows:**

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Definitive Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law, by (i) the holders of all Claims or Interests who vote to accept the Plan, (ii) the holders of Claims or Interests that are Unimpaired under the Plan, (iii) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, and (iv) the holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, in each case from any and all Claims, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Restructuring Support Agreement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that constitutes fraud, gross negligence or willful misconduct.**

**OTHER RELEASE, EXCULPATION AND INJUNCTION PROVISIONS ARE FOUND IN SECTION X OF THE PLAN.  YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

4

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT.**

PLEASE COMPLETE ALL OF THE ITEMS BELOW.  IF THIS MASTER BALLOT HAS NOT BEEN
PROPERLY COMPLETED, THE VOTES OF THE BENEFICIAL HOLDERS MAY NOT BE
COUNTED.

## Item 1.  Certification of Authority to Vote.

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐    is a Nominee for the Beneficial Holders in the principal amount of Class 6 Unsecured Note Claims listed in Item 2 below and is the registered holder of such Class 6 Unsecured Note Claims;

☐    is acting under a power of attorney and/or agency (a copy of which must be provided upon request) granted by a Nominee that is the registered holder of Class 6 Unsecured Note Claims in the principal amount listed in Item 2 below; or

☐    has been granted a proxy (an original of which is annexed hereto) from a Nominee or a Beneficial Holder that is the registered holder of the principal amount of Class 6 Unsecured Note Claims listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Class 6 Unsecured Note Claims listed in Item 2 below.

## Items 2.  Vote on the Plan.

The undersigned transmits the following votes of Beneficial Holders in respect of their Class 6 Unsecured Note Claims, and certifies that the following Beneficial Holders, as identified by their respective customer account numbers set forth below, are Beneficial Holders as of the Voting Record Date and have delivered to the undersigned, as Nominee, Beneficial Holder Ballots casting such votes.[3]

---

[3] Indicate in the appropriate column the principal amount of the Unsecured Note Claims voted for each account, or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of such Beneficial Holder's Claims or Interests to accept or to reject the Plan and may not split such vote.  Any ballot executed by a Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and has not been corrected by the Voting Deadline, shall not be counted.

5

| Your Customer Account Number for Each Beneficial Holder of Class 6 Unsecured Note Claims that Voted | Principal Amount of Unsecured Note Claims Held by Your Customer | Item 2. Vote on Plan | | Item 3. Optional Release Election |
|---|---|---|---|---|
| | | ACCEPT | REJECT | Place a check below if the Beneficial Holder checked the box in Item 3 |
| 1. | | ☐ | ☐ | ☐ |
| 2. | | ☐ | ☐ | ☐ |
| 3. | | ☐ | ☐ | ☐ |
| 4. | | ☐ | ☐ | ☐ |
| 5. | | ☐ | ☐ | ☐ |
| 6. | | ☐ | ☐ | ☐ |
| 7. | | ☐ | ☐ | ☐ |
| 8. | | ☐ | ☐ | ☐ |
| 9. | | ☐ | ☐ | ☐ |
| 10. | | ☐ | ☐ | ☐ |

**Item 4.  Certification as to Transcription of Information from Item 3 of the Beneficial Holder Ballots as to Class 6 Unsecured Note Claims Voted Through Other Ballots.**

The undersigned certifies that the undersigned has transcribed in the following table the information, if any, Beneficial Holders have provided in Item 3 of the Beneficial Holder Ballot, identifying any Class 6 Unsecured Note Claims for which such Beneficial Holders have submitted other ballots (other than to the undersigned):

6

| Your Customer Account Number for Each Beneficial Holder That Completed Item 3 of the Beneficial Holder Ballot | TRANSCRIBE FROM ITEM 3 OF THE BALLOTS: | | | |
|---|---|---|---|---|
| | Account Number | Name of Beneficial Holder | Principal Amount of Class 6 Unsecured Note Claim Voted | CUSIP Number of other Class 6 Note Claim Voted |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Item 5.  Certification.**

By signing this Master Ballot, the undersigned certifies that:

(a)     (i) the undersigned has received a copy of the Disclosure Statement, Master Ballot and Beneficial Holder Ballot, and has delivered the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders holding Class 6 Unsecured Note Claims through the undersigned with a return envelope; (ii) the undersigned has received a completed and signed Beneficial Holder Ballot from each such Beneficial Holder as provided in this Master Ballot; (iii) the undersigned is the registered holder of the securities being voted or agent thereof; and (iv) the undersigned has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

(b)     the undersigned has properly disclosed: (i) the number of Beneficial Holders voting Class 6 Unsecured Note Claims through the undersigned; (ii) the respective amounts of Class 6 Unsecured Note Claims owned by each such Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the customer account or other identification number for each such Beneficial Holder;

(c)     if the undersigned is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class 6 Unsecured Note Claims, the undersigned confirms and attests to each of the certifications in Item 4 of the Beneficial Holder Ballot;

(d)     each such Beneficial Holder has certified to the undersigned that such beneficial holder is a Beneficial Holder and is otherwise eligible to vote on the Plan; and

(e)     the undersigned will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

7

**Item 6.  Nominee Information and Signature.**

Name of Nominee:

_____
(Print or Type)
Participant Number:_____

Name of proxy holder or agent for Nominee (if applicable):

_____
(Print or Type)

_____
Signature:

Name of Signatory:_____

Title:_____

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Date Completed:_____

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

**EPIQ CORPORATE RESTRUCTURING**
**777 THIRD AVENUE, 12TH FLOOR**
**NEW YORK, NY 10017**
**ATTN: HALCON PROCESSING**
**TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS JULY 20, 2016 AT 5:00 P.M. (EASTERN TIME).**

WEIL:\95740924\8\51351.0003

IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HALCÓN" IN THE SUBJECT LINE.

## MASTER BALLOT INSTRUCTIONS

16.　To have the votes of your Beneficial Holders count, you should already have delivered to each such holder a copy of the Disclosure Statement, along with a Beneficial Holder Ballot with a return envelope addressed to you, so such holder may return their Beneficial Holder Ballot to you in sufficient time for you to complete and return the Master Ballot to the Voting Agent, so that the Voting Agent *actually receives* the Master Ballot before the Voting Deadline.

17.　The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you and the Beneficial Holders (i) it is accepted by the holders of (a) at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) at least two-third in amount of the Interests voted in each Impaired Class of Interests; and (ii) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it, and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

18.　With regard to any Beneficial Holder Ballots returned to you, to have the vote of your Beneficial Holders count, you must: (a) retain such Beneficial Holder Ballots in your files and transfer the requested information from each such Beneficial Holder Ballot onto the Master Ballot; (b) execute the Master Ballot; and (c) deliver the Master Ballot to the Voting Agent in accordance with these instructions.

19.　Please keep any records of Beneficial Holder Ballots for at least one year after the Voting Deadline (or such other date as is set by order of the Bankruptcy Court).  You may be ordered to produce the Beneficial Holder Ballots to the Debtors or the Bankruptcy Court.

20.　If you are both the Nominee and Beneficial Holder, and you wish to vote such Class 6 Unsecured Note Claims for which you are a Beneficial Holder, you may return either a Beneficial Holder Ballot or the Master Ballot for such Claims or Interests.

21.　In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

22.　The Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.

23.　The Master Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

24.　The following ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (b) any ballot cast by a Person that does not hold a Claim or Interest in a Class entitled to vote on the Plan, (c) any unsigned ballot, (d) any ballot that does not contain an

9

original signature and (e) any ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

25.     If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors.  The method of delivery of the Master Ballot to the Voting Agent is at your election and risk.

26.     The Master Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

27.     There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

28.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

29.     IF YOU HAVE ANY QUESTIONS CONCERNING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HALCÓN" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

30.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.


**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

> **EPIQ CORPORATE RESTRUCTURING**
> **777 THIRD AVENUE, 12TH FLOOR**
> **NEW YORK, NY 10017**
> **ATTN: HALCÓN PROCESSING**
> **TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS JULY 20, 2016 AT 5:00 P.M. (EASTERN TIME).**

## "Accredited Investor"

Rule 501(a) under Regulation D of the Securities Act of 1933, in relevant part, states that an "accredited investor" shall mean any person who comes within any of the below listed categories, or who the issuer reasonably believes comes within any of the below listed categories, at the time of the sale of the securities to that person.

(9) Any bank as defined in section 3(a)(2) of the Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(10) Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(11) Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(12) Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

(13) Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000, subject to the calculation of such net worth as set forth in such Rule;

(14) Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(15) Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in § 230.506(b)(2)(ii); and

(16) Any entity in which all of the equity owners are accredited investors.

