## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
                                            :
In re:                                      :      Chapter 11
                                            :
HALCÓN RESOURCES                            :      Case No. 16-11724 (___)
CORPORATION, et al.,[1]                     :
                                            :      Joint Administration Requested
            Debtors.                        :
                                            :
------------------------------------------------------------ x
```

### MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 362, AND 365(a) AND FED. R. BANKR. P. 4001 AND 6006 FOR AUTHORITY TO (I)  ASSUME RESTRUCTURING SUPPORT AGREEMENT AND (II) MODIFY THE AUTOMATIC STAY

Halcón Resources Corporation ("**Holdings**") and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (this "**Motion**"):

### Relief Requested

1.      By this Motion, pursuant to sections 105(a), 362, and 365(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 4001 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request authority to (i)  assume that certain Restructuring Support Agreement, dated June 9, 2016 (including all exhibits attached thereto and as may be amended, modified or supplemented from time to time, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Halcón Resources Corporation (0684); Halcón Holdings, Inc. (5102); HK Resources, LLC (9194); The 7711 Corporation (4003); Halcón Gulf States, LLC (2976); Halcón Louisiana Operating, L.P. (9727); Halcón Field Services, LLC (0280); Halcón Energy Properties, Inc. (5292); Halcón Operating Co., Inc. (3588); Halcón Williston I, LLC (9550); Halcón Williston II, LLC (9676); Halcón Resources Operating, Inc. (4856); HRC Energy Louisiana, LLC (1433); HRC Energy Resources (WV), Inc. (2713); HRC Production Company (3501); Halcón Energy Holdings, LLC (0538); HRC Energy, LLC (5010); HK Energy, LLC (8956); HK Louisiana Operating, LLC (4549); HK Oil & Gas, LLC (0502); HK Energy Operating, LLC (8107); HRC Operating, LLC (5129).  The Debtors' mailing address is 1000 Louisiana Street, Suite 6700, Houston, Texas 77002.

"**Restructuring Support Agreement**"), a copy of which is annexed hereto as **Exhibit A**, and

(ii) modify the automatic stay to the extent necessary to permit the relief requested.[2]

2.      A proposed form of order approving the relief requested herein is annexed

hereto as **Exhibit B** (the "**Proposed Order**").

**Jurisdiction**

3.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware dated February 29, 2012.  This is a core proceeding pursuant

to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local**

**Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this

Motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments consistent with Article III of the United States

Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

4.      On the date hereof (the "**Petition Date**"), each of the Debtors commenced

with the Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue

to operate their businesses and manage their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory

committee of creditors has been appointed in these chapter 11 cases.

5.      Contemporaneously herewith, the Debtors have filed a motion requesting

joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

---

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Restructuring Support Agreement.

6.      The Debtors are pleased to be before the Court with a prepackaged chapter 11 plan of reorganization (the "**Plan**") that has been accepted by each class of voting creditors and interest holders, which will enable them to leave their business intact and substantially de-levered, providing for the reduction of approximately $1.8 billion of the Debtors' existing net debt and approximately $200.0 million of the Debtors' annual cash interest expense upon the completion of the restructuring.  Through extensive negotiations over the past several months, the Debtors built consensus around the terms of a comprehensive financial restructuring, which culminated in the Debtors entering into the Restructuring Support Agreement with holders of (i) approximately 83% of the outstanding principal amount of the Debtors' senior secured third lien notes, (ii) approximately 61% of the outstanding principal amount of the Debtors' senior unsecured notes, (iii) 100% of the outstanding principal amount of the Debtors' senior unsecured convertible note, and (iv) approximately 63% of the Debtors' perpetual convertible Series A preferred stock (collectively, the "**Consenting Creditors**").

7.      In addition to the support of the Consenting Creditors, the Debtors are commencing these chapter 11 cases with the support of holders of over 51% of the outstanding principal amount of the Debtors' senior secured second lien notes, which will be reinstated under the Plan, and a commitment from the lenders under their senior revolving credit agreement to provide debtor-in-possession financing that will convert to an exit facility upon emergence from chapter 11.

