## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | **Chapter 11** |
|  | : |  |
| **HALCÓN RESOURCES** | : | **Case No. 16-11724 (BLS)** |
| **CORPORATION, et al.**[1] | : |  |
|  | : |  |
| Debtors. | : | **(Jointly Administered)** |
|  | : |  |

---------------------------------------------------------------x    Re: Docket Nos. 4 and 38

### INTERIM ORDER PURSUANT TO
### 11 U.S.C. §§ 105, 361, 362, 363(c), 363(d), 364,
### AND 507 AND BANKRUPTCY RULES 2002, 4001 AND
### 9014 (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR
### SECURED, SUPERPRIORITY, POST-PETITION FINANCING,
### (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING
### LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE
### PROTECTION TO PREPETITION SECURED PARTIES AND (V) SCHEDULING
### A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)

Upon the motion, dated July 27, 2016 (the "**Motion**"),[2] of Halcón Resources

Corporation (the "**Company**" or "**DIP Borrower**") and certain of its subsidiaries and affiliates

as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter

11 cases (the "**Chapter 11 Cases**") commenced on July 27, 2016 (the "**Petition Date**") for

interim and final orders pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2),

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Halcón Resources Corporation (0684); Halcón Holdings, Inc. (5102); HK Resources, LLC (9194); The 7711 Corporation (4003); Halcón Gulf States, LLC (2976); Halcón Louisiana Operating, L.P. (9727); Halcón Field Services, LLC (0280); Halcón Energy Properties, Inc. (5292); Halcón Operating Co., Inc. (3588); Halcón Williston I, LLC (9550); Halcón Williston II, LLC (9676); Halcón Resources Operating, Inc. (4856); HRC Energy Louisiana, LLC (1433); HRC Energy Resources (WV), Inc. (2713); HRC Production Company (3501); Halcón Energy Holdings, LLC (0538); HRC Energy, LLC (5010); HK Energy, LLC (8956); HK Louisiana Operating, LLC (4549); HK Oil & Gas, LLC (0502); HK Energy Operating, LLC (8107); HRC Operating, LLC (5129). The Debtors' mailing address is 1000 Louisiana Street, Suite 6700, Houston, Texas 77002.

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion or the DIP Credit Agreement, as applicable.

364(c)(3), 364(d)(1), 364(e), 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**"), Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (this "**Court**") seeking:

(I)       authorization for the DIP Borrower and the other Debtors to obtain a post-petition revolving credit facility in the aggregate principal amount of up to $600,000,000 (the "**DIP Facility**", all extensions of credit, including the issuance of letters of credit, under the DIP Facility, the "**DIP Loans**"), and to otherwise incur the DIP Obligations (as defined in paragraph 5(e) below) on the terms and conditions set forth in this interim order (this "**Order**") and the Senior Secured Debtor-in-Possession Revolving Credit Agreement (substantially in the form attached hereto as **Exhibit 2**, and as hereafter amended, supplemented or otherwise modified, the "**DIP Credit Agreement**", and together with the Commitment/Fee Letters (as defined in paragraph 6(e)(iii) below) and all other agreements, documents and instruments executed and delivered in connection with the DIP Credit Agreement, as hereafter amended, supplemented or otherwise modified, the "**DIP Documents**"), among the DIP Borrower, each subsidiary of the DIP Borrower that guarantees the DIP Obligations (as defined in paragraph 5(e) below) (collectively, the "**DIP Facility Guarantors**"), the lenders party thereto from time to time (collectively, together with Consenting Prepetition Secured Swap Providers (as defined below), the Postpetition Secured Swap Providers (as defined below), the Issuing Banks (as defined in the DIP Credit Agreement), the other Secured Parties (as defined in the DIP Credit Agreement), the "**DIP Lenders**"), JPMorgan Chase Bank, N.A. ("**JPMorgan**"), as administrative agent and collateral agent for the DIP Lenders (in such capacity, the "**DIP Agent**") and JPMorgan and

Wells Fargo Bank, National Association, each in their capacity as joint lead arranger (collectively, the "**DIP Arrangers**");

(II)    Authorization for the DIP Facility Guarantors to guarantee on a secured and joint and several basis the DIP Obligations;

(III)    authorization for the Debtors to execute and deliver the DIP Credit Agreement and the other DIP Documents to which they are a party and to perform their respective obligations thereunder and such other and further acts as may be necessary or appropriate in connection therewith;

(IV)    authorization for the Debtors to (a) use proceeds of the initial borrowing under the DIP Facility as required pursuant to the DIP Credit Agreement to refund, refinance, replace and repay in full the Revolving Credit Agreement Loans (as defined in paragraph 4(a) below) arising under the Senior Reserve-Based Revolving Credit Agreement, dated as of February 8, 2012 (as amended, supplemented or otherwise modified as of the Petition Date, the "**Revolving Credit Agreement**", and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified as of the Petition Date, the "**Revolving Credit Agreement Documents**"), among the Company in its capacity as borrower thereunder, the lenders party thereto from time to time (together with the other "Secured Parties" (as defined in the Revolving Credit Agreement Documents), the "**Revolving Credit Agreement Lenders**") and JPMorgan as administrative agent and collateral agent for the Revolving Credit Agreement Lenders (in such capacities, the "**Revolving Credit Agreement Agent**"), which refunding, refinancing and repayment may be effectuated by converting or rolling-over on a cashless basis Revolving Credit Agreement Loans into DIP Loans on a dollar for dollar basis and deeming them made

- 3 -

thereunder, (b) issue letters of credit under the DIP Facility and refund, refinance, replace and repay all outstanding letters of credit issued under the Revolving Credit Agreement and outstanding on the Petition Date (the "**Revolving Credit Agreement Letters of Credit**"), which refunding, refinancing, replacement and repayment may be effectuated by converting or rolling-over on a cashless basis the Revolving Credit Agreement Letters of Credit into letters of credit issued under the DIP Facility and deeming them issued thereunder, (c) provide superpriority administrative claims status and DIP Liens (as defined below) to secure any obligations under any Swap Agreement (as defined in the DIP Credit Agreement) that is entered into after the Petition Date (a "**Postpetition Swap Agreement**") and to which a Secured Swap Provider (as defined in the DIP Credit Agreement) is a counterparty (each such Secured Swap Provider described in this clause (c), a "**Postpetition Secured Swap Provider**") and (d) provide superpriority administrative claims status and DIP Liens (as defined below) to secure any obligations under any Swap Agreement (as defined in the DIP Credit Agreement) entered into prior to the Petition Date and to which a Secured Swap Provider (as defined in the DIP Credit Agreement) that has signed a consent agreement and waiver of its right to terminate any Prepetition Swap Agreement (a "**Prepetition Swap Waiver**"), subject to the terms and conditions of such waiver and consent, is a counterparty (each such Secured Swap Provider described in this clause (d), a "**Consenting Prepetition Secured Swap Provider**" and each such Swap Agreement described in this clause (d) and which is set forth on **Exhibit 3**, a "**Prepetition Swap Agreement**"), in each case of clause (c) and (d) subject to the same priorities and protections provided to the DIP Loans;

(V)    authorization for the Debtors to (a) use the cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code, the "**Cash Collateral**") pursuant to section 363 of the

Bankruptcy Code, subject to the Budget (as defined in the DIP Credit Agreement) a form of which is attached hereto as **Exhibit 1**, and which Budget shall be subject to the consent of the Requisite Third Lien Noteholders (as defined in the Restructuring Support Agreement), which consent shall not be unreasonably withheld, and all other Prepetition Collateral (as defined in paragraph 4(c) below), and (b) provide adequate protection to the following parties with respect to the applicable prepetition secured debt obligations of:

    (a) the Revolving Credit Agreement Lenders under the Revolving Credit Agreement and the Revolving Credit Agreement Documents;

    (b) the noteholders (collectively, the "**Second Lien Noteholders**") under (i) the Indenture, dated as of May 1, 2015 (as amended, supplemented or otherwise modified as of the Petition Date, the "**Prepetition 2020 Second Lien Indenture**") and (ii) the Indenture, dated as of December 21, 2015 (as amended, supplemented or otherwise modified as of the Petition Date, the "**Prepetition 2022 Second Lien Indenture**" and together with the Prepetition 2020 Second Lien Indenture, the "**Second Lien Note Indentures**", and together with all security, pledge and guaranty agreements and all other documentation executed in connection with the foregoing, each as amended, supplemented or otherwise modified as of the Petition Date, the "**Second Lien Debt Documents**"; and the notes issued under the Second Lien Note Indentures, the "**Second Lien Notes**"), in each case among the Company as issuer thereunder, the subsidiaries party thereto and U.S. Bank National Association, as trustee for the Second Lien Noteholders (in such capacity, the "**Second Lien Indenture Trustee**"); and

    (c) the noteholders (collectively, the "**Third Lien Noteholders**") under the Indenture, dated as of September 10, 2015 (as amended, supplemented or otherwise modified as of the Petition Date, the "**Third Lien Note Indenture**", and together with all security, pledge and guaranty agreements and all other documentation executed in connection with the foregoing, each as amended, supplemented or otherwise modified as of the Petition Date, the "**Third Lien Debt Documents**"; the Third Lien Debt Documents, collectively with the Revolving Credit Agreement Documents and the Second Lien Debt Documents, the "**Prepetition Debt Documents**"), among the Company as issuer thereunder, the subsidiaries party thereto and Wilmington Savings Fund Society, as successor indenture trustee for the Third Lien Noteholders (in such capacity, the "**Third Lien Indenture Trustee**" and, together with the Second Lien Indenture Trustee and the Revolving Credit Agreement Agent, the "**Prepetition Agents**"; and the Prepetition Agents, collectively with the Third

Lien Noteholders, the Second Lien Noteholders and the Revolving Credit Agreement Lenders, the "**Prepetition Secured Parties**");