**Exhibit B-3**

**Form of Master Ballot for Preferred Stock Interests**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (Voluntary) |
| **Halcón Resources Corporation, et al.,**[1] | IMPORTANT: No chapter 11 cases have been commenced as of the date of distribution of this ballot. This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization. If chapter 11 cases are commenced, the Debtors will request joint administration of such cases. |
| **Debtors.** | |

### MASTER BALLOT FOR ACCEPTING OR REJECTING THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF HALCÓN RESOURCES CORPORATION, *ET AL.* UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### CLASS 11: PREFERRED STOCK INTERESTS

**Only Preferred Holders may vote to accept or reject the Plan using this Ballot.**

> **PLEASE READ THIS ENTIRE MASTER BALLOT BEFORE COMPLETING. PLEASE COMPLETE, DATE AND SIGN THIS MASTER BALLOT AND RETURN IT TO THE VOTING AGENT (AS DEFINED BELOW). THIS MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE JULY 20, 2016 AT 5:00 P.M. (PREAVILING EASTERN TIME) (THE "VOTING DEADLINE").**

This master ballot (the "**Master Ballot**") is being submitted to brokers, dealers, commercial banks, trust companies, or other agent nominees ("**Nominees**") of beneficial holders of certain Interests (a "**Beneficial Holder**") in Halcón Resources Corporation ("**Holdings**") and certain of its affiliates and subsidiaries (collectively, the "**Debtors**") in connection with the Debtors' solicitation of votes to accept or reject the *Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation Et Al. Under Chapter 11 of the Bankruptcy Code* (as amended, modified or supplemented from time to time, the "**Plan**"[2]) in connection with cases (the "**Chapter 11 Cases**") to be commenced by the Debtors under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). Specifically, this Master Ballot is being submitted to Nominees of Beneficial Holders of Interests in 5.75% Series A Convertible Perpetual Preferred Stock (the "**Preferred Stock Interests**" and the holders of such Preferred Stock

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Halcón Resources Corporation (0684); Halcón Holdings, Inc. (5102); HK Resources, LLC (9194); The 7711 Corporation (4003); Halcón Gulf States, LLC (2976); Halcón Louisiana Operating, L.P. (9727); Halcón Field Services, LLC (0280); Halcón Energy Properties, Inc. (5292); Halcón Operating Co., Inc. (3588); Halcón Williston I, LLC (9550); Halcón Williston II, LLC (9676); Halcón Resources Operating, Inc. (4856); HRC Energy Louisiana, LLC (1433); HRC Energy Resources (WV), Inc. (2713); HRC Production Company (3501); Halcón Energy Holdings, LLC (0538); HRC Energy, LLC (5010); HK Energy, LLC (8956); HK Louisiana Operating, LLC (4549); HK Oil & Gas, LLC (0502); HK Energy Operating, LLC (8107); HRC Operating, LLC (5129). The Debtors' mailing address is 1000 Louisiana Street, Suite 6700, Houston, Texas 77002.

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan.

Interests, the "**Preferred Holders**") issued by Holdings pursuant to that certain Certificate of Designations, Preferences, Rights and Limitations of 5.75% Series A Convertible Perpetual Preferred Stock, dated June 17, 2013.  Nominees should use this Master Ballot to tabulate votes on behalf of holders of Eligible Third Lien Note Claims, Eligible Unsecured Note Claims, or Preferred Stock Interests to accept or reject the Plan.

The Plan is attached as Exhibit A to the *Proposed Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation Et Al. Under Chapter 11 of the Bankruptcy Code* (as amended, modified or supplemented from time to time, the "**Disclosure Statement**"), which accompanies this Master Ballot.  The Disclosure Statement provides information to assist holders of Claims and Interests in deciding whether to accept or reject the Plan.  If you or a Preferred Holder do not have a copy of the Disclosure Statement, you may obtain a copy from the Debtors' solicitation agent, Epiq Bankruptcy Solutions, LLC (the "**Voting Agent**"), by calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an electronic mail message to tabulation@epiqsystems.com with "Halcón" in the subject line and requesting that a copy be provided to you.  Upon receipt of these materials, you should immediately forward to the Beneficial Holders the Disclosure Statement and the form of ballot for such holders (the "**Beneficial Holder Ballot**") with a return envelope addressed to you, as provided in the attached instructions.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 11**

As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 cases are commenced, the Plan is confirmed, and the Effective Date occurs, subject to the limitations set forth below, holders of Allowed Preferred Stock Interests will receive their Pro Rata share of Cash in the amount of $11.1 million; provided, however, that if any of the Unsecured Note Claims, the Convertible Note Claims or the Preferred Stock Interests Classes is a Rejecting Class, then the Preferred Holders shall not receive or retain any value under the Plan and the Cash to be distributed pursuant to the Preferred Stock Cash Distribution shall remain property of the Debtors and shall vest in the Reorganized Debtors on the Effective Date.

From and after the Support Effective Date, the Debtors will not make any interest or dividend payments on account of the Convertible Note, Preferred Stock or otherwise, except as provided in the Restructuring Support Agreement.  The Debtors have further agreed to accrue interest through the Petition Date on the Third Lien Notes, the Unsecured Notes, the Convertible Note and the Preferred Stock in accordance with the terms thereof, and all such interest, to the extent not paid as set forth above, will be deemed part of the Third Lien Note Claims, Unsecured Note Claims, Convertible Note Claims, and Preferred Stock Interests, as applicable.

**The Plan further provides that, in the event the classes of Unsecured Note Claims, the Convertible Note Claims, or Preferred Stock Interests vote to reject the Plan (a "Rejecting Class") then: (i) any class of claims or interests junior in priority to such Rejecting Class will not receive or retain any value under the Plan; (ii) any New Warrants that were to be distributed to such junior classes of creditors will be cancelled and will not be issued under the Plan; (iii) the New Common Shares that were to be distributed to such junior classes of creditors or interest holders will be reallocated and distributed as set forth in the Plan, and (iv) the Cash that was to be distributed to such junior classes of creditor or interest holders will remain property of the Debtors and will vest in the Reorganized Debtors on the Effective Date.  In the event the Unsecured Note Claims is a Rejecting Class (a) the Convertible Noteholder New Warrants will not be issued under the Plan; (b) the New Common Shares that were to be distributed to the Convertible Noteholder and Existing Equity Interests will be reallocated and distributed pro rata to the Third Lien Noteholders; and (c) if the Debtors elect not to terminate the Restructuring Support Agreement, then the distributions to be received by the General Unsecured Claims will be modified so as to comply with section 1129(b) of**

> **the Bankruptcy Code, subject to the Consenting Third Lien Noteholders' rights under Section 9 of the Restructuring Support Agreement.  In the event the Preferred Stock Interests is a Rejecting Class, the Preferred Holders will not receive or retain any distributions on account of their Preferred Stock Interests.**

After the Debtors commence their Chapter 11 Cases, the Plan can be confirmed by United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and thereby made binding on the Beneficial Holders if: (i) it is accepted by the holders of (a) at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) at least two-third in amount of the Interests voted in each Impaired Class of Interests; and (ii) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on the Beneficial Holders whether or not a Beneficial Holder votes or if a Beneficial Holder votes to reject the Plan.

The Debtors intend to file their Chapter 11 Cases approximately thirty (30) calendar days after the date of the Disclosure Statement, but may file their Chapter 11 Cases sooner and before the Voting Deadline.  Receipt of this Master Ballot does not signify that a Beneficial Holder's Interest(s) has been or will be Allowed.  This Master Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 11 Preferred Stock Interests.

3

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION
## AND INJUNCTION PROVISIONS IN THE PLAN

If a Beneficial Holder (i) votes to accept the Plan, (ii) does not vote either to accept or to reject the Plan, or (iii) votes to reject the Plan but do not opt out of granting the releases set forth in the Plan, such Beneficial Holder shall be deemed to have consented to the releases contained in Section 10.7 of the Plan, which provides as follows:

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Definitive Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law, by (i) the holders of all Claims or Interests who vote to accept the Plan, (ii) the holders of Claims or Interests that are Unimpaired under the Plan, (iii) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, and (iv) the holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, in each case from any and all Claims, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Restructuring Support Agreement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that constitutes fraud, gross negligence or willful misconduct.

**OTHER RELEASE, EXCULPATION AND INJUNCTION PROVISIONS ARE FOUND IN SECTION X OF THE PLAN.  YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

4

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT.**

PLEASE COMPLETE ALL OF THE ITEMS BELOW.  IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY COMPLETED, THE VOTES OF THE BENEFICIAL HOLDERS MAY NOT BE COUNTED.

**Item 1.  Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐    is a Nominee for the Beneficial Holders in the amount of Class 11 Preferred Stock Interests listed in Item 2 below and is the registered holder of such Class 11 Preferred Stock Interests;

☐    is acting under a power of attorney and/or agency (a copy of which must be provided upon request) granted by a Nominee that is the registered holder of Class 11 Preferred Stock Interests in the amount listed in Item 2 below; or

☐    has been granted a proxy (an original of which is annexed hereto) from a Nominee or a Beneficial Holder that is the registered holder of the amount of Class 11 Preferred Stock Interests listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Class 11 Preferred Stock Interests listed in Item 2 below.

**Items 2.  Vote on the Plan.**

The undersigned transmits the following votes of Beneficial Holders in respect of their Class 11 Preferred Stock Interests, and certifies that the following Beneficial Holders, as identified by their respective customer account numbers set forth below, are Beneficial Holders as of the Voting Record Date and have delivered to the undersigned, as Nominee, Beneficial Holder Ballots casting such votes.[3]

---

[3] Indicate in the appropriate column the amount of the Preferred Stock Interests voted for each account, or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of such Beneficial Holder's Claims or Interests to accept or to reject the Plan and may not split such vote.  Any ballot executed by a Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and has not been corrected by the Voting Deadline, shall not be counted.