8.      In accordance with the terms of the Restructuring Support Agreement, the Debtors commenced solicitation of the Plan on June 20, 2016, and the Plan received overwhelming and wide-spread support.  Specifically, the Debtors received sufficient levels of support from each voting class of impaired creditors and interest holders to support confirmation

of the Plan.  Pursuant to the Plan, the Debtors are proposing a restructuring, with the support of

each of the voting classes of claims and interests and certain other interested parties, that, among

other things, provides the following:

- An agreement with the Debtors' first lien revolving credit agreement lenders to provide financing during the chapter 11 cases in the form of a $600 million debtor-in-possession financing facility that will convert to an exit facility upon emergence from chapter 11;

- Reinstatement of the Debtors' senior secured second lien notes;

- Conversion of the Debtors' senior secured third lien notes into a pro rata share of approximately 76.5% of the equity in Reorganized Holdings (as defined in the Plan), together with a cash payment of approximately $33.8 million;

- Conversion of the Debtors' senior unsecured notes into a pro rata share of approximately 15.5% of the equity in Reorganized Holdings, warrants to purchase an additional 4.0% of the new equity in Reorganized Holdings, and approximately $37.6 million in cash;

- Conversion of the Debtors' convertible note into approximately 4.0% of the equity in Reorganized Holdings, warrants to purchase an additional 1.0% of the new equity in Reorganized Holdings, and $15.0 million in cash;

- Payment in full, in the ordinary course, of the Debtors' trade and other general unsecured creditors;

- Full and final satisfaction of the Debtors' perpetual convertible Series A preferred stock for $11.1 million in cash to be distributed pro rata to the holders of such interests; and

- Full and final satisfaction of the Debtors' existing common equity for approximately 4.0% of the equity in Reorganized Holdings to be distributed pro rata to the holders of such interests.

9.      Additional information regarding the circumstances leading to the

commencement of these chapter 11 cases and information regarding the Debtors' business and

capital structure is set forth in the *Declaration of Stephen W. Herod in Support of the Debtors'*

*Chapter 11 Petitions and Related Requests for Relief* (the "**Herod Declaration**"), which has

been filed contemporaneously herewith and is incorporated herein by reference.

<u>Overview of the Restructuring Support Agreement</u>

10.     As set forth in the Herod Declaration, the prices of crude oil and natural

gas declined dramatically starting in mid-year 2014, having reached multiyear lows in the first

quarter of 2016.  Despite the Debtors' best efforts to actively manage their capital structure to

restructure and reduce their interest expense and debt obligations, the significant and sustained

drop in oil prices has caused uncertainty regarding the viability of the Debtors' current leveraged

capital structure in the long term.  As a result of this decline in oil prices, the Debtors determined

that their enterprise could no longer bear the weight of their current capital structure and began to

explore potential transactions that would allow the Debtors to deleverage their balance sheet and

allow for continued growth and long-term success.

11.     Accordingly, the Debtors engaged in substantial negotiations with the

Consenting Creditors that led to the parties entering into the Restructuring Support Agreement,

negotiation and solicitation on the terms of a plan and disclosure statement and, ultimately, the

filing of the chapter 11 cases and presentation of the Plan before the Court, which has received

overwhelming support and acceptance of each of the voting classes of impaired claims and

interests.  Accordingly, the Restructuring Support Agreement has paved the path for these

chapter 11 cases, which were commenced with the main purpose of implementing the

restructuring transactions contemplated in the Restructuring Support Agreement through the

prepackaged Plan.

12.     The Restructuring Support Agreement is supported by creditors

throughout the Debtors' capital structure, including holders of approximately 83% of the Third

Lien Notes, approximately 61% of the Unsecured Notes, 100% of the Convertible Note, and

approximately 63% of the Preferred Stock have signed on to the Restructuring Support

Agreement.  Thanks, in large part, to these negotiations and the contributions of the Consenting

Creditors, the Debtors are before the Court with the Plan, which, in addition to being

overwhelmingly accepted by all voting classes of creditors and interest holders, also provides

recoveries, in the form of cash, new equity and warrants, to junior creditors and interest holders,

including to the holders of the Debtors' Unsecured Notes, Convertible Note, and existing

preferred and common stock, that would not otherwise be available absent the overwhelming

support of the Consenting Creditors and the Debtors' other key creditor constituencies.