(VI)     authorization for the DIP Agent to exercise remedies under, and in accordance with, the DIP Documents upon the occurrence and during the continuance of a DIP Event of Default (as defined below);

(VII)    authorization for the Debtors to perform their obligations under, and pay the fees set forth in the Commitment/Fee Letters (as defined in paragraph 6(e)(iii) below) and the DIP Credit Agreement, including with respect to the proposed exit financing facility referenced in the Commitment/Fee Letters;

(VIII)   subject to entry of the Final Order, the waiver by the Debtors of any right to seek to surcharge against the DIP Collateral (as defined in paragraph 8 below) or Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code and the waiver by the Debtors of the equities of the case exception of section 552(b) of the Bankruptcy Code with respect to the Prepetition Collateral and DIP Collateral;

(IX)     to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "**Interim Hearing**") on the Motion to be held before this Court to consider entry of this Order (a) authorizing the DIP Borrower, on an interim basis, to access up to $500,000,000 of the aggregate principal amount of the DIP Facility (including through the issuance or deemed issuance of letters of credit), the collective proceeds of which shall be used for working capital and general corporate purposes of the Debtors (including fees, costs and expenses related to the Chapter 11 Cases and the DIP Documents, capital expenditures and any interest payments under the Second Lien Notes, as and to the extent set forth in this Order and in accordance with the Budget and the DIP Documents) and to refund, refinance, replace and repay in full the Revolving Credit Agreement Loans and the Revolving Credit Agreement Letters of Credit in an aggregate

- 6 -

principal or face amount of $450,000,000, as set forth in paragraph (IV) above, (b) authorizing the Debtors to use the Cash Collateral and the other Prepetition Collateral and (c) granting adequate protection to the Prepetition Secured Parties;

      (X)    to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "**Final Hearing**") for this Court to consider entry of a final order (the "**Final Order**") authorizing and approving on a final basis the relief requested in the Motion, including without limitation, for the DIP Borrower to access the full remaining balance of the DIP Facility, for the Debtors to continue to use the Cash Collateral and the other Prepetition Collateral and for the Debtors to grant adequate protection to the Prepetition Secured Parties; and

      (XI)    waiver of any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Order and providing for the immediate effectiveness of this Order.

      The Interim Hearing having been held by this Court on [●], and upon the record made by the Debtors at the Interim Hearing, including without limitation, the admission into evidence of the *Declaration of Stephen W. Herod, of Halcón Resources Corporation, in Support of Chapter 11 Petitions and First Day Pleadings* and *Declaration of Timothy R. Coleman in Support of the Motion*, filed on the Petition Date, and the other evidence submitted or adduced and the arguments of counsel made at the Interim Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

      IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

      1.    *Jurisdiction.* This Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice*. Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on (i) the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) counsel to the DIP Agent; (iv) counsel to the Revolving Credit Agreement Agent; (v) counsel to the Second Lien Indenture Trustee and counsel for the ad hoc committee of Second Lien Noteholders; (vi) counsel to the Third Lien Indenture Trustee.; (vii) counsel to HALRES, LLC; (viii) the Securities and Exchange Commission; (ix) the Internal Revenue Service; (x) the United States Attorney's Office for the District of Delaware; and (xi) any other party entitled to notice pursuant to Local Rule 9013-1(m). Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c), and no further notice of the relief sought at the Interim Hearing is necessary or required.

3.      *Approval of Motion*. The relief requested in the Motion is granted on an interim basis as set forth herein. Except as otherwise expressly provided in this Order, any objection to the entry of this Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

4.      *Debtors' Stipulations*. Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 20 and 21), the Debtors, on behalf of themselves and their respective estates, admit, stipulate, and agree that:

(a)      as of the Petition Date, the Debtors party to or otherwise obligated under the Revolving Credit Agreement Documents were truly and justly indebted and liable on a joint and several basis to the Revolving Credit Agreement Lenders, without defense, objection, counterclaim or offset of any kind, in the aggregate principal amount of not less

- 8 -

than $449,195,800.00 in respect of loans (such loans, the "**Revolving Credit Agreement Loans**") and other extensions of credit made, and Revolving Credit Agreement Letters of Credit issued pursuant to, the Revolving Credit Agreement Documents, plus all accrued and unpaid interest thereon and any fees and expenses (including fees and expenses of attorneys and outside consultants) related thereto as provided in the Revolving Credit Agreement Documents, plus all other outstanding amounts (including, without limitation, any contingent or unliquidated indemnification or reimbursement obligations) that would constitute Secured Obligations under and as defined in the Revolving Credit Agreement (collectively, the "**Prepetition Revolver Obligations**");

(b)     as of the Petition Date, the Company was party to the Prepetition Swap Agreements, which obligations are guaranteed on a joint and several basis by each of the Guarantors (as defined in the Revolving Credit Agreement) and the obligations (including, without limitation, any contingent obligations and mark to market movements) of the Company and the Guarantors under and with respect to the Prepetition Swap Agreements (and each transaction thereunder) (such obligations, the "**Prepetition Swap Obligations**") constitute Prepetition Revolver Obligations secured by the Prepetition Collateral (as defined below). The Company and Guarantors are truly and justly indebted and/or liable under the Prepetition Swap Agreements on the Prepetition Swap Obligations without objection, defense, counterclaim or offset of any kind. The Prepetition Revolver Obligations constitute legal, valid, binding and non-avoidable obligations against each of the Debtors and are not subject to any avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise. No payments or

WEIL:\95784106\19\51351.0003

transfers made to or for the benefit of (or obligations incurred to or for the benefit of) the Revolving Credit Agreement Agent or Revolving Credit Agreement Lenders by or on behalf of any of the Debtors prior to the Petition Date under or in connection with any of the Revolving Credit Agreement Documents or Prepetition Swap Agreements is subject to avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise;

(c)     the liens, security interests, and mortgages granted by the Debtors to the Revolving Credit Agreement Agent (for the ratable benefit of the Revolving Credit Agreement Lenders) to secure the Prepetition Revolver Obligations are (i) legal, valid, binding, perfected, enforceable, first priority (in each case, subject to permitted exceptions under the Revolving Credit Agreement) liens on and security interests in the Debtors' real or personal property constituting Collateral (as defined in the Revolving Credit Agreement Documents, and hereinafter referred to as the "**Prepetition Collateral**") to secure the Prepetition Revolver Obligations (including, without limitation, the Prepetition Swap Obligations) and (ii) not subject to avoidance, recharacterization, offset, subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law or other challenge and (iii) after giving effect to this Order and subject to the Carve-Out (as defined below), subject and subordinate only to other valid and unavoidable liens properly perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) to the extent such liens are permitted under the Revolving Credit Agreement Documents to be senior to the liens securing the Prepetition Revolver Obligations;

(d)    as of the Petition Date, the Debtors party to or otherwise obligated under the Second Lien Debt Documents were truly and justly indebted to the Second Lien Noteholders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $848,435,270.67 in respect of notes issued to the Second Lien Noteholders pursuant to the Second Lien Debt Documents, plus accrued and unpaid interest thereon and fees and expenses, if any (including fees and expenses of attorneys and advisors to the Second Lien Indenture Trustee), as provided in the Second Lien Debt Documents, plus all other amounts that would constitute Obligations under, and as defined in, the Second Lien Note Indentures (collectively, the "**Prepetition Second Lien Obligations**"). No payments or transfers made to or for the benefit of (or obligations incurred to or for the benefit of) the Second Lien Indenture Trustee or the Second Lien Noteholders by or on behalf of any of the Debtors prior to the Petition Date under or in connection with the Second Lien Notes is subject to avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise;

(e)    the liens and security interests granted to the Second Lien Indenture Trustee (for the ratable benefit of the Second Lien Noteholders) to secure the Prepetition Second Lien Obligations are (i) valid, binding, perfected, enforceable, second priority (in each case, subject to permitted exceptions under the Second Lien Note Indentures) liens on and security interests in the Prepetition Collateral, (ii) not subject to avoidance, recharacterization or subordination (except as set forth in the Intercreditor Agreement (as defined in paragraph 4(k) below)) pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) after giving effect to this

WEIL:\95784106\19\51351.0003

Order, the Carve-Out and the liens and security interests granted to secure the DIP Loans and the Adequate Protection Obligations (as defined in paragraph 17 below), (B) prior to repayment in full of the Prepetition Revolver Obligations, liens securing the Prepetition Revolver Obligations and (C) other valid and unavoidable liens properly perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code to the extent such liens are senior to the liens securing the Prepetition Second Lien Obligations);

        (f)      as of the Petition Date, the Debtors party to or otherwise obligated under the Third Lien Debt Documents were truly and justly indebted to the Third Lien Noteholders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $1,044,437,220.00 in respect of the notes issued to the Third Lien Noteholders pursuant to the Third Lien Debt Documents, plus accrued and unpaid interest thereon and fees and expenses (including fees and expenses of attorneys and advisors of the Third Lien Indenture Trustee) as provided in the Third Lien Debt Documents, plus all other outstanding amounts that would constitute Obligations under, and as defined in, the Third Lien Note Indenture (collectively, the "**Prepetition Third Lien Obligations**" and, together with the Prepetition Revolver Obligations and the Prepetition Second Lien Obligations, the "**Prepetition Obligations**"); *provided that*, in the event of a final determination that the Third Lien Noteholders are undersecured as of the Petition Date, payments received for accrued and unpaid interest pursuant to this paragraph 4(f), if any, may be recharacterized and applied as payments of principal.  No payments or transfers made to or for the benefit of (or obligations incurred to or for the benefit of) the Third Lien Indenture Trustee or the Third Lien Noteholders by or on behalf of any of the Debtors prior to the Petition Date under or in

connection with the Third Lien Notes is subject to avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise;