5

| Your Customer Account Number for Each Beneficial Holder of Class 11 Preferred Stock Interests | Amount of Preferred Stock Interests Held by Your Customer | Item 2. Vote on Plan | | Item 3. Optional Release Election |
|---|---|---|---|---|
| | | ACCEPT | REJECT | Place a check below if the Beneficial Holder checked the box in Item 3 |
| 1. | | ☐ | ☐ | ☐ |
| 2. | | ☐ | ☐ | ☐ |
| 3. | | ☐ | ☐ | ☐ |
| 4. | | ☐ | ☐ | ☐ |
| 5. | | ☐ | ☐ | ☐ |
| 6. | | ☐ | ☐ | ☐ |
| 7. | | ☐ | ☐ | ☐ |
| 8. | | ☐ | ☐ | ☐ |
| 9. | | ☐ | ☐ | ☐ |

**Item 4.  Certification.**

By signing this Master Ballot, the undersigned certifies that:

(a)    (i) the undersigned has received a copy of the Disclosure Statement, Master Ballot and Beneficial Holder Ballot, and has delivered the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders holding Class 11 Preferred Stock Interests through the undersigned with a return envelope; (ii) the undersigned has received a completed and signed Beneficial Holder Ballot from each such Beneficial Holder as provided in this Master Ballot; (iii) the undersigned is the registered holder of the securities being voted or agent thereof; and (iv) the undersigned has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

(b)    the undersigned has properly disclosed: (i) the number of Beneficial Holders voting Class 11 Preferred Stock Interests through the undersigned; (ii) the respective amounts of Class 11 Preferred Stock Interests owned by each such Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the customer account or other identification number for each such Beneficial Holder;

6

(c)    if the undersigned is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class 11 Preferred Stock Interests the undersigned confirms and attests to each of the certifications in Item 4 of the Beneficial Holder Ballot;

(d)    each such Beneficial Holder has certified to the undersigned that such beneficial holder is a Beneficial Holder and is otherwise eligible to vote on the Plan; and

(e)    the undersigned will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

**Item 5.  Nominee Information and Signature.**

Name of Nominee:

_____
(Print or Type)
Participant Number:_____

Name of proxy holder or agent for Nominee (if applicable):

_____
(Print or Type)

_____
Signature:

Name of Signatory:_____

Title:_____

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Date Completed:_____

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

> **EPIQ CORPORATE RESTRUCTURING**
> **777 THIRD AVENUE, 12TH FLOOR**
> **NEW YORK, NY 10017**
> **ATTN: HALCON PROCESSING**
> **TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS JULY 20, 2016 AT 5:00 P.M. (EASTERN TIME).**

WEIL:\95740924\8\51351.0003

IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HALCÓN" IN THE SUBJECT LINE.

### MASTER BALLOT INSTRUCTIONS

31.    To have the votes of your Beneficial Holders count, you should already have delivered to each such holder a copy of the Disclosure Statement, along with a Beneficial Holder Ballot with a return envelope addressed to you, so such holder may return their Beneficial Holder Ballot to you in sufficient time for you to complete and return the Master Ballot to the Voting Agent, so that the Voting Agent *actually receives* the Master Ballot before the Voting Deadline.

32.    The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you and the Beneficial Holders (i) it is accepted by the holders of (a) at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) at least two-third in amount of the Interests voted in each Impaired Class of Interests; and (ii) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it, and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

33.    With regard to any Beneficial Holder Ballots returned to you, to have the vote of your Beneficial Holders count, you must: (a) retain such Beneficial Holder Ballots in your files and transfer the requested information from each such Beneficial Holder Ballot onto the Master Ballot; (b) execute the Master Ballot; and (c) deliver the Master Ballot to the Voting Agent in accordance with these instructions.

34.    Please keep any records of Beneficial Holder Ballots for at least one year after the Voting Deadline (or such other date as is set by order of the Bankruptcy Court).  You may be ordered to produce the Beneficial Holder Ballots to the Debtors or the Bankruptcy Court.

35.    If you are both the Nominee and Beneficial Holder, and you wish to vote such Class 11 Preferred Stock Interests for which you are a Beneficial Holder, you may return either a Beneficial Holder Ballot or the Master Ballot for such Claims or Interests.

36.    In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

37.    The Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.

38.    The Master Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

39.    The following ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (b) any ballot cast by a Person that does not hold a Claim or Interest in a Class entitled to vote on the Plan, (c) any unsigned ballot, (d) any ballot that does not contain an

original signature and (e) any ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

40.   If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors. The method of delivery of the Master Ballot to the Voting Agent is at your election and risk.

41.   The Master Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

42.   There may be changes made to the Plan that do not have material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

43.   NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

44.   IF YOU HAVE ANY QUESTIONS CONCERNING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HALCÓN" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

45.   THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.


**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

> **EPIQ CORPORATE RESTRUCTURING**
> **777 THIRD AVENUE, 12TH FLOOR**
> **NEW YORK, NY 10017**
> **ATTN: HALCÓN PROCESSING**
> **TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS JULY 20, 2016 AT 5:00 P.M. (EASTERN TIME).**

9

**Exhibit B-4**

**Form of Beneficial Ballot for Third Lien Note Claims**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (Voluntary) |
| **Halcón Resources Corporation,** *et al.,*[1] | IMPORTANT: No chapter 11 cases have been commenced as of the date of distribution of this ballot. This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization. If chapter 11 cases are commenced, the Debtors will request joint administration of such cases. |
| **Debtors.** | |

## BENEFICIAL HOLDER BALLOT ACCEPTING OR REJECTING THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF HALCÓN RESOURCES CORPORATION, *ET AL.* UNDER CHAPTER 11 OF THE BANKRUPTCY CODE.

## CLASS 5: THIRD LIEN NOTE CLAIMS

ELIGIBLE HOLDERS OF CLASS 5 THIRD LIEN NOTE CLAIMS SHOULD READ THIS ENTIRE BALLOT BEFORE COMPLETING. PLEASE COMPLETE, DATE AND SIGN THE BALLOT AND RETURN IT IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE OR BY FIRST CLASS MAIL, OVERNIGHT COURIER OR HAND DELIVERY TO THE VOTING AGENT (AS DEFINED BELOW). THIS BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE JULY 20, 2016 AT 5:00 P.M. (PREAVILING EASTERN TIME) (THE "VOTING DEADLINE").

BALLOTS ARE ONLY BEING SOLICITED FROM <u>ELIGIBLE</u> HOLDERS OF CLASS 5 THIRD LIEN NOTE CLAIMS. TO BE AN ELIGIBLE HOLDER, A THIRD LIEN NOTEHOLDER MUST BE, AS OF THE DATE SET FORTH IN THE DISCLOSURE STATEMENT, AN ACCREDITED INVESTOR AS DEFINED IN RULE 501 OF REGULATION D UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") AND CERTIFY TO THAT EFFECT, OR THE DEBTORS REASONABLY BELIEVE IS AN ACCREDITED INVESTOR. IF YOU ARE A HOLDER OF CLASS 5 THIRD LIEN NOTE CLAIMS AND YOU ARE NOT AN <u>ELIGIBLE</u> THIRD LIEN NOTEHOLDER, YOUR VOTE WILL NOT BE COUNTED.

This ballot (the "**Ballot**") is provided to you to solicit your vote to accept or reject the *Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation Et Al. Under Chapter 11 of the*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Halcón Resources Corporation (0684); Halcón Holdings, Inc. (5102); HK Resources, LLC (9194); The 7711 Corporation (4003); Halcón Gulf States, LLC (2976); Halcón Louisiana Operating, L.P. (9727); Halcón Field Services, LLC (0280); Halcón Energy Properties, Inc. (5292); Halcón Operating Co., Inc. (3588); Halcón Williston I, LLC (9550); Halcón Williston II, LLC (9676); Halcón Resources Operating, Inc. (4856); HRC Energy Louisiana, LLC (1433); HRC Energy Resources (WV), Inc. (2713); HRC Production Company (3501); Halcón Energy Holdings, LLC (0538); HRC Energy, LLC (5010); HK Energy, LLC (8956); HK Louisiana Operating, LLC (4549); HK Oil & Gas, LLC (0502); HK Energy Operating, LLC (8107); HRC Operating, LLC (5129). The Debtors' mailing address is 1000 Louisiana Street, Suite 6700, Houston, Texas 77002.

Bankruptcy Code (as amended, modified or supplemented from time to time, the "**Plan**[2]") in connection with cases (the "**Chapter 11 Cases**") to be commenced by the Debtors under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").   The Plan is being proposed by Halcón Resources Corporation and its above-captioned debtor affiliates and subsidiaries (collectively, the "**Debtors**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of June 13, 2016 (the "**Voting Record Date**"), a beneficial holder (a "**Beneficial Holder**") of a Claim against the Debtors arising under or relating to that certain Indenture, dated as of September 10, 2015, by and among Holdings, as issuer, the guarantors party thereto, and U.S. Bank, National Association, as trustee, pursuant to which Holdings issued certain 13% Senior Secured Notes due 2022 (the "**Third Lien Notes Claims**" and the holders of such Third Lien Note Claims, the "**Third Lien Note Claimholders**") and you are an Eligible Holder of such Third Lien Note Claims.