13.    Given the Debtors' complex capital structure, approval of the

Restructuring Support Agreement is critical to the Debtors' successful reorganization.

Otherwise, the substantial value that would have been preserved for the Debtors' estates and all

parties in interest will be jeopardized.  After extensive efforts on the part of the Debtors and their

stakeholders, the Debtors believe that the Plan, as contemplated by the Restructuring Support

Agreement, represents the best outcome available in the Chapter 11 Cases.

**Material Terms of the Restructuring Support Agreement**

14.    The Consenting Creditors have agreed to support the restructuring plan

contemplated by the Restructuring Support Agreement and set forth in the Plan.  A summary of

the material terms of the Restructuring Support Agreement is provided below. [3]

15.    Milestones.  It is imperative that the Debtors quickly implement the

Restructuring pursuant to the Plan.  To that end, the Restructuring Support Agreement provides

---

[3] The summary of the Restructuring Support Agreement in this Motion is qualified in its entirety by reference to the provisions of the Restructuring Support Agreement.  To the extent there is any discrepancy between the summary contained in the Motion and the terms set forth in the Restructuring Support Agreement, the terms of the Restructuring Support Agreement shall govern.

for certain milestones that must be satisfied in order to meet the goal of a prompt restructuring.

The Debtors agree, or agreed, to:

     a.    commence solicitation of votes on the Plan on or before June 20, 2016;

     b.    obtain votes accepting the Plan from the holders of Third Lien Notes and Unsecured Notes sufficient to satisfy the conditions for acceptance under the Bankruptcy Code on or before July 29, 2016;

     c.    commence these chapter 11 cases on or before 11:59 p.m. (Prevailing Eastern Time) on August 2, 2016;

     d.    file the Plan and Disclosure Statement within one (1) business day of the Petition Date;

     e.    file this Motion within one (1) business day of the Petition Date and obtain an order of the Bankruptcy Court approving this Motion on or before the first business day after thirty-five (35) calendar days after the Petition Date, or otherwise assume the Restructuring Support Agreement on or before the first business day after thirty-five (35) calendar days after the Petition Date;

     f.    obtain orders from the Bankruptcy Court approving the consensual use of cash collateral (i) on an interim basis, by no later than four (4) business days after the Petition Date, and (ii) on a final basis, by no later than thirty-five (35) days after the Petition Date;

     g.    obtain an order(s) from the Bankruptcy Court approving the Disclosure Statement and confirming the Plan on or before the first business day after forty-five (45) calendar days after the Petition Date; and

     h.    the Effective Date will occur on or before the first business day after sixty (60) calendar days after the Petition Date.

     16.    <u>Consenting Creditors' Support of the Plan</u>.  Subject to the conditions of

the Restructuring Support Agreement, each Consenting Creditor (severally and not jointly)

agrees, or has agreed, to:

     a.    timely vote its Claims and/or Preferred Stock, subject to receipt of the Disclosure Statement and other solicitation materials, to accept the Plan;

     b.    not change or withdraw such vote (or cause or direct such vote to be changed or withdrawn);

      c.      not directly or indirectly take any action that is inconsistent with or that would reasonably be expected to prevent, interfere with, delay or impede the Solicitation, approval of the Disclosure Statement, and the confirmation and consummation of the Plan and the Restructuring;

      d.      in their capacities as holders of Notes and/or Preferred Stock, support and take such commercially reasonable actions necessary or reasonably requested by the Debtors to obtain the approval of the Disclosure Statement, and confirmation and consummation of the Plan and the Restructuring;

      e.      subject to certain exceptions, not sell, transfer, loan, issue, pledge, hypothecate, assign or otherwise dispose of, directly or indirectly, in whole or in part, any and of its Claims and Preferred Stock, as applicable, or any option thereon or any right or interest therein, unless the transferee thereof either (i) is a Consenting Creditor or its affiliate, provided that such affiliate shall agree in writing to be bound by the Restructuring Support Agreement as if an original Party thereto, or (ii) prior to such Transfer, agrees in writing for the benefit of the Parties to become a Consenting Creditor and to be bound by all of the terms of the Restructuring Support Agreement applicable to the Consenting Creditors agrees to be bound by the Restructuring Support Agreement; and

      f.      to the extent any Consenting Creditor acquires any additional Claims or Preferred Stock entitled to vote on the Plan, then, in each case, each Consenting Creditor shall vote any such additional Claims or Preferred Stock entitled to vote on the Plan in a manner consistent with the Restructuring Support Agreement.