(g)     the liens and security interests granted to the Third Lien Indenture Trustee (for the ratable benefit of the Third Lien Noteholders) to secure the Prepetition Third Lien Obligations are (i) valid, binding, perfected, enforceable, third priority (in each case, subject to permitted exceptions under the Third Lien Note Indenture) liens on and security interests in the Prepetition Collateral, (ii) not subject to avoidance, recharacterization or subordination (except as set forth in the Intercreditor Agreement and as a result of the value of the Prepetition Collateral pursuant to section 506(a) of the Bankruptcy Code) pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) after giving effect to this Order, the Carve-Out and the liens and security interests granted to secure the DIP Loans and the Adequate Protection Obligations (as defined in paragraph 17 below), (B) (I) prior to repayment in full of the Prepetition Revolver Obligations, liens securing the Prepetition Revolver Obligations and (II) prior to repayment in full of the Prepetition Second Lien Obligations, liens securing the Prepetition Second Lien Obligations and (C) other valid and unavoidable liens properly perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code to the extent such liens are senior to the liens securing the Prepetition Third Lien Obligations) and are permitted by the Third Lien Documents;

(h)     none of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties are control persons or insiders of the Debtors or any of their affiliates by virtue of any

of the actions taken with respect to, in connection with, related to, or arising from the DIP Facility, the DIP Documents, the Revolving Credit Agreement Documents, and/or the Prepetition Debt Documents;

(i)     (1) no portion of any of the Prepetition Obligations shall be subject to contest, avoidance, attack, offset, re-characterization, subordination or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise, except with respect to subordination as set forth in the Intercreditor Agreement, and (2) the Debtors, on behalf of themselves and their respective estates, forever and irrevocably release, discharge, and acquit all former, current and future DIP Agents, DIP Lenders (including, without limitation, any Secured Swap Provider (as such term is defined in the DIP Credit Agreement)) and Prepetition Secured Parties, affiliates of the DIP Agent and DIP Lenders and the Prepetition Secured Parties, and each of their respective former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest of each of the DIP Agent, each DIP Lender and each Prepetition Secured Party and their respective affiliates (collectively, the "**Releasees**"), **solely in their capacity as DIP Agent, DIP Lenders, Secured Swap Providers, and Prepetition Secured Parties**, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, reasonable attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without

WEIL:\95784106\19\51351.0003

limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Documents, the Prepetition Debt Documents, the Prepetition Swap Agreements and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the DIP Agent, the DIP Lenders, and/or the Prepetition Secured Parties, *provided, that*, the releases set forth in this section shall be limited to such claims arising prior to or including the date of the entry of this Order. The Debtors further waive and release any defense, right of counterclaim, right of setoff or deduction of the payment of the Prepetition Obligations and the DIP Obligations that the Debtors now have or may claim to have against the Releasees arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Order;

(j)     no portion of any of the Prepetition Obligations shall be subject to contest, attack, avoidance, impairment, disallowance, defense, counterclaim, recharacterization, reduction, recoupment, setoff, recovery or, except as set forth in the Intercreditor Agreement, subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(k)     The Prepetition Agents, together with the Debtors, are party to that certain Intercreditor Agreement, dated as of May 1, 2015 (as amended, supplemented or otherwise modified as of the Petition Date, the "**Intercreditor Agreement**"), that set forth the relative lien priorities and other rights and remedies of the Prepetition Secured Parties

with respect to, among other things, the Prepetition Collateral; and pursuant to section 4.02 of that Intercreditor Agreement, the liens on the Prepetition Collateral held by the Second Lien Noteholders and the Third Lien Noteholders are subordinate to the DIP Liens and the Adequate Protection Liens to the extent provided therein.

(l)    The aggregate value of the Prepetition Collateral securing the Prepetition Revolver Obligations substantially exceeds the aggregate amount of the Prepetition Revolver Obligations.

5.    *Findings Regarding the DIP Loans.*

(a)    Good cause has been shown for the entry of this Order.

(b)    The Debtors have an immediate need to enter into the DIP Facility, obtain the DIP Loans, avoid termination of their Prepetition Swap Obligations with Consenting Prepetition Secured Swap Providers, have the ability to enter into Secured Swap Agreements with Postpetition Secured Swap Providers and to use the Prepetition Collateral, including the Cash Collateral (as defined below), in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors, make payroll and satisfy other working capital and general corporate purposes of the Debtors (including fees, costs and expenses related to the Chapter 11 Cases and the DIP Documents, capital expenditures and any interest payments under the Second Lien Notes, as and to the extent set forth in this Order and in accordance with the Budget and the DIP Documents) and refund, refinance, replace and repay in full the Prepetition Revolver Obligations, a critical step to permit the Debtors to obtain this financing. Repayment in full of the Prepetition Revolver Obligations with the initial proceeds of the DIP Loans is appropriate because (i) the aggregate value of the Prepetition Collateral securing the Prepetition Revolver Obligations

WEIL:\95784106\19\51351.0003

substantially exceeds the aggregate amount of the Prepetition Revolver Obligations; (ii) it is a condition to closing under the DIP Credit Agreement that the initial proceeds of the DIP Loans be used to repay in full the Prepetition Revolver Obligations so that the Debtors' assets that secure the Prepetition Revolver Obligations will be available to secure on a first lien basis the DIP Obligations (as defined in paragraph 5(e) below); (iii) the DIP Credit Agreement will convert into an exit financing facility subject to the terms set forth in the DIP Credit Agreement and in the agreement for the exit financing facility which is attached as an exhibit to the Commitment/Fee Letters which provides the Debtors assurance of sufficient capital after their emergence from bankruptcy protection; (iv) the refunding, refinancing, replacement and repayment of the Revolving Credit Agreement Loans with DIP Loans will make possible savings on account of interest that otherwise would or could accrue on the Revolving Credit Agreement Loans at the default rate applicable thereunder, but for such refunding, refinancing, replacement and repayment; (v) the Company will be permitted to continue hedging against commodity pricing and other risk; and (vi) the Plan (as defined below) has been approved in advance of the Petition Date by the requisite majority of each of the Debtors' impaired classes of creditors and the proposed treatment of the Prepetition Revolver Obligations was disclosed in the Debtors' disclosure statement that accompanied the Plan. The inclusion of the Prepetition Swap Obligations as DIP Obligations hereunder is appropriate because the Consenting Prepetition Secured Swap Providers to the Prepetition Swap Agreements have agreed not to terminate the Prepetition Swap Agreements subject to such relief being granted, among other conditions, and such obligations are secured to the same extent as the other Prepetition Revolver Obligations. In accordance with the terms of the Intercreditor Agreement, the DIP Facility and all DIP Obligations constitute "Priority

- 17 -

Lien Obligations" as defined in, and for all purposes under, the Intercreditor Agreement.

(c)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 364(b) of the Bankruptcy Code. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting priming liens under section 364(d)(1) of the Bankruptcy Code and the Superpriority Claims (as defined in paragraph 7(a) below) and refund, refinance, replace and repay in full the Prepetition Revolver Obligations, in each case on the terms and conditions set forth in this Order and the DIP Documents.

(d)    The terms of the DIP Loans pursuant to the DIP Documents and the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)    The DIP Documents, the use of the Prepetition Collateral (including the Cash Collateral), and the grant of adequate protection hereunder have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders, the DIP Arrangers, and the other Prepetition Secured Parties, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Documents, any Prepetition Swap Agreements with a Consenting Prepetition Secured Swap Provider, any Postpetition Swap Agreements with a Postpetition Secured Swap Provider or cash management agreements to which any Debtor and any DIP Lender are party, this Order and the DIP Loans (collectively, the "**DIP Obligations**") shall be deemed to

- 18 -

have been extended by the DIP Agent and DIP Lenders in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.  Any such reversal, modification, or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder or any obligations previously incurred under a Prepetition Swap Agreement with a Consenting Prepetition Secured Swap Provider or a Postpetition Swap Agreement with a Postpetition Secured Swap Provider, or lien, claim or priority authorized or created hereby.  Any liens or claims granted to the DIP Lenders hereunder arising prior to the effective date of any such reversal, modification, or vacatur of this Order shall be governed in all respects by the original provisions of this Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

(f)     The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the interim relief set forth in this Order, the Debtors' estates and their business operations will be immediately and irreparably harmed and the Debtors' proposed plan of reorganization [Docket No. [_]] (the "**Plan**"), which is the culmination of extensive negotiations among the Debtors and their creditors and has been approved by a statutory majority of all of their impaired classes of creditors, will be in jeopardy since there will be no committed financing for the Debtors' emergence from bankruptcy. The borrowing of the DIP Loans and the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Order and the DIP Documents are, therefore, in the best interest of the Debtors' chapter 11 estates.

6.      *Authorization of the DIP Loans and the DIP Documents.*

(a)      The Debtors are hereby authorized (i) to enter into and perform under the DIP Documents and, (ii) to borrow under the DIP Credit Agreement up to an aggregate principal amount of $500,000,000 of the DIP Loans (including issuance of letters of credit or the deemed issuance of the Revolving Credit Agreement Letters of Credit as letters of credit issued under the DIP Facility), the proceeds of which shall be used for, subject to the terms of this Order, the DIP Documents and the Budget, working capital and other general corporate purposes of the Debtors (including fees, costs and expenses related to the Chapter 11 Cases and the DIP Documents, capital expenditures and any interest payments under the Second Lien Notes), including without limitation, to pay interest, fees and expenses in connection with the DIP Loans and the Adequate Protection Obligations (as defined in paragraph 17 below) and to refund, refinance, replace and repay in full the Revolving Credit Agreement Loans.

(b)      Upon the closing of the DIP Facility, all Revolving Credit Agreement Loans shall be deemed "Loans" made under, and as defined in, the DIP Credit Agreement and all Revolving Credit Agreement Letters of Credit shall be deemed "Letters of Credit" issued under, and as defined in, the DIP Credit Agreement.