The Plan is attached as Exhibit A to the *Proposed Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation Et Al. Under Chapter 11 of the Bankruptcy Code* (as amended, modified or supplemented from time to time, the "**Disclosure Statement**"), which accompanies this Ballot.  The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have a copy of the Disclosure Statement, you may obtain a copy from the Debtors' solicitation and voting agent, Epiq Bankruptcy Solutions, LLC (the "**Voting Agent**"), by calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an electronic mail message to tabulation@epiqsystems.com with "Halcón" in the subject line and requesting that a copy be provided to you.  You should review the Disclosure Statement and the Plan in their entirety before you vote.  You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 5**

As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 cases are commenced, the Plan is confirmed, and the Effective Date occurs holders of Allowed Third Lien Note Claims will receive their Pro Rata share of: (a) common shares, par value $0.0001 per share, of Reorganized Holdings to be issued under the Plan (the "**New Common Shares**"), which New Common Shares will represent, after giving effect to the Restructuring, in the aggregate, 76.5% of the total outstanding shares of Reorganized Holdings (subject to dilution by the Management Incentive Plan and, to the extent applicable, the exercise of the New Warrants); and (b) Cash in the amount of $33,825,588 (the "**Third Lien Noteholder Cash Distribution**").

In accordance with the Restructuring Support Agreement, the Debtors have agreed, at least five (5) business days prior to the Petition Date, and on the same date, to pay cash interest with respect to the Third Lien Noteholders through the later of May 15, 2016, and the date on which interest and/or dividends are paid on the Unsecured Notes, the Convertible Note or the Preferred Stock.  The Third Lien Noteholder Cash Distribution assumes that additional cash interest will be paid to the Third Lien Noteholders prior to the Commencement Date in the amount of $33,084,025, of which $16.2 million is attributable to the period from and after April 1, 2016 through May 15, 2016 (the "**Third Lien Interest Payment**").   From and after the Support Effective Date, the Debtors will not make any interest or dividend payments on account of the Convertible Note, Preferred Stock or otherwise, except as provided above.  The Debtors have further agreed to accrue interest through the Petition Date on the Third Lien Notes, the Unsecured Notes, the Convertible Note and the Preferred Stock in accordance with the terms thereof, and all such interest, to the extent not paid as set forth above, will be deemed part of the Third Lien Note Claims, Unsecured Note Claims, Convertible Note Claims, and Preferred Stock Interests, as

---

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan.

applicable.

**The Plan further provides that, in the event the classes of Unsecured Note Claims, the Convertible Note Claims, or Preferred Stock Interests vote to reject the Plan (a "Rejecting Class") then: (i) any class of claims or interests junior in priority to such Rejecting Class will not receive or retain any value under the Plan; (ii) any New Warrants that were to be distributed to such junior classes of creditors will be cancelled and will not be issued under the Plan; (iii) the New Common Shares that were to be distributed to such junior classes of creditors or interest holders will be reallocated and distributed as set forth in the Plan, and (iv) the Cash that was to be distributed to such junior classes of creditor or interest holders will remain property of the Debtors and will vest in the Reorganized Debtors on the Effective Date. In the event the Unsecured Note Claims is a Rejecting Class (a) the Convertible Noteholder New Warrants will not be issued under the Plan; (b) the New Common Shares that were to be distributed to the Convertible Noteholder and Existing Equity Interests will be reallocated and distributed pro rata to the Third Lien Noteholders; and (c) if the Debtors elect not to terminate the Restructuring Support Agreement, then the distributions to be received by the General Unsecured Claims will be modified so as to comply with section 1129(b) of the Bankruptcy Code, subject to the Consenting Third Lien Noteholders' rights under Section 9 of the Restructuring Support Agreement. In the event the Preferred Stock Interests is a Rejecting Class, the Preferred Holders will not receive or retain any distributions on account of their Preferred Stock Interests.**

After the Debtors commence their Chapter 11 Cases, the Plan can be confirmed by United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and thereby made binding on you if: (i) it is accepted by the holders of (a) at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) at least two-third in amount of the Interests voted in each Impaired Class of Interests; and (ii) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the broker, dealer, commercial bank, trust company, or other agent designated as your nominee (the "**Nominee**") to be returned to the Voting Agent by the Voting Deadline

The Debtors intend to file their Chapter 11 Cases approximately thirty (30) calendar days after the date of the Disclosure Statement, but may file their Chapter 11 Cases sooner and before the Voting Deadline.

Your receipt of this Ballot does not signify that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 5 Third Lien Note Claims. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

3

**NOTICE REGARDING CERTAIN RELEASE, EXCULPATION
AND INJUNCTION PROVISIONS IN THE PLAN**

If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan, or (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan, which provides as follows:

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Definitive Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law, by (i) the holders of all Claims or Interests who vote to accept the Plan, (ii) the holders of Claims or Interests that are Unimpaired under the Plan, (iii) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, and (iv) the holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, in each case from any and all Claims, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Restructuring Support Agreement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that constitutes fraud, gross negligence or willful misconduct.

**OTHER RELEASE, EXCULPATION AND INJUNCTION PROVISIONS ARE FOUND IN SECTION X OF THE PLAN. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

4

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ITEMS 1, 2, 3, 4, AND 5.   IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Principal Amount of Claims**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory of such a Beneficial Holder) of Third Lien Note Claims in the aggregate unpaid <u>principal</u> amount inserted into the box below, without regard to any accrued but unpaid interest.  If your Third Lien Note Claims are held by a Nominee on your behalf and you do not know the principal amount of the Claims held, please contact your Nominee immediately to obtain the amount.

- Amount of Third Lien Note Claims:

> $

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

The undersigned Beneficial Holder of Class 5 Third Lien Note Claims votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3. Optional Release Election**.  If you voted to reject the Plan in Item 2 above, check this box if you elect not to grant the releases contained in Section 10.7 of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you will be deemed to consent to the releases contained in section 10.7 of the Plan to the fullest extent permitted by applicable law.
If you (i) submit a rejecting Ballot without this box checked, or (ii) you do not vote either to accept or reject the Plan, you will be deemed to consent to the releases contained in Section 10.7 of the Plan to the fullest extent permitted by applicable law.

☐      The undersigned has voted to reject the Plan in Item 2 and elects not to grant the releases contained in Section 10.7 of the Plan.

**Item 4.  Certification as to Class 5 Third Lien Note Claims Held in Additional Accounts**.  The undersigned hereby certifies that either (i) it has not submitted any other Ballots for other Class 5 Third Lien Note Claims held in other accounts or other record names, or (ii) if it has submitted Ballots for other Third Lien Note Claims held in other accounts or other record names, then such Ballots indicate the <u>same</u> vote to accept or reject the Plan.  If the undersigned has submitted Ballots for other such Third Lien Note Claims then the undersigned certifies the accuracy of the information provided below as to such other Claims.

5

| Account Number | Name of Beneficial Holder (or name of Nominee if notes are held through a Nominee) | Amount of Other Class 5 Third Lien Note Claims Voted |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**Item 5.  Acknowledgments**. By signing this Ballot, the Beneficial Holder (or authorized signatory of such Beneficial Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Beneficial Holder (or is entitled to vote on behalf of such Beneficial Holder) of the Third Lien Note Claims described in Item 1 as of the Voting Record Date, and if it has submitted any other Ballots for other Third Lien Note Claims held in other accounts or other record names that it has provided the information requested above in Item 4, (iii) it is an "accredited investor" within the meaning of Rule 501(a) under Regulation D of the Securities Act of 1933, as amended, (iv) if delivered to a Nominee, such Beneficial Holder authorizes its Nominee to treat this Ballot as a direction to include its claim as a Class 5 Third Lien Note Claim on the Master Ballot, and (v) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.   The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.

_____

Name of Beneficial Holder

_____

Signature

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

6

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HALCÓN" IN THE SUBJECT LINE.

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot in the envelope provided or as indicated by your Nominee.  Any Ballot that is illegible, contains insufficient information to identify the Beneficial Holder, does not contain an original signature, or is unsigned will not be counted.

Please return the Ballot in the envelope provided, or as otherwise directed by your Nominee.  **The Voting Agent will tabulate all properly completed Ballots and Master Ballots received on or before the Voting Deadline.  IF YOU ARE RETURNING YOUR BALLOT TO YOUR NOMINEE, PLEASE RETURN IT BY THE DEADLINE PROVIDED BY YOUR NOMINEE OR OTHERWISE ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE VOTING AGENT BY THE VOTING DEADLINE.**  Ballots and Master Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted.

2.      You must vote all your Claims or Interests within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different Claims or Interests within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

3.      The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of Claims or Interests.

4.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

5.      If you cast more than one Ballot voting the same Claims or Interests prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

6.      In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

7.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

8.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE

7

MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

9.      PLEASE RETURN YOUR BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED BY YOUR NOMINEE.

10.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HALCÓN" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

11.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

### "Accredited Investor"

Rule 501(a) under Regulation D of the Securities Act of 1933, in relevant part, states that an "accredited investor" shall mean any person who comes within any of the below listed categories, or who the issuer reasonably believes comes within any of the below listed categories, at the time of the sale of the securities to that person.

(1) Any bank as defined in section 3(a)(2) of the Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2) Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(3) Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4) Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

(5) Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000, subject to the calculation of such net worth as set forth in such Rule;

(6) Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7) Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in § 230.506(b)(2)(ii); and

(8) Any entity in which all of the equity owners are accredited investors.

WEIL:\95740924\8\51351.0003

**<u>Exhibit B-5</u>**

**Form of Beneficial Ballot for Unsecured Note Claims**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (Voluntary) |
| **Halcón Resources Corporation,** *et al.,*[1] | IMPORTANT: No chapter 11 cases have been commenced as of the date of distribution of this ballot. This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization. If chapter 11 cases are commenced, the Debtors will request joint administration of such cases. |
| **Debtors.** | |

### BENEFICIAL HOLDER BALLOT ACCEPTING OR REJECTING THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF HALCÓN RESOURCES CORPORATION, *ET AL.* UNDER CHAPTER 11 OF THE BANKRUPTCY CODE.