Restructuring Support Agreement § 3.

      17.    <u>Debtors' Prosecution of the Plan</u>.  Subject to the terms and conditions of the Restructuring Support Agreement, among other things, the Debtors agree to:

      a.      act in good faith and use reasonable best efforts to support and complete successfully the Solicitation in accordance with the terms of the Restructuring Support Agreement, including all of the milestones, and applicable law;

      b.      use reasonable best efforts to obtain any and all required regulatory and/or third-party approvals for the Restructuring embodied in the Plan, if any;

      c.      not take any action that is inconsistent with, or is intended or is reasonably likely to interfere with, the Restructuring Support Agreement, the Plan, and any other Definitive Documents executed by the Debtors or consummation of the Restructuring;

WEIL:\95654674\19\51351.0003

    d.       not directly or indirectly seek or solicit any discussions relating to, or enter into any agreements relating to, any alternative proposal other than the Restructuring, nor shall the Debtors solicit or direct any person or entity, including, without limitation, any member of the Debtors' board of directors or any holder of equity in the Debtors, to undertake any of the foregoing; and

    e.       support and take all reasonable actions necessary and appropriate to facilitate approval of the Disclosure Statement, confirmation and consummation of the Plan and the Restructuring in accordance with, and within the time frames contemplated by, the Restructuring Support Agreement and the Definitive Documents.

*Id*. § 4.

18.    <u>Fiduciary Out</u>.  Importantly, the commitments of the Debtors pursuant to the Restructuring Support Agreement are subject to the exercise of their fiduciary duties (the "**Fiduciary Out**").  *Id.* §§ 2(d), 4(a)(i), 5(d)(ii).  Nothing in the Restructuring Support Agreement requires the Debtors or any director, manager, member or partner of a Debtor, in their capacity as such, to take any action, or to refrain from taking any action, that is inconsistent with such director's, manager's, member's or partner's fiduciary obligations under applicable law. With respect to the Debtors, the Restructuring Support Agreement includes a right, upon a reasonable determination made in good faith and based upon the advice of outside counsel, to terminate the Restructuring Support Agreement pursuant to the Fiduciary Out.  *Id.* § 5(d)(ii).

19.    <u>Professional Fees and Expenses</u>.  As soon as practicable after entry of an order approving the Restructuring Support Agreement, the Debtors have agreed to (A) pay to (i) Latham & Watkins LLP, as counsel to the Third Lien Noteholders; Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to the Unsecured Noteholders; and Jones Day, as counsel to the Convertible Noteholder ("**Noteholder Counsel**"); (ii) Delaware counsel retained by the Third Lien Noteholders, Unsecured Noteholders and Convertible Noteholder ("**Local Counsel**"); and (iii) Houlihan Lokey Capital, Inc., as financial advisor to the Third Lien Noteholders

("**Noteholder Financial Advisors**"), in each case, all then accrued unpaid reasonable and

documented fees and expenses, outstanding and payable in connection with this matter and

(B) continue to pay all outstanding reasonable and documented fees and expenses incurred after

the Petition Date on a current basis by (i) Noteholder Counsel, (ii) Local Counsel, and (iii)

Noteholder Financial Advisors, under their respective engagement letters or other contractual

arrangements, in connection with the Restructuring Support Agreement without the need to file

any interim or final fee applications with the Bankruptcy Court subject to the Debtors obtaining

Bankruptcy Court approval of any such payments.  *Id.* § 4(a)(iv).