(c)      Upon the closing of the DIP Facility, all Prepetition Swap Agreements (including, without limitation, the Prepetition Swap Obligations) with Consenting Prepetition Secured Swap Providers or Postpetition Swap Agreements are hereby deemed DIP Obligations. The Debtors are hereby authorized to satisfy and perform all obligations under or in connection with Secured Swap Agreements that constitute DIP Obligations.

WEIL:\95784106\19\51351.0003

(d)    Upon the closing of the DIP Facility, the mortgages and deposit account control agreements that provide liens on and security interests in the real property and personal property assets of the Debtors, shall remain in full force and effect and shall be effective to provide liens on and security interests in the DIP Collateral and shall constitute DIP Documents for all purposes hereunder.

(e)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and empowered to perform all acts and to execute and deliver all instruments and documents that the DIP Agent determines to be reasonably required or necessary for such Debtor's performance of its obligations under the applicable DIP Documents, including without limitation:

(i)    the execution, delivery and performance of the DIP Documents;

(ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents (in each case in accordance with the terms of the applicable DIP Documents and in such form as the Debtors, the DIP Agent and the required DIP Lenders may agree) and no further approval of this Court shall be required for any amendment, waiver, consent or other modification to and under the DIP Documents that does not materially and adversely affect the Debtors or which does not (A) shorten the scheduled maturity of the DIP Loans, (B) increase the principal amount of, or the rate of interest payable on, the DIP Loans, or (C) change any DIP Event of Default, add any covenants or amend the covenants therein, in any such case to be materially more restrictive; *provided*, *however*, that a copy of any such amendment, waiver, consent or other modification shall be filed by the Debtors with this Court and served by the Debtors on counsel for the Prepetition Agents, counsel to the ad hoc committee of Second Lien Noteholders, the U.S. Trustee, and counsel to the statutory committee of unsecured creditors (the "**Committee**"), if any, appointed in the Chapter 11 Cases within three (3) Business Days of its effectiveness;

(iii)    the non-refundable payment to the DIP Agent, the DIP Arrangers and the DIP Lenders, as the case may be, of the commitment, underwriting, arranger and administrative agency fees set forth in the applicable DIP Documents as described in the Motion and/or referred to in one or more commitment and fee letters executed among the Debtors and the respective DIP Agent and/or DIP Arrangers (collectively, the "**Commitment/Fee Letters**"); and

- 21 -

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(f)    Each Debtor is authorized and directed to perform its respective obligations under the applicable Commitment/Fee Letters, including in connection with the commitment by the DIP Arrangers to provide up to $600,000,000 of proposed exit financing facilities on the terms, and subject to the conditions, set forth in the applicable Commitment/Fee Letters and the DIP Documents.

(g)    Upon the execution thereof, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Order and the DIP Documents.  No obligation, payment, transfer or grant of security by the Debtors under the DIP Documents, the Secured Swap Agreements with Consenting Prepetition Secured Swap Providers or Postpetition Secured Swap Providers or this Order shall be voidable, avoidable, restrained or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(h)    All borrowings under the DIP Facility and all use of Cash Collateral shall be in compliance with the Budget (as the same may be modified from time to time consistent with and subject to the terms of the DIP Credit Agreement and the terms hereof), and the Debtors shall not use any portion of the proceeds of the DIP Facility or any Cash Collateral, directly or indirectly, in excess of the amounts set forth in the Budget, except (and to the extent of) any variance permitted under the DIP Credit Agreement.  The Budget may

- 22 -

be updated and amended from time to time in accordance with the DIP Credit Agreement, *provided that* (i) such updated or amended Budget shall be provided promptly to counsel for the Prepetition Agents and any Committee, (ii) the Debtors shall consult with the Third Lien Noteholders party to the Restructuring Support Agreement, dated as of June 9, 2016, in advance regarding such update or amendment, and such update or amendment shall be subject to the consent of the Requisite Third Lien Noteholders (as defined in the Restructuring Support Agreement), which consent shall not be unreasonably withheld, and (iii) and the Debtors shall be required always to comply with the Budget as set forth in DIP Credit Agreement.

      7.     *Superpriority Claims*.

          (a)     Except to the extent expressly set forth in this Order in respect of the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims (the "**Superpriority Claims**") against the Debtors on a joint and several basis (without the need to file a proof of claim or request for payment) with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of each of the Debtors.  Other than the Carve-Out, no priority

claims are, or will be, senior to, prior to, or *pari passu* with the Superpriority Claims, or any of the DIP Obligations, or with any other claims of the DIP Agent or the DIP Lenders arising hereunder or under the other DIP Documents or under any Prepetition Swap Agreement or Postpetition Swap Agreement, or otherwise in connection with the DIP Facility.

(b)     For purposes hereof, the "**Carve-Out**" shall mean (i) fees owing to the United States Trustee incurred in connection with the Chapter 11 Cases, in an unlimited amount, (ii) professional fees, expenses, and disbursements incurred by professional persons employed by the Debtors or any Committee (including any fees and expenses of the members of any Committee) ("**Professional Fees and Expenses**") incurred on and after the Petition Date and before the occurrence of a Carve-Out Trigger Date (defined in this paragraph 7 below), in an unlimited amount and (c) Professional Fees and Expenses incurred after the occurrence of a Carve-Out Trigger Date, in an amount not to exceed $5,000,000 (the "**Post-Trigger Date Carve-Out**"). For the purposes hereof, a "**Carve-Out Trigger Date**" means the first business day after the DIP Agent provides a written notice to the DIP Borrower and its counsel that an Event of Default under (and as defined in) the DIP Credit Agreement (a "**DIP Event of Default**") (or an event which with the giving of notice would constitute a DIP Event of Default) has occurred.

(c)     Upon the occurrence of the Carve-Out Trigger Date, the DIP Borrower shall deposit into an interest-bearing escrow account at a financial institution acceptable to the DIP Agent (the "**Carve-Out Account**") an amount equal to the sum of (a) all fees and expenses required to be paid pursuant to clause 7(b)(i); (b) all billed and unpaid Professional Fees and Expenses (including outstanding holdbacks) incurred on or after the Petition Date and prior to the Carve-Out Trigger Date; (c) all unbilled Professionals Fees and Expenses

incurred on or after the Petition Date and prior to the Carve-Out Trigger Date and (d) $5,000,000. The failure of the Carve-Out Account to satisfy in full the amount set forth in the Carve-Out shall not affect the priority of the Carve-Out. To the extent funded from the DIP Facility, the Carve-Out shall be added to and made part of the DIP Facility. The amount in the Carve-Out Account shall be reduced on a dollar-for-dollar basis for Professional Fees and Expenses that are paid and the Carve-Out Account shall not be replenished for any such amounts so paid.

(d)    The DIP Agent and the DIP Lenders shall retain automatically perfected and continuing first priority security interests in any residual interest in the Carve-Out Account available following satisfaction in full of all obligations benefiting from the Carve-Out (the "**Residual Carve-Out Amount**"). Subject to the terms of the Intercreditor Agreement, (i) the Second Lien Indenture Trustee and Second Lien Noteholders shall retain automatically perfected and continuing second priority security interests and (ii) the Third Lien Indenture Trustee and Third Lien Noteholders shall retain automatically perfected and continuing third priority security interests in the Residual Carve-Out Amount. Promptly (but in no event later than five (5) Business Days) following the satisfaction in full of all obligations benefiting from the Carve-Out, the DIP Borrower shall deliver the Residual Carve-Out Amount, if any, to the DIP Agent.

8.    *DIP Liens*. As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any property, the following security interests in and liens and mortgages upon all property

- 25 -

identified in clauses (a), (b) and (c) below (collectively, the "**DIP Collateral**") are hereby granted to the DIP Agent, for its own benefit and the benefit of the DIP Lenders, subject only to the Carve-Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Order and the DIP Documents, the "**DIP Liens**"):

      (a) <u>First Lien on Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and post-petition property in which the Debtors have an interest, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or valid liens perfected (but not granted) after the Petition Date to the extent such postpetition perfection is expressly permitted by section 546(b) of the Bankruptcy Code (collectively, the "**Unencumbered Property**"), including without limitation, any and all unencumbered cash, hydrocarbons and other inventory generated or produced after the Petition Date, accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, vehicles, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of the subsidiaries of the Debtors and the proceeds of all of the foregoing; *provided that* the Unencumbered Property shall exclude any of the Debtors' claims and causes of action arising under chapter 5 of the Bankruptcy Code  (collectively, the "**Avoidance Actions**").

      (b) <u>Liens Junior to Certain Existing Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien

on, and security interest in, all tangible and intangible prepetition and post-petition property in which the Debtors have an interest (other than the property described in paragraph 8(b), as to which the DIP Liens will be as described in such clause), whether now existing or hereafter acquired and all proceeds thereof, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "**Non-Primed Liens**"), which security interests and liens in favor of the DIP Agent and the DIP Lenders shall be junior to the Non-Primed Liens.

(c) Liens Priming the Liens of the Prepetition Secured Parties. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all Prepetition Collateral. The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of each of the Prepetition Secured Parties (including the applicable Adequate Protection Liens granted to such Prepetition Secured Parties).

(d)    Liens Senior to Certain Other Liens. Other than Excepted Liens (as defined in the DIP Credit Agreement) incurred after the Petition Date, no claim or lien, security interest or mortgage having a priority senior to or *pari passu* with those granted by this Order to the DIP Agent and the DIP Lenders other than the Carve-Out shall be granted or allowed while any portion of the DIP Obligations remain outstanding, and the DIP Liens shall not be (i) subject or subordinate to (A) any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the

- 27 -

Bankruptcy Code or (B) any liens, security interests or mortgages arising after the Petition Date or (ii) subordinated to or made *pari passu* with any other lien, security interest or mortgage under sections 363 or 364 of the Bankruptcy Code or otherwise. The DIP Liens and Adequate Protection Liens shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (such Chapter 11 Cases or proceedings, "**Successor Cases**"), and/or upon the dismissal of any of the Chapter 11 Cases. Subject to the entry of the Final Order, the DIP Liens and the Adequate Protection Liens shall not be subject to section 510 of the Bankruptcy Code (other than as set forth in the Intercreditor Agreement), to the "equities of the case" exception of section 552 of the Bankruptcy Code, or to section 506(c) of the Bankruptcy Code, or sections 549, 550 or 551 of the Bankruptcy Code.