### CLASS 6: UNSECURED NOTE CLAIMS

**ELIGIBLE HOLDERS OF CLASS 6 UNSECURED NOTE CLAIMS SHOULD READ THIS ENTIRE BALLOT BEFORE COMPLETING. PLEASE COMPLETE, DATE AND SIGN THE BALLOT AND RETURN IT IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE OR BY FIRST CLASS MAIL, OVERNIGHT COURIER OR HAND DELIVERY TO THE VOTING AGENT (AS DEFINED BELOW). THIS BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE JULY 20, 2016 AT 5:00 P.M. (PREAVILING EASTERN TIME) (THE "VOTING DEADLINE").**

**BALLOTS ARE ONLY BEING SOLICITED FROM <u>ELIGIBLE</u> HOLDERS OF CLASS 6 UNSECURED NOTE CLAIMS. TO BE AN ELIGIBLE HOLDER, AN UNSECURED NOTEHOLDER MUST BE, AS OF THE DATE SET FORTH IN THE DISCLOSURE STATEMENT, AN ACCREDITED INVESTOR AS DEFINED IN RULE 501 OF REGULATION D UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") AND CERTIFY TO THAT EFFECT, OR THE COMPANY REASONABLY BELIEVES IS AN ACCREDITED INVESTOR. IF YOU ARE A HOLDER OF CLASS 6 UNSECURED NOTE CLAIMS AND YOU ARE NOT AN <u>ELIGIBLE</u> UNSECURED NOTEHOLDER, YOUR VOTE WILL NOT BE COUNTED.**

This ballot (the "**Ballot**") is provided to you to solicit your vote to accept or reject the *Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation Et Al. Under Chapter 11 of the*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Halcón Resources Corporation (0684); Halcón Holdings, Inc. (5102); HK Resources, LLC (9194); The 7711 Corporation (4003); Halcón Gulf States, LLC (2976); Halcón Louisiana Operating, L.P. (9727); Halcón Field Services, LLC (0280); Halcón Energy Properties, Inc. (5292); Halcón Operating Co., Inc. (3588); Halcón Williston I, LLC (9550); Halcón Williston II, LLC (9676); Halcón Resources Operating, Inc. (4856); HRC Energy Louisiana, LLC (1433); HRC Energy Resources (WV), Inc. (2713); HRC Production Company (3501); Halcón Energy Holdings, LLC (0538); HRC Energy, LLC (5010); HK Energy, LLC (8956); HK Louisiana Operating, LLC (4549); HK Oil & Gas, LLC (0502); HK Energy Operating, LLC (8107); HRC Operating, LLC (5129). The Debtors' mailing address is 1000 Louisiana Street, Suite 6700, Houston, Texas 77002.

*Bankruptcy Code* (as amended, modified or supplemented from time to time, the "**Plan**[2]") in connection with cases (the "**Chapter 11 Cases**") to be commenced by the Debtors under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Plan is being proposed by Halcón Resources Corporation and its above-captioned debtor affiliates and subsidiaries (collectively, the "**Debtors**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of June 13, 2016 (the "**Voting Record Date**"), a beneficial holder (a "**Beneficial Holder**") of a Claim against the Debtors arising under or relating to: (1) that certain indenture, dated as of November 6, 2012, by and among Holdings, as issuer, each of the guarantors named therein, and U.S. Bank National Association, as trustee; (2) that certain indenture, dated as of August 13, 2013, by and among Holdings, as issuer, each of the guarantors named therein, and U.S. Bank National Association, as trustee; and (3) that certain indenture, dated as of July 16, 2012, by and among Holdings, as issuer, each of the guarantors named therein, and U.S. Bank National Association, as trustee (collectively, the "**Unsecured Note Claims**" and the holders of such Unsecured Note Claims, the "**Unsecured Note Claimholders**"); <u>and</u> (b) you are an Eligible Holder of such Unsecured Note Claims.

The Plan is attached as Exhibit A to the *Proposed Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation Et Al. Under Chapter 11 of the Bankruptcy Code* (as amended, modified or supplemented from time to time, the "**Disclosure Statement**"), which accompanies this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a copy of the Disclosure Statement, you may obtain a copy from the Debtors' solicitation and voting agent, Epiq Bankruptcy Solutions, LLC (the "**Voting Agent**"), by calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an electronic mail message to tabulation@epiqsystems.com with "Halcón" in the subject line and requesting that a copy be provided to you. You should review the Disclosure Statement and the Plan in their entirety before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 6**

As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 cases are commenced, the Plan is confirmed, and the Effective Date occurs holders of Allowed Unsecured Note Claims will receive their Pro Rata share of: (a) common shares, par value $0.0001 per share, of Reorganized Holdings to be issued under the Plan (the "**New Common Shares**"), which New Common Shares will represent, after giving effect to the Restructuring, in the aggregate, 15.5% of the total outstanding shares of Reorganized Holdings (subject to dilution by the Management Incentive Plan and, to the extent applicable, the exercise of the New Warrants); (b) Cash in the amount of $37,595,657 (the "**Unsecured Noteholder Cash Distribution**"); and (c) warrants to purchase 4.0% of the New Common Shares outstanding as of the Effective Date, subject to dilution by the Management Incentive Plan, exercisable for a four (4) year period commencing on the Effective Date at a per share exercise price equal to $1,330,000,000 divided by the total number of New Common Shares issued and outstanding as of the Effective Date (the "**Unsecured Noteholder New Warrants**"); provided, however, that if the Unsecured Note Claims is a Rejecting Class, then: (i) the Convertible Noteholder New Warrants will not be issued under the Plan; (ii) the New Common Shares that were to be distributed to the holder of Allowed Convertible Note Claims and Allowed Existing Equity Interests shall be reallocated and distributed Pro Rata to the holders of Allowed Third Lien Note Claims; and (iii) if the Debtors elect not to terminate the Restructuring Support Agreement, then the distributions to be received by the holders of Allowed General Unsecured Claims shall be modified so as to comply with section 1129(b) of the Bankruptcy Code,

---

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan.

2

subject to the Consenting Third Lien Noteholders' rights under Section 9 of the Restructuring Support Agreement.

In accordance with the Restructuring Support Agreement, the Debtors have agreed, at least five (5) business days prior to the Petition Date, and on the same date, to pay cash interest with respect to the Unsecured Noteholders through the later of May 15, 2016, and the date on which interest and/or dividends are paid on the Third Lien Notes, the Convertible Note or the Preferred Stock.  The Unsecured Noteholder Cash Distribution (i) accounts for the cash interest paid to holders of the 8.875% Senior Unsecured Notes on May 16, 2016, and (ii) assumes that additional cash interest will be paid to the holders of the 9.25% Senior Unsecured Notes and 9.75% Senior Unsecured Notes prior to the Petition Date in the amount of $11,114,999, of which $4.2 million is attributable to the period from and after April 1, 2016 through May 15, 2016 (the "**Unsecured Interest Payment**").  From and after the Support Effective Date, the Debtors will not make any interest or dividend payments on account of the Convertible Note, Preferred Stock or otherwise, except as provided above.  The Debtors have further agreed to accrue interest through the Petition Date on the Third Lien Notes, the Unsecured Notes, the Convertible Note and the Preferred Stock in accordance with the terms thereof, and all such interest, to the extent not paid as set forth above, will be deemed part of the Third Lien Note Claims, Unsecured Note Claims, Convertible Note Claims, and Preferred Stock Interests, as applicable.

**The Plan further provides that, in the event the classes of Unsecured Note Claims, the Convertible Note Claims, or Preferred Stock Interests vote to reject the Plan (a "Rejecting Class") then: (i) any class of claims or interests junior in priority to such Rejecting Class will not receive or retain any value under the Plan; (ii) any New Warrants that were to be distributed to such junior classes of creditors will be cancelled and will not be issued under the Plan; (iii) the New Common Shares that were to be distributed to such junior classes of creditors or interest holders will be reallocated and distributed as set forth in the Plan, and (iv) the Cash that was to be distributed to such junior classes of creditor or interest holders will remain property of the Debtors and will vest in the Reorganized Debtors on the Effective Date.  In the event the Unsecured Note Claims is a Rejecting Class (a) the Convertible Noteholder New Warrants will not be issued under the Plan; (b) the New Common Shares that were to be distributed to the Convertible Noteholder and Existing Equity Interests will be reallocated and distributed pro rata to the Third Lien Noteholders; and (c) if the Debtors elect not to terminate the Restructuring Support Agreement, then the distributions to be received by the General Unsecured Claims will be modified so as to comply with section 1129(b) of the Bankruptcy Code, subject to the Consenting Third Lien Noteholders' rights under Section 9 of the Restructuring Support Agreement.  In the event the Preferred Stock Interests is a Rejecting Class, the Preferred Holders will not receive or retain any distributions on account of their Preferred Stock Interests.**

After the Debtors commence their Chapter 11 Cases, the Plan can be confirmed by United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and thereby made binding on you if: (i) it is accepted by the holders of (a) at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) at least two-third in amount of the Interests voted in each Impaired Class of Interests; and (ii) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and

3

return this Ballot to the broker, dealer, commercial bank, trust company, or other agent designated as your nominee (the "**Nominee**") to be returned to the Voting Agent by the Voting Deadline.