### Basis for Relief Requested

**A.      Assumption of the Restructuring Support Agreement is a
         Reasonable Exercise of the Debtors' Business Judgment**

20.      The Debtors seek authority, pursuant to sections 365(a) and 105(a) of the

Bankruptcy Code, to assume the Restructuring Support Agreement.  The Debtors' assumption of

the Restructuring Support Agreement constitutes a sound exercise of business judgment and is in

the best interests of the Debtors, and should therefore be approved.

21.      Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a

debtor in possession "subject to the court's approval, may assume or reject any executory

contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  When determining whether to

approve a debtor's decision to assume or reject an executory contract or unexpired lease, courts

apply the "business judgment" rule.  *See, e.g.*, *NLRB v. Bildisco & Bildisco (In re Bildisco),* 682

F.2d 72, 79 (3d Cir. 1982) *aff'd* 465 U.S. 513 (1984) ("The usual test for rejection of an

executory contract is simply whether rejection would benefit the estate, [under] the 'business

judgment' test."); *In re Caribbean Petroleum Corp.*, 444 B.R. 263, 268 (Bankr. D. Del. 2010)

(applying the business judgment standard in evaluating the rejection of an executory contract,

10

and holding that the debtor's reliance on advisors' expert advice was sufficient to discharge that burden); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 162 (Bankr. D. Del. 2006) ("[U]nder section 365 of the Bankruptcy Code, a debtor may assume an executory contract . . . if the debtor's decision to assume such executory contract . . . is supported by valid business justifications.").

        22.      Under the business judgment rule, debtors are usually given significant discretion when requesting to assume or reject an executory contract or unexpired lease. *See In re Chipwich, Inc.,* 54 B.R. 427, 430-31 (Bankr. S.D.N.Y. 1985) (finding that a court should not interfere with a debtor's decision to assume or reject "absent a showing of bad faith or abuse of business discretion"). Accordingly, so long as a debtor's decision is reasonable and in the best interests of the bankruptcy estate, courts generally defer to the business judgment of the debtor's management. *See Stanziale v. Nachtomi (In re Tower Air, Inc.*), 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task. Delaware courts have said that it may be accomplished by showing either irrationality or inattention."); *Armstrong*, 348 B.R. at 162 ("Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or lease is appropriate under section 365(a)."); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'" (quoting *Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 849-50 (Bankr. W.D. Pa. 1987))).

        23.      Here, the Debtors' decision to assume the Restructuring Support Agreement satisfies the business judgment test. The agreement itself is the product of extensive

arm's length, good-faith negotiations among the Debtors and their largest creditors. Furthermore, the signing of the Restructuring Support Agreement was undertaken only after careful consideration by the Debtors' management and board of directors in consultation with their financial and legal advisors. The consensus embodied in the terms of the Restructuring Support Agreement will allow the Debtors to delever their balance sheets in an efficient and orderly manner, and will lay the foundation for a viable business with sustainable obligations to emerge.  Moreover, the Restructuring embodied in the Restructuring Support Agreement also provides recoveries, in the form of cash, new equity and warrants, to junior creditors and interest holders that would not otherwise be available to such parties.  The consensual Restructuring, made possible by the assumption of the Restructuring Support Agreement, presents the most expedient and cost-effective path to a timely emergence from chapter 11.  In addition, as discussed above, the Debtors' obligations under the Restructuring Support Agreement remain subject to their fiduciary duties as debtors and debtors in possession to maximize the value of their estates.

          24.     The payment of fees and expenses of the advisors to the Consenting Third Lien Noteholders, Consenting Unsecured Noteholders and the Convertible Noteholder in accordance with the Restructuring Support Agreement is also a reasonable exercise of the Debtors' business judgment and likewise should be approved.  As stated, the Restructuring Support Agreement lays the foundation for a comprehensive and efficient restructuring of the Debtors' businesses.  The professionals retained by the Consenting Third Lien Noteholders, Consenting Unsecured Noteholders and the Convertible Noteholder were instrumental in the formulation and development of the compromise and settlement incorporated into the Restructuring Support Agreement and in the financial and legal analysis that was an integral

WEIL:\95654674\19\51351.0003

element of that process.  The Debtors also understand that the Consenting Creditors intend to

continue to work constructively with the Debtors towards confirmation of the Plan.  Under these

circumstances, it is reasonable for the Debtors' estates to cover the fees and expenses of a

constituency that will greatly facilitate the efficient and economic administration of the Debtors'

chapter 11 cases.