(e)     However, notwithstanding any provision in this Order to the contrary, in no event shall any enclosed structure (having two walls and a roof) or manufactured mobile home (both a "**Building**") be included in the definition of DIP Collateral, in each case until such time as the DIP Agent notifies the applicable Debtors that such property shall be included in the definition of DIP Collateral, upon the DIP Agent's determination and DIP Lenders' determination that all applicable Flood Insurance Regulation requirements have been satisfied. Upon such notice by the DIP Agent and the DIP Lenders, any and all Buildings shall automatically be included in the definition of DIP Collateral, and shall be encumbered pursuant to this Order without any further action by any party. As used herein, "Flood Insurance Regulations" means (a) the National Flood Insurance Act of 1968 as now or hereafter in effect or any successor statute thereto, (b) the Flood Disaster Protection Act of

- 28 -

1973 as now or hereafter in effect or any successor statue thereto, (c) the National Flood Insurance Reform Act of 1994 (amending 42 USC 4001, *et seq.*), as the same may be amended or recodified from time to time and (d) the Flood Insurance Reform Act of 2004 and any regulations promulgated thereunder.

9.    *Remedies after Event of Default.*

(a)    DIP Event of Default.  The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (a) immediately upon the occurrence and during the continuance of a DIP Event of Default, all rights and remedies under the applicable DIP Documents, other than those rights and remedies against the applicable DIP Collateral as provided in clause (b) below, and (b) upon the occurrence and during the continuance of a DIP Event of Default, and the giving of five (5) Business Days' prior written notice to the Debtors (with a copy to counsel to the Debtors, counsel to the Prepetition Agents, the U.S. Trustee, and counsel to any Committee), all rights and remedies against the DIP Collateral provided for in the applicable DIP Documents and this Order (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agent or any DIP Lender); *provided that*, during the foregoing five (5) Business Day period, the only issue that may be raised by any party in opposition other than the Court, the U.S. Trustee, or any Committee to the exercise of rights and remedies shall be whether a DIP Event of Default has in fact occurred and is continuing, and other than as set forth in the prior clause of this proviso, the Debtors hereby waive their right to seek any relief, whether under section 105 of the Bankruptcy Code or otherwise, that would in any way impair, limit or restrict, or delay the exercise or benefit of, the rights and remedies of the DIP Agent and the DIP Lenders

- 29 -

under the DIP Documents or this Order. In no event shall the DIP Agent, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral. Neither the DIP Agent's nor any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Order shall constitute a waiver of such DIP Agent's or any DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Credit Agreement. For the avoidance of doubt, nothing in this Paragraph 9(a) shall limit or impair the rights of a Consenting Prepetition Secured Swap Provider or a Postpetition Secured Swap Provider to terminate, liquidate or accelerate any Secured Swap Agreement in accordance with the terms thereof or to exercise and rights of netting, offset or other remedies thereunder, including without limitation, the right to offset obligations under any Secured Swap Agreement against any other DIP Obligations or Prepetition Revolver Obligations, as applicable, upon the occurrence of an "Event of Default" or "Termination Event" (as defined in the Secured Swap Agreement), *provided*, *that*, for the further avoidance of doubt, any exercise of remedies following a DIP Event of Default to liquidate or foreclose on DIP Collateral shall be subject to the five (5) Business Day notice period described in this paragraph 9(a).

(b)     Cash Collateral Event of Default.  Subject to the provisions set forth in section 4.02 of the Intercreditor Agreement restricting the Second Lien Indenture Trustee, the Second Lien Noteholders, the Third Lien Indenture Trustee, and the Third Lien Noteholders, upon the occurrence and during the continuance of a Cash Collateral Event of Default (as defined below), and the giving of five (5) Business Days' prior written notice to the Debtors

- 30 -

by the DIP Agent or any of the Prepetition Agents (with a copy to counsel to the U.S.
Trustee, Debtors, counsel to the other Prepetition Agents, counsel to the ad hoc committee of
Second Lien Noteholders, and counsel to any Committee), the Debtors' right to use
Prepetition Collateral (including Cash Collateral) shall terminate, subject to the Debtors'
rights to seek an emergency hearing on whether a Cash Collateral Event of Default has in
fact occurred and is continuing.   The occurrence of any of the following events shall
constitute a "**Cash Collateral Event of Default**":

(i)     any Debtor shall have asserted, in a pleading filed with the Court (or another court
of competent jurisdiction), a claim or challenge against any of the Prepetition
Secured Parties in any way contrary to or inconsistent with any of the Debtors'
acknowledgements, stipulations, and releases contained herein;

(ii)    any of the Debtors shall have failed to comply with any other term hereof and the
same is not remedied within five (5) days' receipt of written notice of such non-
compliance by any of the Prepetition Agents;

(iii)   any of the Debtors shall have filed a motion seeking to incur any postpetition
financing or create any postpetition liens or security interests other than those
granted or permitted pursuant hereto;

(iv)    if any of the Debtors seeks, or if there is entered, any modification of this Order
that adversely affects any lien, claim, right, or other protection (including without
limitation Adequate Protection) granted to or for the benefit of any Prepetition
Agent or Prepetition Secured Party without the prior written consent of such
Prepetition Agent or Prepetition Secured Party, and no such consent shall be
implied by any other action, inaction, or acquiescence by any Prepetition Agents
or Prepetition Secured Party;

(v)     if the Final Order shall not have been entered on or before sixty (60) days
following the entry of this Order; or

(vi)    the entry of an order (x) dismissing the Chapter 11 Cases or converting the
Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (y)
appointing a chapter 11 trustee in the Chapter 11 Cases, or (z) appointing an
examiner having expanded powers (beyond those set forth under sections
1106(a)(3) and (4) of the Bankruptcy Code).

10.     *Limitation on Charging Expenses against Collateral.*   Subject to and effective
upon entry of the Final Order, except to the extent of the Carve-Out, no expenses of

- 31 -

administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral, as the case may be, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent or the Prepetition Agents, as applicable, and no such consent shall be implied from any other action or inaction by the DIP Agent, the DIP Lenders or the Prepetition Secured Parties.

11. *Limitations under Section 552(b) of the Bankruptcy Code.* The Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to and effective upon entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Secured Parties with respect to (i) proceeds, products, offspring or profits of any of the Prepetition Collateral or any of the DIP Collateral or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Prepetition Collateral.

12. *Payments Free and Clear.* Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders or (except as provided in paragraph 20 of this Order) to the Prepetition Secured Parties pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability.

13. *Prepetition Revolver Obligations.*

(a)     Subject to the provisions of this paragraph 13, the Prepetition Revolver Obligations shall be refunded, refinanced, replaced and paid in full (including all amounts that would constitute "Secured Obligations" under and as defined in the Revolving Credit Agreement) by the Debtors from the proceeds of the initial borrowing of the DIP Loans and,

upon such payment, the commitments of all Revolving Credit Agreement Lenders under the Revolving Credit Agreement shall be terminated. Upon such refunding, refinancing, replacement and repayment in full of the Prepetition Revolver Obligations, all security interests in, and liens on, Prepetition Collateral granted to secure the Prepetition Revolver Obligations shall be immediately, and without the necessity of further action, deemed to be included among the DIP Liens granted pursuant to this Order to secure the DIP Obligations. Upon the closing of the DIP Facility, (x) the Revolving Credit Agreement Letters of Credit shall be deemed issued and outstanding under the DIP Facility, and neither the Revolving Credit Agreement Agent nor any Revolving Credit Agreement Lender shall have any further obligations or liabilities with respect to such Revolving Credit Agreement Letters of Credit to either the Debtors or the beneficiaries thereof and (y) the Prepetition Swap Obligations with Consenting Prepetition Secured Swap Providers shall constitute DIP Obligations for all purposes hereunder, including for purposes of receiving the benefit of the DIP Collateral and Superpriority Claims subject to the terms of the DIP Credit Agreement.

(b)    *Adequate Protection for the Revolving Credit Agreement Agent and Revolving Credit Agreement Lenders.*    Until such time as the Prepetition Revolver Obligations shall be refunded, refinanced, replaced and paid in full by the Debtors, and the Prepetition Swap Agreements and the Prepetition Swap Obligations with Consenting Prepetition Secured Swap Providers become DIP Obligations, the Revolving Credit Agreement Agent and the Revolving Credit Agreement Lenders are entitled, pursuant to sections 361, 363(c)(2), 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their valid, perfected and enforceable interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of their interests in

the Prepetition Collateral, including without limitation, for any such diminution resulting from the sale, lease or use by the Debtors of the Cash Collateral and any other Prepetition Collateral, the priming of the Revolving Credit Agreement Agent's liens on the Prepetition Collateral by the DIP Liens and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "**Prepetition First Lien Adequate Protection Obligations**"). As adequate protection for the Prepetition First Lien Adequate Protection Obligations, until such time as the Prepetition Revolver Obligations shall be refunded, refinanced, replaced and paid in full by the Debtors and the Prepetition Swap Agreements, including without limitation, the Prepetition Swap Obligations, with Consenting Prepetition Secured Swap Providers become DIP Obligations, the Debtors shall pay all reasonable fees and expenses of (i) the Revolving Credit Agreement Agent, Revolving Credit Agreement Lenders, and the Consenting Prepetition Secured Swap Providers payable under section 12.03 of the Revolving Credit Agreement (including, without limitation, reasonable fees and disbursements of counsel and financial advisors to the Revolving Credit Agreement Agent) and incurred in connection with (A) the enforcement by the Revolving Credit Agreement Agent, Revolving Credit Agreement Lenders, and the Consenting Prepetition Secured Swap Providers of the rights, benefits and privileges granted in this Order or the Final Order in favor of the Revolving Credit Agreement Agent, Revolving Credit Agreement Lenders, and Consenting Prepetition Secured Swap Providers and (B) any discovery or litigation in connection with any pending or threatened "Claims and Defenses" (as defined in paragraph 20 below) which shall have been raised or asserted against the Revolving Credit Agreement Lenders, Revolving Credit Agreement Agent, Consenting Prepetition Secured Swap Providers, or the Prepetition Revolver Obligations, until the resolution thereof by a