The Debtors intend to file their Chapter 11 Cases approximately thirty (30) calendar days after the date of the Disclosure Statement, but may file their Chapter 11 Cases sooner and before the Voting Deadline.

Your receipt of this Ballot does not signify that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 6 Unsecured Note Claims.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

4

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION
## AND INJUNCTION PROVISIONS IN THE PLAN

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan, or (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan, which provides as follows:**

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Definitive Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law, by (i) the holders of all Claims or Interests who vote to accept the Plan, (ii) the holders of Claims or Interests that are Unimpaired under the Plan, (iii) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, and (iv) the holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, in each case from any and all Claims, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Restructuring Support Agreement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that constitutes fraud, gross negligence or willful misconduct.**

**OTHER RELEASE, EXCULPATION AND INJUNCTION PROVISIONS ARE FOUND IN SECTION X OF THE PLAN. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

5

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ITEMS 1, 2, 3, 4, AND 5.   IF THIS BALLOT HAS NOT BEEN PROPERLY
SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS
HAVING BEEN CAST.

**Item 1.  Principal Amount of Claims**.  The undersigned hereby certifies that, as of the Voting Record
Date, the undersigned was the Beneficial Holder (or authorized signatory of such a Beneficial Holder) of
Unsecured Note Claims in the aggregate unpaid <u>principal</u> amount inserted into the box below, without
regard to any accrued but unpaid interest.  If your Unsecured Note Claims are held by a Nominee on your
behalf and you do not know the principal amount of the Claims held, please contact your Nominee
immediately to obtain the amount.

- Amount of Unsecured Note Claims:

|   |
|---|
| $ |

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims
below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the
Plan, shall not be counted in determining acceptance or rejection of the Plan.

The undersigned Beneficial Holder of Class 6 Unsecured Note Claims votes to (check <u>one</u> box):

☐ **Accept** the Plan                    ☐ **Reject** the Plan

**Item 3. Optional Release Election**.  If you voted to reject the Plan in Item 2 above, check this box if you
elect not to grant the releases contained in Section 10.7 of the Plan.  Election to withhold consent is at
your option.  If you voted to accept the Plan in Item 2 above, you will be deemed to consent to the
releases contained in section 10.7 of the Plan to the fullest extent permitted by applicable law.
If you (i) submit a rejecting Ballot without this box checked, or (ii) you do not vote either to accept or
reject the Plan, you will be deemed to consent to the releases contained in Section 10.7 of the Plan to the
fullest extent permitted by applicable law.

☐      The undersigned has voted to reject the Plan in Item 2 and elects not to grant the releases
contained in Section 10.7 of the Plan.

**Item 4.  Certification as to Class 6 Unsecured Note Claims Held in Additional Accounts**.  The
undersigned hereby certifies that either (i) it has not submitted any other Ballots for other Class 6
Unsecured Note Claims held in other accounts or other record names, or (ii) if it has submitted Ballots for
other Unsecured Note Claims held in other accounts or other record names, then such Ballots indicate the
<u>same</u> vote to accept or reject the Plan.  If the undersigned has submitted Ballots for other such Unsecured
Note Claims then the undersigned certifies the accuracy of the information provided below as to such
other Claims or Interests.

6

| Account Number | Name of Beneficial Holder (or name of Nominee if notes are held through a Nominee) | Amount of Other Class 6 Unsecured Note Claims Voted |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**Item 5.  Acknowledgments.** By signing this Ballot, the Beneficial Holder (or authorized signatory of such Beneficial Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Beneficial Holder (or is entitled to vote on behalf of such Beneficial Holder) of the Unsecured Note Claims described in Item 1 as of the Voting Record Date, and if it has submitted any other Ballots for other Unsecured Note Claims held in other accounts or other record names that it has provided the information requested above in Item 4, (iii) it is an "accredited investor" within the meaning of Rule 501(a) under Regulation D of the Securities Act of 1933, as amended, (iv) if delivered to a Nominee, such Beneficial Holder authorizes its Nominee to treat this Ballot as a direction to include its claim as a Class 6 Unsecured Note Claims on the Master Ballot, and (v) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.

_____

Name of Beneficial Holder

_____

Signature

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

7

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HALCÓN" IN THE SUBJECT LINE.

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.  Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot in the envelope provided or as indicated by your Nominee.  Any Ballot that is illegible, contains insufficient information to identify the Beneficial Holder, does not contain an original signature, or is unsigned will not be counted.

    Please return the Ballot in the envelope provided, or as otherwise directed by your Nominee.  **The Voting Agent will tabulate all properly completed Ballots and Master Ballots received on or before the Voting Deadline.  IF YOU ARE RETURNING YOUR BALLOT TO YOUR NOMINEE, PLEASE RETURN IT BY THE DEADLINE PROVIDED BY YOUR NOMINEE OR OTHERWISE ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE VOTING AGENT BY THE VOTING DEADLINE.**  Ballots and Master Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted.

2.  You must vote all your Claims or Interests within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different Claims or Interests within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

3.  The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of Claims or Interests.

4.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

5.  If you cast more than one Ballot voting the same Claims or Interests prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

6.  In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

7.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

WEIL:\95740924\8\51351.0003

8.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

9.      PLEASE RETURN YOUR BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED BY YOUR NOMINEE.

10.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HALCÓN" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

11.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

WEIL:\95740924\8\51351.0003

# "Accredited Investor"

Rule 501(a) under Regulation D of the Securities Act of 1933, in relevant part, states that an "accredited investor" shall mean any person who comes within any of the below listed categories, or who the issuer reasonably believes comes within any of the below listed categories, at the time of the sale of the securities to that person.

(1) Any bank as defined in section 3(a)(2) of the Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2) Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(3) Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4) Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

(5) Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000, subject to the calculation of such net worth as set forth in such Rule;

(6) Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7) Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in § 230.506(b)(2)(ii); and

(8) Any entity in which all of the equity owners are accredited investors.

10

**<u>Exhibit B-6</u>**

**Form of Beneficial Ballot for Preferred Stock Interests**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (Voluntary) |
| **Halcón Resources Corporation**, *et al.*,[14] | IMPORTANT: No chapter 11 cases have been commenced as of the date of distribution of this ballot.  This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization. |
| **Debtors.** | If chapter 11 cases are commenced, the Debtors will request joint administration of such cases. |

### BENEFICIAL HOLDER BALLOT ACCEPTING OR REJECTING THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF HALCÓN RESOURCES CORPORATION, *ET AL.* UNDER CHAPTER 11 OF THE BANKRUPTCY CODE.

### CLASS 11: PREFERRED STOCK INTERESTS

---

**HOLDERS OF CLASS 11 PREFERRED STOCK INTERESTS SHOULD READ THIS ENTIRE BALLOT BEFORE COMPLETING.  PLEASE COMPLETE, DATE AND SIGN THE BALLOT AND RETURN IT IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE OR BY FIRST CLASS MAIL, OVERNIGHT COURIER OR HAND DELIVERY TO THE VOTING AGENT (AS DEFINED BELOW).  THIS BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE JULY 20, 2016 AT 5:00 P.M. (PREAVILING EASTERN TIME) (THE "VOTING DEADLINE").**

---

This ballot (the "**Ballot**") is provided to you to solicit your vote to accept or reject the *Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation Et Al. Under Chapter 11 of the Bankruptcy Code* (as amended, modified or supplemented from time to time, the "**Plan**[15]") in connection with cases (the "**Chapter 11 Cases**") to be commenced by the Debtors under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").   The Plan is being proposed by Halcón Resources Corporation and its above-captioned debtor affiliates and subsidiaries (collectively, the "**Debtors**").

---

[14] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Halcón Resources Corporation (0684); Halcón Holdings, Inc. (5102); HK Resources, LLC (9194); The 7711 Corporation (4003); Halcón Gulf States, LLC (2976); Halcón Louisiana Operating, L.P. (9727); Halcón Field Services, LLC (0280); Halcón Energy Properties, Inc. (5292); Halcón Operating Co., Inc. (3588); Halcón Williston I, LLC (9550); Halcón Williston II, LLC (9676); Halcón Resources Operating, Inc. (4856); HRC Energy Louisiana, LLC (1433); HRC Energy Resources (WV), Inc. (2713); HRC Production Company (3501); Halcón Energy Holdings, LLC (0538); HRC Energy, LLC (5010); HK Energy, LLC (8956); HK Louisiana Operating, LLC (4549); HK Oil & Gas, LLC (0502); HK Energy Operating, LLC (8107); HRC Operating, LLC (5129).  The Debtors' mailing address is 1000 Louisiana Street, Suite 6700, Houston, Texas 77002.

[15] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of June 13, 2016 (the "**Voting Record Date**"), a beneficial holder (a "**Beneficial Holder**") of an Interest in 5.75% Series A Convertible Perpetual Preferred Stock (the "**Preferred Stock Interests**" and the holders of such Preferred Stock Interests, the "**Preferred Holders**") issued by Holdings pursuant to that certain Certificate of Designations, Preferences, Rights and Limitations of 5.75% Series A Convertible Perpetual Preferred Stock, dated June 17, 2013.