25.    Section 105(a) of the Bankruptcy Code provides additional authority for

the Court to authorize the assumption of the Restructuring Support Agreement.  Section 105(a)

of the Bankruptcy Code provides, in pertinent part, that a court may "issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

Entry of an order authorizing the assumption of the Restructuring Support Agreement would be

an appropriate exercise of the Court's equitable powers because the requested relief is in the best

interests of the Debtors and their estates, is consistent with the Bankruptcy Code, and will

maximize value for the Debtors' stakeholders.

26.    Based on the foregoing, the Debtors respectfully submit that they have

exercised reasonable business judgment in their decision to assume the Restructuring Support

Agreement and that such assumption is in the best interest all of parties in interest.  Accordingly,

the Court should grant the relief requested.

**B.     Modification of the Automatic Stay to Effectuate
the Relief Requested is Warranted**

27.    Section 362(a) of the Bankruptcy Code operates to stay:

the commencement or continuation, including the issuance or
employment of process of a judicial, administrative, or other action
or proceeding against the debtor that was or could have been
commenced before the commencement of the case under this title,
or to receive a claim against the debtor that arose before the
commencement of the case under this title . . . .

13

11 U.S.C. § 362(a)(1).  Section 362, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." *Id.* § 362(d)(1).

28.     The Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to modify the automatic stay to the extent necessary to permit parties, including the Consenting Creditors, to give notice of termination pursuant to the Restructuring Support Agreement and in accordance with Section 4(b) of the Restructuring Support Agreement.  *See* Restructuring Support Agreement § 4(b).

## Notice

29.     Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware (Attn: Natalie Cox, Esq. and Mark Kenney, Esq.); (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) Simpson Thatcher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017 (Attn: Elisha D. Graff, Esq.), counsel to JPMorgan Chase Bank, N.A., as administrative agent under the Revolving Credit Facility Agreement; (iv) Foley & Lardner LLP, 321 North Clark Street, Suite 2800, Chicago, IL 60654 (Attn: Mark L. Prager, Esq.) and 90 Park Avenue, New York, NY 10016 (Attn: Richard J. Bernard, Esq.), counsel to the trustee for the Second Lien Notes; (v) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038 (Attn: Jayme T. Goldstein, Esq.), counsel to the trustee for the Third Lien Notes; (vi) Arent Fox LLP, 1675 Broadway, New York, NY 10019 (Attn: Andrew Silfen, Esq. and Leah M. Eisenberg, Esq.), counsel to the trustee for the Unsecured Notes; (vii) Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022 (Attn: Richard A. Levy, Esq. and J. Michael Chambers, Esq.), counsel to the Consenting Third Lien Noteholders; (viii) O'Melveny & Myers LLP, 7 Times Square, New York, NY 10036 (Attn: John J. Rapisardi, Esq. and Joseph Zujkowski, Esq. ), counsel to the ad hoc group of Second Lien Noteholders; (ix) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of

the Americas, New York, NY 10019 (Attn: Andrew N. Rosenberg, Esq. and Samuel E. Lovett, Esq.), counsel to the Consenting Unsecured Noteholders; (x) Jones Day, 2727 North Harwood Street, Dallas, TX 75201 (Attn: Gregory M. Gordon, Esq. and Dan Prieto, Esq.), counsel to the Convertible Noteholder; (xi) the Securities and Exchange Commission; (xii) the Internal Revenue Service; and (xiii) the United States Attorney's Office for the District of Delaware.

30.     The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice is required.  No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WEIL:\95654674\19\51351.0003

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 27, 2016
        Wilmington, Delaware

/s/ Jaime Luton Chapman
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Jaime Luton Chapman (No. 4936)
Patrick A. Jackson (No. 4976)
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
Telephone: (302) 571-6600
Facsimile:  (302) 571-1253

-and-

WEIL, GOTSHAL & MANGES LLP
Gary T. Holtzer
Joseph H. Smolinsky
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

*Proposed Attorneys for the Debtors
and Debtors in Possession*

16