final, non-appealable order. None of the fees and expenses payable pursuant to this paragraph 13(b) shall be subject to separate approval by this Court (but the U.S. Trustee, the Debtors and the Committee may object to the reasonableness as such standard is used in section 506(b) of the Bankruptcy Code, of such fees and expenses within ten (10) Business Days of the receipt of an invoice detailing such fees and expenses, and this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. Promptly following the completion of the ten (10) Business Day objection period, if no objection is made or following the resolution of any dispute regarding the fees and expenses payable pursuant to this paragraph 13(b) in the Court, the Debtors shall pay the fees and expenses provided for in this paragraph 13(b). The Debtors' obligation to pay such fees and expenses shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "**First Lien 507(b) Claims**"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (i) the Carve-Out and (ii) the Superpriority Claims granted in respect of the DIP Obligations.

(c) *Payment of Fees and Expenses for the Revolving Credit Agreement Agent and Revolving Credit Agreement Lenders Pursuant to Section 506(b) of the Bankruptcy Code.* Subject to the provisions of paragraph 20, upon the refunding, refinancing, replacement and repayment in full by the Debtors of the Prepetition Revolver Obligations, the Debtors shall pay all reasonable fees and expenses of the Revolving Credit Agreement Agent and Revolving Credit Agreement Lenders payable under Section 12.03 of

- 35 -

the Revolving Credit Agreement (including, without limitation, reasonable fees and disbursements of counsel and financial advisors to the Revolving Credit Agreement Agent) incurred in connection with (A) the Final Hearing, (B) the enforcement by the Revolving Credit Agreement Agent and Revolving Credit Agreement Lenders of the rights, benefits and privileges granted in this Order or the Final Order in favor of the Revolving Credit Agreement Agent and Revolving Credit Agreement Lenders and (C) any discovery or litigation in connection with any pending or threatened "Claims and Defenses" (as defined in paragraph 20 below) which shall have been raised or asserted against the Revolving Credit Agreement Lenders, Revolving Credit Agreement Agent or the Prepetition Revolver Obligations, until the resolution thereof by a final, non-appealable order in accordance with section 506(b) of the Bankruptcy Code.  None of the fees and expenses payable pursuant to this paragraph 13(a) shall be subject to separate approval by this Court (but the U.S. Trustee, the Debtors and the Committee may object to the reasonableness as such standard is used in section 506(b) of the Bankruptcy Code, of such fees and expenses within ten (10) Business Days of the receipt of an invoice detailing such fees and expenses, and this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.  Promptly following the completion of the ten (10) Business Day objection period, if no objection is made or following the resolution of any dispute regarding the fees and expenses payable pursuant to this paragraph 13(c) in the Court, the Debtors shall pay the fees and expenses provided for in this paragraph 13(a).

        (d)      Nothing in this Order or the DIP Documents shall prejudice the rights, remedies and privileges of the Revolving Credit Agreement Agent, the Secured Swap Parties,

and the Revolving Credit Agreement Lenders granted in the Bankruptcy Code or as set forth in the Revolving Credit Agreement Documents to the extent the Prepetition Revolver Obligations are not refunded, refinanced, replaced or repaid as contemplated by the DIP Credit Agreement or, after repayment, are required to be disgorged or otherwise avoided or reinstated, and all of the Revolving Credit Agreement Agent's, Revolving Credit Agreement Lenders', and Secured Swap Parties' rights and remedies under the Bankruptcy Code and the Revolving Credit Agreement Documents (including the Intercreditor Agreement) are hereby fully preserved, including their right to seek additional or further adequate protection.

14.     *Cash Collateral.* Substantially all of the Debtors' cash as of the Petition Date, including without limitation, all cash and other amounts on deposit or maintained by the Debtors in any account or accounts with any Prepetition Secured Party and any cash proceeds of the disposition of any Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are Cash Collateral of the Prepetition Secured Parties (subject in all cases to the Intercreditor Agreement), within the meaning of section 363(a) of the Bankruptcy Code.

15.     *Use of Prepetition Collateral (Including Cash Collateral).* The Debtors are hereby authorized to use the Prepetition Collateral, including the Cash Collateral, during the period from the Petition Date through and including the Termination Date (as defined below) for working capital and general corporate purposes (including fees, costs and expenses related to the Chapter 11 Cases and the DIP Documents, capital expenditures and any interest payments under the Second Lien Notes, as and to the extent set forth in this Order and in accordance with the Budget and the DIP Documents) in accordance with the terms and conditions of this Order and subject to compliance with the Budget; *provided that,* (a) the Prepetition Secured Parties are granted adequate protection as set forth herein and (b) except on the terms of this Order, the

WEIL:\95784106\19\51351.0003

Debtors are not authorized to use the Cash Collateral. As used herein, "**Termination Date**" means the earlier to occur of (a) the Maturity Date (as defined in the DIP Credit Agreement) of the DIP Facility and (b) the acceleration of any DIP Loans and the termination of any Commitments (as defined in the DIP Credit Agreement) in accordance with the terms of the DIP Credit Agreement.

16.    *Adequate Protection for the Second Lien Indenture Trustee and Second Lien Noteholders.* The Second Lien Indenture Trustee and the Second Lien Noteholders are entitled, pursuant to sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of their valid, perfected and enforceable interests in the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Cash Collateral and any other Prepetition Collateral, the priming of the Second Lien Indenture Trustee's liens on the Prepetition Collateral by the DIP Liens and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "**Second Lien Adequate Protection Obligations**"). As adequate protection, the Second Lien Indenture Trustee and the Second Lien Noteholders are hereby granted the following:

(a)    Second Lien Adequate Protection Liens. As security for the payment of the Second Lien Adequate Protection Obligations, the Second Lien Indenture Trustee (for itself and for the benefit of the Second Lien Noteholders) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral (the "**Second Lien Adequate Protection Liens**"), subject and subordinate only to (i) the DIP Liens, (ii) the Carve-Out and (iii) the Non-Primed Liens, and subject further to the Intercreditor Agreement, *provided that*, such Second Lien Adequate Protection Liens on Unencumbered Property shall automatically and without further order of this Court be deemed to be released on the Effective Date (as such term is defined in the Plan).

WEIL:\95784106\19\51351.0003

(b)     Second Lien 507(b) Claims. The Second Lien Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "**Second Lien 507(b) Claims**"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (i) the Carve-Out, (ii) the Superpriority Claims granted in respect of the DIP Obligations, and (iii) the First Lien 507(b) Claims; such subordination referenced in (iii) only to the extent set forth in the applicable Intercreditor Agreement. The Second Lien Indenture Trustee and the Second Lien Noteholders shall not receive or retain any payments, property or other amounts in respect of the Second Lien 507(b) Claims unless and until all DIP Obligations shall have indefeasibly been paid in full in cash and the Carve-Out amount is funded. The order of priority of all 507(b) Claims shall be governed by the Intercreditor Agreement. In addition to, and notwithstanding anything to the contrary contained in this Order, any Second Lien Adequate Protection Obligations may be satisfied in a plan of reorganization confirmed in the Chapter 11 Cases in the manner set forth in such plan if holders of more than 66 2/3% (by amount) of the Second Lien Adequate Protection Obligations consent to such treatment.

(c)     Interest, Fees and Expenses. The Debtors are authorized and directed to pay, as adequate protection, to the Second Lien Indenture Trustee all accrued and unpaid interest (including interest accrued prior to the Petition Date) on the outstanding amounts under the Second Lien Notes constituting Prepetition Second Lien Obligations at the applicable non-default rate set forth in the Second Lien Debt Documents, and to pay all other accrued and unpaid fees and disbursements owing to the Second Lien Indenture Trustee under the Second Lien Debt Documents, as and when such interest, fees and disbursements become due and payable (but for the commencement of the Chapter 11 Cases) in accordance with the terms of the Second Lien Debt Documents, in each case subject to section 506(b) of the Bankruptcy Code. As additional adequate protection to the Second Lien Indenture Trustee and the Second Lien Noteholders, the Debtors shall pay, subject to the standard set forth in section 506(b) of the Bankruptcy Code, to the Second Lien Indenture Trustee, including Foley & Lardner LLP, all prepetition and postpetition reasonable fees and expenses of counsel payable to the Second Lien Indenture Trustee under the Second Lien Note Indentures. None of the fees and expenses payable pursuant to this paragraph 16(c) shall be subject to separate approval by this Court (but the U.S. Trustee, the Debtors and the Committee may object to the reasonableness, as such standard is used in section 506(b) of the Bankruptcy Code, of such fees and expenses within ten (10) Business Days of the receipt of an invoice detailing such fees and expenses, and this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. Promptly following the completion of the ten (10) Business Day objection period, if no objection is made or following the resolution of any dispute regarding the fees and expenses payable pursuant to this paragraph 16(c) in the Court, the Debtors shall pay the professional fees and expenses provided for in this paragraph 16(c) promptly after receipt of monthly invoices therefor, and the Second Lien Indenture Trustee shall promptly provide copies of such invoices (redacted to protect privileges) to the counsel to the Committee and to the U.S. Trustee.