The Plan is attached as Exhibit A to the *Proposed Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation Et Al. Under Chapter 11 of the Bankruptcy Code* (as amended, modified or supplemented from time to time, the "**Disclosure Statement**"), which accompanies this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a copy of the Disclosure Statement, you may obtain a copy from the Debtors' solicitation and voting agent, Epiq Bankruptcy Solutions, LLC (the "**Voting Agent**"), by calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an electronic mail message to tabulation@epiqsystems.com with "Halcón" in the subject line and requesting that a copy be provided to you. You should review the Disclosure Statement and the Plan in their entirety before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

---

### IMPORTANT NOTICE REGARDING TREATMENT CLASS 11

As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 cases are commenced, the Plan is confirmed, and the Effective Date occurs, subject to the limitations set forth below, holders of Allowed Preferred Stock Interests will receive their pro rata share (based on the total amount of Allowed Preferred Stock Interests) of Cash in the amount of $11.1 million; provided, however, that if any of the Unsecured Note Claims, the Convertible Note Claims or the Preferred Stock Interests Classes is a Rejecting Class, then the Preferred Holders shall not receive or retain any value under the Plan and the Cash to be distributed pursuant to the Preferred Stock Cash Distribution shall remain property of the Debtors and shall vest in the Reorganized Debtors on the Effective Date.

From and after the Support Effective Date, the Debtors will not make any interest or dividend payments on account of the Convertible Note, Preferred Stock or otherwise, except as provided in the Restructuring Support Agreement. The Debtors have further agreed to accrue interest through the Petition Date on the Third Lien Notes, the Unsecured Notes, the Convertible Note and the Preferred Stock in accordance with the terms thereof, and all such interest, to the extent not paid as set forth above, will be deemed part of the Third Lien Note Claims, Unsecured Note Claims, Convertible Note Claims, and Preferred Stock Interests, as applicable.

**The Plan provides that, in the event the classes of Unsecured Note Claims, the Convertible Note Claims, or Preferred Stock Interests vote to reject the Plan (a "Rejecting Class") then: (i) any class of claims or interests junior in priority to such Rejecting Class will not receive or retain any value under the Plan; (ii) any New Warrants that were to be distributed to such junior classes of creditors will be cancelled and will not be issued under the Plan; (iii) the New Common Shares that were to be distributed to such junior classes of creditors or interest holders will be reallocated and distributed as set forth in the Plan, and (iv) the Cash that was to be distributed to such junior classes of creditor or interest holders will remain property of the Debtors and will vest in the Reorganized Debtors on the Effective Date. In the event the Unsecured Note Claims is a Rejecting Class (a) the Convertible Noteholder New Warrants will not be issued under the Plan; (b) the New Common Shares that were to be distributed to the Convertible Noteholder and Existing Equity Interests will be reallocated and distributed pro rata to the Third Lien Noteholders; and (c) if the Debtors elect not to terminate the Restructuring Support Agreement, then the distributions to be received by the General Unsecured Claims will be modified so as to comply with section 1129(b) of**

> **the Bankruptcy Code, subject to the Consenting Third Lien Noteholders' rights under Section 9 of the Restructuring Support Agreement.  In the event the Preferred Stock Interests is a Rejecting Class, the Preferred Holders will not receive or retain any distributions on account of their Preferred Stock Interests.**

After the Debtors commence their Chapter 11 Cases, the Plan can be confirmed by United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and thereby made binding on you if: (i) it is accepted by the holders of (a) at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) at least two-third in amount of the Interests voted in each Impaired Class of Interests; and (ii) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the broker, dealer, commercial bank, trust company, or other agent designated as your nominee (the "**Nominee**") to be returned to the Voting Agent by the Voting Deadline.

The Debtors intend to file their Chapter 11 Cases approximately thirty (30) calendar days after the date of the Disclosure Statement, but may file their Chapter 11 Cases sooner and before the Voting Deadline.

Your receipt of this Ballot does not signify that your Claim(s) or Interest(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 5 Third Lien Note Claims, Class 6 Unsecured Note Claims or Class 11 Preferred Stock Interests.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

3

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION
## AND INJUNCTION PROVISIONS IN THE PLAN

If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan, or (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan, which provides as follows:

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Definitive Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law, by (i) the holders of all Claims or Interests who vote to accept the Plan, (ii) the holders of Claims or Interests that are Unimpaired under the Plan, (iii) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, and (iv) the holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, in each case from any and all Claims, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Restructuring Support Agreement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that constitutes fraud, gross negligence or willful misconduct.

OTHER RELEASE, EXCULPATION AND INJUNCTION PROVISIONS ARE FOUND IN SECTION X OF THE PLAN. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.

WEIL:\95740924\8\51351.0003

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.   IF THIS BALLOT HAS NOT BEEN PROPERLY
SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS
HAVING BEEN CAST.

**Item 1.  Amount of Interests**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory of such a Beneficial Holder) of Preferred Stock Interest in the aggregate unpaid amount inserted into the box below, without regard to any accrued but unpaid interest.  If your Preferred Stock Interests are held by a Nominee on your behalf and you do not know the amount of the Interests held, please contact your Nominee immediately to obtain the amount.

- Amount of Preferred Stock Interests:

$

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Interests below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

The undersigned Beneficial Holder of Class 11 Preferred Stock Interests votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3. Optional Release Election**.  If you voted to reject the Plan in Item 2 above, check this box if you elect not to grant the releases contained in Section 10.7 of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you will be deemed to consent to the releases contained in section 10.7 of the Plan to the fullest extent permitted by applicable law.
If you (i) submit a rejecting Ballot without this box checked, or (ii) you do not vote either to accept or reject the Plan, you will be deemed to consent to the releases contained in Section 10.7 of the Plan to the fullest extent permitted by applicable law.

☐      The undersigned has voted to reject the Plan in Item 2 and elects not to grant the releases contained in Section 10.7 of the Plan.

**Item 4.  Acknowledgments**. By signing this Ballot, the Beneficial Holder (or authorized signatory of such Beneficial Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Beneficial Holder (or is entitled to vote on behalf of such Beneficial Holder) of the Preferred Stock Interests described in Item 1 as of the Voting Record Date, (iii) if delivered to a Nominee, such Beneficial Holder authorizes its Nominee to treat this Ballot as a direction to include its claim as a Class 11 Preferred Stock Interests on the Master Ballot, and (iv) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed,

5

executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.

_____
Name of Beneficial Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

6

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HALCÓN" IN THE SUBJECT LINE.

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.    Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot in the envelope provided or as indicated by your Nominee.  Any Ballot that is illegible, contains insufficient information to identify the Beneficial Holder, does not contain an original signature, or is unsigned will not be counted.

Please return the Ballot in the envelope provided, or as otherwise directed by your Nominee.  **The Voting Agent will tabulate all properly completed Ballots and Master Ballots received on or before the Voting Deadline.  IF YOU ARE RETURNING YOUR BALLOT TO YOUR NOMINEE, PLEASE RETURN IT BY THE DEADLINE PROVIDED BY YOUR NOMINEE OR OTHERWISE ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE VOTING AGENT BY THE VOTING DEADLINE.**  Ballots and Master Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted.

2.    You must vote all your Claims or Interests within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different Claims or Interests within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

3.    The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claims or Interests.

4.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

5.    If you cast more than one Ballot voting the same Claims or Interests prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

6.    In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

7.    There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

8.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION

7

PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

9.     PLEASE RETURN YOUR BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED BY YOUR NOMINEE.

10.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HALCÓN" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

11.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**<u>Exhibit B-7</u>**

**Form of Convertible Note Claim Ballot**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**Halcón Resources Corporation, *et al.*,**[1]<br><br>                    **Debtors.** | Chapter 11 (Voluntary)<br><br>IMPORTANT: No chapter 11 cases have been commenced as of the date of distribution of this ballot.  This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization.<br>If chapter 11 cases are commenced, the Debtors will request joint administration of such cases. |

## BALLOT FOR ACCEPTING OR REJECTING THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF HALCÓN RESOURCES CORPORATION, *ET AL.* UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### CLASS 7: CONVERTIBLE NOTE CLAIMS

> **THE HOLDER OF CLASS 7 CONVERTIBLE NOTE CLAIMS SHOULD READ THIS ENTIRE BALLOT BEFORE COMPLETING.  PLEASE COMPLETE, DATE AND SIGN THE BALLOT AND RETURN IT IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE OR BY FIRST CLASS MAIL, OVERNIGHT COURIER OR HAND DELIVERY TO THE VOTING AGENT (AS DEFINED BELOW).  THIS BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE JULY 20, 2016 AT 5:00 P.M. (PREAVILING EASTERN TIME) (THE "VOTING DEADLINE").**

This ballot (the "**Ballot**") is provided to you to solicit your vote to accept or reject the *Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation Et Al. Under Chapter 11 of the Bankruptcy Code* (as amended, modified or supplemented from time to time, the "**Plan**"[2]) in connection with cases (the "**Chapter 11 Cases**") to be commenced by the Debtors under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").   The Plan is being proposed by Halcón Resources Corporation and its above-captioned debtor affiliates and subsidiaries (collectively, the "**Debtors**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of June 13, 2016 (the "**Voting Record Date**"), the holder of a Claim against the Debtors arising under or relating to that certain 8.0% Senior Unsecured Convertible Note (the "**Convertible Note Claims**," and the holder of such

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Halcón Resources Corporation (0684); Halcón Holdings, Inc. (5102); HK Resources, LLC (9194); The 7711 Corporation (4003); Halcón Gulf States, LLC (2976); Halcón Louisiana Operating, L.P. (9727); Halcón Field Services, LLC (0280); Halcón Energy Properties, Inc. (5292); Halcón Operating Co., Inc. (3588); Halcón Williston I, LLC (9550); Halcón Williston II, LLC (9676); Halcón Resources Operating, Inc. (4856); HRC Energy Louisiana, LLC (1433); HRC Energy Resources (WV), Inc. (2713); HRC Production Company (3501); Halcón Energy Holdings, LLC (0538); HRC Energy, LLC (5010); HK Energy, LLC (8956); HK Louisiana Operating, LLC (4549); HK Oil & Gas, LLC (0502); HK Energy Operating, LLC (8107); HRC Operating, LLC (5129).  The Debtors' mailing address is 1000 Louisiana Street, Suite 6700, Houston, Texas 77002.