WEIL:\95784106\19\51351.0003

17.    *Adequate Protection for the Third Lien Indenture Trustee and Third Lien Noteholders.* The Third Lien Indenture Trustee and the Third Lien Noteholders are entitled, pursuant to sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of their valid, perfected and enforceable interests in the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Cash Collateral and any other Prepetition Collateral, the priming of the Third Lien Indenture Trustee's liens on the Prepetition Collateral by the DIP Liens and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "**Third Lien Adequate Protection Obligations**" and collectively, together with the First Lien Adequate Protection Obligations and the Second Lien Adequate Protection Obligations, the "**Adequate Protection Obligations**"). As adequate protection, the Third Lien Indenture Trustee and the Third Lien Noteholders are hereby granted the following:

(a)    Third Lien Adequate Protection Liens. As security for the payment of the Third Lien Adequate Protection Obligations, the Third Lien Indenture Trustee (for itself and for the benefit of the Third Lien Noteholders) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral (the "**Third Lien Adequate Protection Liens**" and, together with the Second Lien Adequate Protection Liens, the "**Adequate Protection Liens**"), subject and subordinate only to (i) the DIP Liens, (ii) the Carve-Out, (iii) the Second Lien Adequate Protection Liens, (iv) the Non-Primed Liens, and subject further to the Intercreditor Agreement, *provided that*, such Third Lien Adequate Protection Liens on Unencumbered Property shall automatically and without further order of this Court be deemed to be released on the Effective Date (as such term is defined in the Plan).

(b)    Third Lien 507(b) Claims. The Third Lien Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "**Third Lien 507(b) Claims**", together with the First Lien 507(b) Claims and the Second Lien 507(b) Claims, the "**507(b) Claims**"), with priority in payment

over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (i) the Carve-Out, (ii) the Superpriority Claims granted in respect of the DIP Obligations, (iii) the First Lien 507(b) Claims and (iv) the Second Lien 507(b) Claims; such subordination referenced in (iii) and (iv) only to the extent set forth in the applicable Intercreditor Agreement. The Third Lien Indenture Trustee and the Third Lien Noteholders shall not receive or retain any payments, property or other amounts in respect of the Third Lien 507(b) Claims unless and until all DIP Obligations shall have indefeasibly been paid in full in cash and the Carve-Out amount is funded. The order of priority of all 507(b) Claims shall be governed by the Intercreditor Agreement.  In addition to, and notwithstanding anything to the contrary contained in this Order, any Third Lien Adequate Protection Obligations may be satisfied in a plan of reorganization confirmed in the Chapter 11 Cases in the manner set forth in such plan if holders of more than 66 2/3% (by amount) of the Third Lien Adequate Protection Obligations consent to such treatment.

(c)     Fees and Expenses. As additional adequate protection, the Debtors shall also pay all reasonable fees and expenses (whether incurred prepetition or postpetition) of advisors to (i) the Third Lien Indenture Trustee, including Stroock & Stroock & Lavan LLP and local counsel, and (ii) the ad hoc committee of Third Lien Noteholders, including Latham & Watkins LLP, local counsel and Houlihan Lokey Capital, Inc.  None of the fees and expenses payable pursuant to this paragraph 17(c) shall be subject to separate approval by this Court (but the U.S. Trustee, the Debtors and the Committee may object to the reasonableness, as such standard is used in section 506(b) of the Bankruptcy Code, of such fees and expenses within ten (10) Business Days of the receipt of an invoice detailing such fees and expenses (redacted to protect privileges), and this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.  Promptly following the completion of the ten (10) Business Days objection period if no objection is made or following the resolution of any dispute regarding the fees and expenses payable pursuant to this paragraph 17(c) in the Court, the Debtors shall pay the reasonable professional fees and expenses provided for in this paragraph 17(c).

18.    *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     The DIP Agent and each of the Prepetition Agents, as applicable, are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the DIP Liens or the applicable Adequate Protection Liens granted to them hereunder, in each case, subject to the terms of the DIP Documents. Whether or not the DIP Agent or any of the

Prepetition Agents, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens and the applicable Adequate Protection Liens, such DIP Liens and such Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or, other than as set forth in the Intercreditor Agreement, subordination as of the date of entry of this Order.

(b)     A certified copy of this Order may, in the discretion of the applicable DIP Agent or Prepetition Agent, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(c)     The Debtors shall execute and deliver to the DIP Agent or the applicable Prepetition Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the applicable DIP Agent or Prepetition Agent, as the case may be, may reasonably request to evidence, confirm, validate or perfect the DIP Liens and the applicable Adequate Protection Liens.

(d)     Subject to entry of the Final Order, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other DIP Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, and any

- 42 -

such provision shall have no force and effect with respect to the granting of the DIP Liens or the Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Lenders or Prepetition Secured Parties in accordance with the terms of the DIP Documents or this Order.

19.    *Preservation of Rights Granted Under the Order*.

(a)    Other than the DIP Liens, the Superpriority Claims, any Excepted Liens (as defined in the Revolving Credit Agreement) and Permitted Liens (as defined in the Second Lien Note Indentures or the Third Lien Note Indenture) under the Prepetition Debt Documents, and subject to the terms of the Intercreditor Agreement, no claim or lien having a priority senior to or *pari passu* with those granted by this Order to the Prepetition Agents shall be granted or allowed while any portion of the Adequate Protection Obligations remain outstanding, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or, except as set forth in the Intercreditor Agreement, subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Unless all DIP Obligations shall have been indefeasibly paid in full in cash, it shall constitute a DIP Event of Default under the DIP Credit Agreements and a termination of the right to use the Cash Collateral (i) if any of the Debtors seeks, or if there is entered, any modification of this Order without the prior written consent of the DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or (ii) an order is entered converting or dismissing any of the Chapter 11 Cases.

- 43 -

(c)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations or the Adequate Protection Obligations incurred prior to the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of the Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the DIP Lenders or to the Prepetition Secured Parties, as the case may be, prior to the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order, the DIP Documents (with respect to all DIP Obligations), the Adequate Protection Obligations and uses of the Cash Collateral.

(d)     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties granted by this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases, or (ii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection

- 44 -

Obligations.  The terms and provisions of this Order and the DIP Documents shall continue

in the Chapter 11 Cases, in any Successor Cases, and the DIP Liens, the Adequate Protection

Liens, the DIP Obligations, the Adequate Protection Obligations, the Superpriority Claims,

the 507(b) Claims, and the other administrative claims granted pursuant to this Order, and all

other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Secured

Parties granted by this Order and the DIP Documents shall continue in full force and effect

until all DIP Obligations are indefeasibly paid in full in cash and all Adequate Protection

Obligations are indefeasibly paid in full in cash or otherwise satisfied in accordance with

paragraph 13(b), 16(b), or 17(b) as applicable.

     20.    *Effect of Stipulations on Third Parties*.

       (a)    The stipulations and admissions contained in this Order, including

without limitation, in paragraphs 4 and 14 of this Order, shall be binding upon the Debtors

under all circumstances. The stipulations and admissions contained in this Order, including

without limitation, in paragraphs 4 and 14 of this Order, shall be binding upon all parties in

interest unless (a) any party-in-interest (including the Committee, if any) (a "**Challenge

Party**") that successfully seeks and obtains standing to do so has timely filed an adversary

proceeding or contested matter (subject to the limitations contained herein, including without

limitation, in this paragraph 20) (a "**Challenge**") by the later of (a) seventy-five (75) days

after entry of this Order and (b) sixty (60) days after the formation of the Committee (if any)

(the "**Challenge Period**"); *provided that* any such deadline is subject to extension as may be

specified by this Court for cause shown, or if the applicable Prepetition Agent agrees to such

an extension with respect to any Claims and Defenses in respect of the Prepetition Revolver

Obligations, the Prepetition Second Lien Obligations or the Prepetition Third Lien

- 45 -

Obligations, as applicable, (i) challenging the validity, enforceability, priority or extent of (A) the Prepetition Revolver Obligations or the liens on Prepetition Collateral securing the Prepetition Obligations, (B) the Prepetition Second Lien Obligations or the liens on the Prepetition Collateral securing the Prepetition Second Lien Obligations or (C) the Prepetition Third Lien Obligations or the liens on Prepetition Collateral securing the Prepetition Third Lien Obligations or (ii) otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Claims and Defenses**") against any of the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, each in their capacity as such, in connection with any matter related to the Prepetition Revolver Obligations, the Prepetition Second Lien Obligations, the Prepetition Third Lien Obligations or the Prepetition Collateral and (b) an order is entered and becomes final in favor of the Challenge Party sustaining any such Challenge; *provided that*, subject to this paragraph 20, as to the Debtors, all such Claims and Defenses, are hereby irrevocably waived, released and relinquished as of the Petition Date; *provided further, that* the Challenge Period ~~during~~ shall not be ~~binding on~~ ~~applicable to~~ any chapter 7 or 11 trustee appointed or elected for any of the Debtors. Upon the Debtors' admissions, stipulations and waivers herein confirmation of the Plan, the Challenge Period may be terminated at the request of the Prepetition Secured Parties.