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan.

Convertible Note Claims, the "**Convertible Noteholder**") issued on February 8, 2012, pursuant to that certain Securities Purchase Agreement, effective December 21, 2011, by and between HALRES LLC and RAM Energy Resources, Inc. (and Holdings).

The Plan is attached as Exhibit A to the *Proposed Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Halcón Resources Corporation Et Al. Under Chapter 11 of the Bankruptcy Code* (as amended, modified or supplemented from time to time, the "**Disclosure Statement**"), which accompanies this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a copy of the Disclosure Statement, you may obtain a copy from the Debtors' solicitation and voting agent, Epiq Bankruptcy Solutions, LLC (the "**Voting Agent**"), by calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an electronic mail message to tabulation@epiqsystems.com with "Halcón" in the subject line and requesting that a copy be provided to you. You should review the Disclosure Statement and the Plan in their entirety before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 7**

As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 cases are commenced, the Plan is confirmed, and the Effective Date occurs, subject to the limitations set forth below, the holder of Allowed Claims in Class 7 (Convertible Note Claims) will receive, on the Effective Date, in full and final satisfaction of such Allowed Convertible Note Claims: (a) new common shares, par value $0.0001 per share, of Reorganized Holdings to be issued under the Plan, representing, after giving effect to the Restructuring, in the aggregate, 4.0% of the total outstanding shares of Reorganized Holdings (subject to dilution by the Management Incentive Plan and, to the extent applicable, the exercise of the New Warrants) (the "**Convertible Noteholder New Common Shares**"); (b) Cash in the amount of $15.0 million (the "**Convertible Noteholder Cash Distribution**"); and (c) warrants to purchase 1.0% of the New Common Shares outstanding as of the Effective Date, subject to dilution by the Management Incentive Plan, exercisable for a four (4) year period commencing on the Effective Date at a per share exercise price equal to $1,330,000,000 divided by the total number of New Common Shares issued and outstanding as of the Effective Date (the "**Convertible Noteholder New Warrants**"); provided, however, that if the Unsecured Note Claims Class is a Rejecting Class then: (1) the Convertible Noteholder New Warrants will not be issued under the Plan; (2) the New Common Shares that would have been distributed to the holder of Allowed Convertible Note Claims under the Plan will be reallocated and distributed Pro Rata to the holders of Allowed Third Lien Note Claims on the Effective Date; and (3) the Cash that was to be distributed to the holder of Allowed Convertible Note Claims pursuant to the Convertible Noteholder Cash Distribution will remain property of the Debtors and will vest in the Reorganized Debtors on the Effective Date; provided, further, however, that if the Unsecured Note Claims accepts the Plan and the Convertible Note Claims Class is a Rejecting Class, then: (x) the Convertible Noteholder Warrants will not be issued under the Plan; (y) the New Common Shares that would have been distributed to the holder of Allowed Convertible Note Claims under the Plan will be reallocated and distributed on the Effective Date to the holders of Allowed Third Lien Note Claims and Allowed Unsecured Note Claims pro rata based on their respective holdings of New Common Shares to be distributed to such Classes pursuant to the Plan; and (z) the Cash that was to be distributed to the holder of Allowed Convertible Note Claims pursuant to the Convertible Noteholder Cash Distribution will remain property of the Debtors and will vest in the Reorganized Debtors on the Effective Date.

**The Plan provides that, in the event the classes of Unsecured Note Claims, the Convertible Note Claims, or Preferred Stock Interests vote to reject the Plan (a "Rejecting Class") then: (i) any class of claims or interests junior in priority to such Rejecting Class will not receive or retain any value under the Plan; (ii) any New Warrants that were to be distributed to such junior classes of creditors will be cancelled and will not be issued under the Plan; (iii) the New Common Shares that were to**

---

WEIL:\95740924\8\51351.0003

**be distributed to such junior classes of creditors or interest holders will be reallocated and distributed as set forth in the Plan, and (iv) the Cash that was to be distributed to such junior classes of creditor or interest holders will remain property of the Debtors and will vest in the Reorganized Debtors on the Effective Date.  In the event the Unsecured Note Claims is a Rejecting Class (a) the Convertible Noteholder New Warrants will not be issued under the Plan; (b) the New Common Shares that were to be distributed to the Convertible Noteholder and Existing Equity Interests will be reallocated and distributed pro rata to the Third Lien Noteholders; and (c) if the Debtors elect not to terminate the Restructuring Support Agreement, then the distributions to be received by the General Unsecured Claims will be modified so as to comply with section 1129(b) of the Bankruptcy Code, subject to the Consenting Third Lien Noteholders' rights under Section 9 of the Restructuring Support Agreement.  In the event the Preferred Stock Interests is a Rejecting Class, the Preferred Holders will not receive or retain any distributions on account of their Preferred Stock Interests.**

After the Debtors commence their Chapter 11 Cases, the Plan can be confirmed by United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and thereby made binding on you if: (i) it is accepted by the holders of (a) at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) at least two-third in amount of the Interests voted in each Impaired Class of Interests; and (ii) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

The Debtors intend to file their Chapter 11 Cases approximately thirty (30) calendar days after the date of the Disclosure Statement, but may file their Chapter 11 Cases sooner and before the Voting Deadline.

Your receipt of this Ballot does not signify that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 5 Third Lien Note Claims, Class 6 Unsecured Note Claims or Class 11 Preferred Stock Interests.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION
## AND INJUNCTION PROVISIONS IN THE PLAN

If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan, or (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan, which provides as follows:

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Definitive Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law, by (i) the holders of all Claims or Interests who vote to accept the Plan, (ii) the holders of Claims or Interests that are Unimpaired under the Plan, (iii) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, and (iv) the holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, in each case from any and all Claims, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Restructuring Support Agreement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that constitutes fraud, gross negligence or willful misconduct.

**OTHER RELEASE, EXCULPATION AND INJUNCTION PROVISIONS ARE FOUND IN SECTION X OF THE PLAN. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

4

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.   IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Principal Amount of Claims**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such holder) of Convertible Note Claims in the principal amount set forth below.

$

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Convertible Note Claims identified in Item 1 above.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

> **Convertible Noteholder's Vote on the Plan**.  The undersigned holder of Class 7 Convertible Note Claims votes to (check <u>one</u> box):

☐ **Accept** the Plan                    ☐ **Reject** the Plan

**Item 3. Optional Release Election**.  If you voted to reject the Plan in Item 2 above, check this box if you elect not to grant the releases contained in Section 10.7 of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you will be deemed to consent to the releases contained in section 10.7 of the Plan to the fullest extent permitted by applicable law.
If you (i) submit a rejecting Ballot without this box checked, or (ii) you do not vote either to accept or reject the Plan, you will be deemed to consent to the releases contained in Section 10.7 of the Plan to the fullest extent permitted by applicable law.

☐       The undersigned has voted to reject the Plan in Item 2 and elects not to grant the releases contained in Section 10.7 of the Plan.

**Item 4.  Certification.**  By signing this Ballot, the holder of Convertible Note Claims (or authorized signatory of such holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the holder of the Convertible Note Claims (or is entitled to vote on behalf of such holder) described in Item 1 as of the Voting Record Date, and understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth in the Disclosure Statement and the Plan, and (iii) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.

_____

Name of Holder of Convertible Note Claims

_____

Signature

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

6

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HALCÓN" IN THE SUBJECT LINE.

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot in the envelope provided.  Any Ballot that is illegible, contains insufficient information to identify the holder of the Convertible Note Claims, does not contain an original signature, or is unsigned will not be counted.

Please return the Ballot in the envelope provided so that it is received by the Voting Agent before the Voting Deadline.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted.  If you are returning this Ballot on behalf of another party, please indicate your relationship to that party.  The Debtors may, at their discretion, request further documentation of your authority to vote.

2.      You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

3.      The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

4.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

5.      If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

6.      In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

7.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

8.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

9.      PLEASE RETURN YOUR BALLOT PROMPTLY IN THE ENVELOPE PROVIDED.  YOU MAY RETURN YOUR BALLOT VIA FIRST-CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO THE VOTING AGENT AT:

**EPIQ CORPORATE RESTRUCTURING**
**777 THIRD AVENUE, 12TH FLOOR**
**NEW YORK, NY 10017**
**ATTN: HALCÓN PROCESSING**
**TELEPHONE: (646) 282-2500 OR (866) 734-9393**

10.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HALCÓN" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

11.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

WEIL:\95740924\8\51351.0003