      (b)    If no such Challenge is timely filed in respect of the Prepetition Revolver Obligations, the Prepetition Second Lien Obligations, the Prepetition Third Lien Obligations, as the case may be, (x) the Prepetition Revolver Obligations, the Prepetition Second Lien Obligations and the Prepetition Third Lien Obligations, as the case may be, shall constitute allowed claims, not subject to counterclaim, setoff, subordination (except as

- 46 -

set forth in the applicable Intercreditor Agreement), defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, recovery, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case, (y) the liens on the Prepetition Collateral securing the Prepetition Revolver Obligations, the Prepetition Second Lien Obligations and the Prepetition Third Lien Obligations, as the case may be, shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraphs 4(c), 4(e), and 4(g) as applicable, not subject to setoff, subordination (except as set forth in the Intercreditor Agreement), defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, or recovery and (z) the Prepetition Revolver Obligations, the Revolving Credit Agreement Lenders, the Revolving Credit Agreement Agent, the Prepetition Second Lien Obligations, the Second Lien Indenture Trustee, the Second Lien Noteholders, the Prepetition Third Lien Obligations, the Third Lien Indenture Trustee and the Third Lien Noteholders, each in their capacity as such, as the case may be, and the liens on the Prepetition Collateral granted to secure the Prepetition Obligations, the Prepetition Second Lien Obligations and the Prepetition Third Lien Obligations, as the case may be, shall not be subject to any other or further challenge, except with respect to the value of the Prepetition Collateral, by any party-in-interest (including any Committee and, with respect to the value of the Prepetition Collateral relative to the amount of Prepetition Third Lien Obligations only, the Debtors), and such party-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). Nothing in this Order shall confer standing on any party in interest to assert any Claims or

- 47 -

Defenses or otherwise bring any cause of action.

(c)     If any Challenge is timely filed, the stipulations and admissions contained in paragraphs 4 and 14 of this Order shall nonetheless remain binding and preclusive (as provided in the third sentence of this paragraph 20) on all parties-in-interest (including the Committee, if any), except as to any such findings and admissions that were expressly and successfully challenged in such Challenge.

(d)     In the event that there is a timely successful Challenge by a final non-appealable order, pursuant and subject to the limitations contained in this paragraph 20, to the repayment of the Prepetition Obligations pursuant to this Order based upon a successful challenge to the validity, enforceability, extent, perfection or priority of the Prepetition Obligations or the liens securing the same, the Court shall have the power to unwind or otherwise modify (which might include the disgorgement or reallocation of interest, fees, principal or other incremental consideration paid in respect of the Prepetition Obligations or the avoidance of liens and/or guarantees with respect to the Debtors) to the extent that such payment resulted in the payment of any portion of the Prepetition Obligations determined by this Court to be an unsecured claim or other amount not allowable under section 502 of the Bankruptcy Code; *provided that* the proceeds of any disgorgement or unwinding of the Prepetition Revolver Obligations shall be paid directly to the DIP Agent and promptly applied to prepay the DIP Loans (and permanently reduce the Commitments (as defined in the DIP Credit Agreement) by an equal amount).

21.     *Limitation on Use of DIP Loans, DIP Collateral and Prepetition Collateral.* The Debtors shall use the DIP Loans and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Order and the DIP Documents.  Notwithstanding anything herein or in

WEIL:\95784106\19\51351.0003

any other order of this Court to the contrary, none of the DIP Loans, the DIP Collateral, the Prepetition Collateral (including the Cash Collateral) or the Carve-Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, the Prepetition Debt Documents, the Secured Swap Agreements or the liens or claims granted under this Order, the DIP Documents or the Revolving Credit Agreement Documents, (b) assert any Claims and Defenses or any other causes of action against the DIP Agent, the DIP Lenders, the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Documents or this Order, (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties hereunder or under the DIP Documents or the Prepetition Debt Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Documents; *provided that*, notwithstanding anything to the contrary herein, no more than an aggregate of $50,000 of the Cash Collateral or proceeds of the DIP Loans may be used by any Committee to investigate the validity, enforceability or priority of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations or investigate any Claims and Defenses against the Prepetition Secured Parties.

22.    *Insurance*. To the extent any Prepetition Secured Party is listed as loss payee under the Debtors' insurance policies, the DIP Agent is also deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and subject to the terms of the DIP

- 49 -

Documents, distribute any proceeds recovered or received in respect of any such insurance policies, first, to the payment of the DIP Obligations until paid in full, and second, to the payment of the Prepetition Second Lien Obligations and the Prepetition Third Lien Obligations, subject to and in accordance with the Intercreditor Agreement.

23.     *Order Governs.* In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

24.     *Binding Effect; Successors and Assigns.* The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties-in-interest in the Chapter 11 Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner with expanded powers appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided that*, except to the extent expressly set forth in this Order, the DIP Documents, or the Intercreditor Agreement, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall have no obligation to permit the use of the DIP Loans or the Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

25.     *Limitation of Liability.* In determining to make any loan under the DIP Credit Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Agent, the DIP Lenders

and the Prepetition Secured Parties shall not solely by reason thereof be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute). Furthermore, nothing in this Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders or any Prepetition Secured Party of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors.

26.    *Intercreditor Agreement*. Nothing in this Order shall amend or otherwise modify the terms or enforceability of the Intercreditor Agreement, including without limitation, the turnover provisions contained therein, the DIP Obligations shall benefit from the rights thereunder as "Priority Lien Obligations" and the Intercreditor Agreement shall each remain in full force and effect. The rights of the Prepetition Secured Parties shall at all times remain subject to the Intercreditor Agreement.

27.    *Commitment/Fee Letters.* The Commitment/Fee Letters are authorized to be filed in redacted form satisfactory to the DIP Agent and unredacted copies shall be provided solely to (i) the U.S. Trustee, (ii) counsel to any Committee, (iii) this Court and (iv) any other party as may be ordered by this Court after notice and a hearing, or agreed by the Debtors and the DIP Agent (collectively, the "**Limited Notice Parties**"). The Limited Notice Parties shall at all times keep the Commitment/Fee Letters strictly confidential and shall not disclose the contents of the Commitment/Fee Letters to any party whatsoever, including but not limited to their respective

- 51 -

clients. Any pleadings filed in these Chapter 11 Cases that reference or disclose information that is redacted from the Commitment/Fee Letters shall be filed under seal or redacted accordingly.

28.     *Proofs of Claim.* None of the DIP Agent or DIP Lenders shall be required to file proofs of claim in any of the Chapter 11 Cases or any Successor Cases for any claim allowed herein, and none of Prepetition Secured Parties shall be required to file proofs of claim or request for payment of an administrative expense in any of the Chapter 11 Cases or any Successor Cases for any claim in respect of the Prepetition Obligations. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the DIP Agent, on behalf of itself and the DIP Lenders, the Revolving Credit Agreement Agent, on behalf of the Revolving Credit Agreement Lenders, and the Second Lien Indenture Trustee, on behalf of the Second Lien Noteholders, and the Third Lien Indenture Trustee, on behalf of the Third Lien Noteholders respectively, are hereby authorized and entitled, in each of their sole and absolute discretion, but not required, to file (and amend and/or supplement, as each sees fit) a proof of claim or request for payment of an administrative expense and/or aggregate proofs of claim or request for payment of administrative expenses in each of the Chapter 11 Cases or any Successor Cases for any claim allowed herein; for avoidance of doubt, any such proof of claim or request for payment of an administrative expense, in each case, may (but is not required to) be filed as one consolidated proof of claim or request for payment of administrative expense against all of the Debtors, rather than as separate proofs of claim or request for payment of administrative expense against each Debtor. Any proof of claim or request for payment of administrative expense filed by the DIP Agent, or any Prepetition Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the respective DIP Agent, DIP Lenders or the Prepetition Secured

Parties. Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Chapter 11 Cases or any Successor Cases shall not apply to (i) the DIP Agent, DIP Lenders, Consenting Prepetition Secured Swap Providers, or the Postpetition Secured Swap Providers with respect to the Secured Obligations (as defined in the DIP Credit Agreement) or the Prepetition Swap Obligations, or (ii) the Prepetition Secured Parties with respect to the Prepetition Obligations.

29.     *No Waiver*. The failure of the DIP Lenders or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Order, the DIP Documents or the Revolving Credit Agreement Documents or otherwise, as applicable, shall not constitute a waiver of any of the DIP Lenders' or Prepetition Secured Parties' rights hereunder, thereunder, or otherwise. Except as expressly provided herein, the entry of this Order and the entry of the Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the DIP Lenders or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court.

30.     *No third-party rights*. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

31.     *Effectiveness.* This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of effectiveness of this Order.

32.     *Final Hearing*. The Final Hearing is scheduled for _August 23_, 2016, at _10:00_ (a.m.)p.m., prevailing Eastern Time, before this Court.

33. *Retention of Jurisdiction.* This Court shall have and retain exclusive jurisdiction to enforce the terms of this Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Order, including with respect to any and all disputes or matters under, arising out of or in connection with either the DIP Loans or the DIP Documents.

34. *Final Hearing Notice.* The Debtors shall promptly serve copies of this Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to the Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 Attention: Joseph Smolinsky, Esq. and Gary Holtzer, Esq., attorneys for the Debtors; (b) Fox Rothschild LLP, 919 North Market St., Wilmington, DE 19899 Attention: Jeff Schlerf, Esq. and Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attention: Elisha Graff, Esq. and Nicholas Baker, Esq., attorneys for the DIP Agent and Revolving Credit Agreement Agent; (c) Foley & Lardner LLP, 90 Park Avenue, New York, New York, 10016, Attention: Richard J. Bernard, Esq. and Derek L. Wright, Esq. attorneys for the Second Lien Indenture Trustee; (d) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038, Attention: Jayme T. Goldstein, Esq. and Frank A. Merola, Esq., attorneys for the Third Lien Indenture Trustee; (e) O'Melveny & Meyers LLP, Times Square Tower, 7 Times Square, New York, New York 10036 Attention John J. Rapisardi, attorneys for the ad hoc committee of Second Lien Noteholders; (d) Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022 Attention

Richard A. Levy, Esq. and J. Michael Chambers, Esq., attorneys for the ad hoc committee of Third Lien Indenture Trustee; (f) counsel to any Committee; and (g) the Office of the U.S. Trustee for the District of Delaware, and shall be filed with the Clerk of the Bankruptcy Court, in each case to allow actual receipt by the foregoing no later than August  16  , 2016 at 12:00 p.m., prevailing Eastern time.

Dated:   July 29 , 2016
         Wilmington, Delaware

                                        _____
                                        BRENDAN LINEHAN SHANNON
                                        UNITED STATES BANKRUPTCY JUDGE