# EXHIBIT C

**Coleman Declaration**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------x
                                                      :
In re                                                 :    Chapter 11
                                                      :
HALCÓN RESOURCES                                      :    Case No. 16-11724 (BLS)
CORPORATION, *et al.*,                                :
                                                      :    Jointly Administered
        Debtors.[1]                                   :
------------------------------------------------------x

**DECLARATION OF TIMOTHY R. COLEMAN IN SUPPORT OF**
**THE APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING**
**THE EMPLOYMENT AND RETENTION OF PJT PARTNERS LP AS INVESTMENT**
**BANKER *NUNC PRO TUNC* TO THE PETITION DATE AND (II) WAIVING**
**INFORMATION REQUIREMENTS OF LOCAL RULE 2016-2(d)**

I, Timothy R. Coleman, declare under penalty of perjury:

1.  I am a Partner and head of the Restructuring and Special Situations Group at PJT Partners LP ("**PJT**"), and one of the lead restructuring advisors involved in this case. PJT is the proposed investment banker to Halcón Resources Corporation ("**Holdings**") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**" and, together with Holdings' non-debtor controlled affiliates and subsidiaries, "**Halcón**" or the "**Company**"). PJT began working for Halcón in February 2016. I submit this declaration (this "**Declaration**") in support of the *Application of Debtors for Entry of Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Fed. R. Bankr. P. 2014 and Local Rule 2014-1 (I) Authorizing the Employment and Retention of PJT Partners LP as Investment Banker, Nunc*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Halcón Resources Corporation (0684); Halcón Holdings, Inc. (5102); HK Resources, LLC (9194); The 7711 Corporation (4003); Halcón Gulf States, LLC (2976); Halcón Louisiana Operating, L.P. (9727); Halcón Field Services, LLC (0280); Halcón Energy Properties, Inc. (5292); Halcón Operating Co., Inc. (3588); Halcón Williston I, LLC (9550); Halcón Williston II, LLC (9676); Halcón Resources Operating, Inc. (4856); HRC Energy Louisiana, LLC (1433); HRC Energy Resources (WV), Inc. (2713); HRC Production Company (3501); Halcón Energy Holdings, LLC (0538); HRC Energy, LLC (5010); HK Energy, LLC (8956); HK Louisiana Operating, LLC (4549); HK Oil & Gas, LLC (0502); HK Energy Operating, LLC (8107); HRC Operating, LLC (5129). The Debtors' mailing address is 1000 Louisiana Street, Suite 6700, Houston, Texas 77002.

2

*Pro Tunc to the Petition Date and (II) Waiving Information Requirements of Local Rule 2016-2(d)*, filed contemporaneously herewith (the "**Application**").[2]

2. Unless otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, my discussions with the Debtors' senior management, members of the PJT team, or other interested parties, my review of relevant documents, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and financial affairs. If I were called to testify, I would testify competently to the facts set forth below.  To the extent that any information disclosed herein requires subsequent amendment or modification upon PJT's completion of further analysis or as additional creditor information becomes available to it, one or more supplemental declarations will be submitted to the Court reflecting the same.

### PJT's Qualifications

3. PJT's Restructuring and Special Situations Group is one of the leading advisors to companies and creditors in restructurings and bankruptcies. PJT was spun off from The Blackstone Group L.P. ("**Blackstone**") effective October 1, 2015.[3] Upon the consummation of the spinoff, Blackstone's Restructuring and Reorganization advisory group became a part of PJT, and Blackstone's restructuring professionals became employees of PJT. The former Blackstone restructuring professionals, in their capacity as PJT employees, have been providing their clients with the same high-quality restructuring services that Blackstone had itself provided since the formation of its restructuring advisory practice 25 years ago. PJT professionals have extensive

---

[2] Capitalized terms used but not otherwise defined in this Declaration have the meanings used in the Application.

[3] On October 7, 2014, the board of directors of Blackstone's general partner approved a plan to spin off its financial and strategic advisory services, restructuring and reorganization advisory services and Park Hill fund placement businesses, and to combine these businesses with an independent financial advisory firm founded by Paul J. Taubman, to form an independent, publicly traded company called PJT Partners Inc. PJT is a wholly-owned subsidiary of PJT Partners Holdings LP, a holding partnership that is controlled by PJT Partners Inc., as general partner. PJT Partners Inc. is led by Paul J. Taubman, as chairman and chief executive officer. This spinoff was effected via a multi-step transaction.

experience working with financially troubled companies in complex financial restructurings. Since 1991, PJT professionals have advised on more than 400 distressed situations, both in and out of court, involving more than $1.5 trillion of total liabilities.

4. The partners and members of PJT's Restructuring and Special Situations Group have assisted and advised in numerous chapter 11 cases. In particular, the partners and members of PJT's Restructuring and Special Situations Group have provided services to debtors, creditors' committees, and other constituencies in numerous chapter 11 cases, including, among others: AbitibiBowater Inc.; Adelphia Communications Corporation; Allen Systems Group, Inc.; Ambac Financial Group, Inc.; Apex Silver Mines Ltd.; Arch Coal, Inc.; Caesars Entertainment Operating Corporation; Cengage Learning, Inc.; Chaparral Energy LLC; CHC Group Ltd.; Delta Air Lines, Inc.; Dynegy Inc.; Eastman Kodak Company; Edison Mission Energy; Energy Future Holdings Corporation; Energy XXI Ltd.; Endeavor International Corporation; Energy & Exploration Partners, Inc.; Enron Corporation; Excel Maritime Carriers, Ltd.; Flag Telecom Holdings Limited; Flying J. Inc.; Genco Shipping & Trading Limited; General Motors Corporation; Global Crossing Ltd.; Hawker Beechcraft, Inc.; Hercules Offshore, Inc.; Hostess Brands, Inc.; Houghton Mifflin Harcourt Publishing Company; Lee Enterprises Inc.; Legend Parent Inc.; LightSquared Inc.; Los Angeles Dodgers LLC; LyondellBasell Industries; Magnetation LLC; Magnum Hunter Resources Corporation; Mirant Corp.; New Gulf Resources, LLC; NewPage Corporation; NTK Holdings, Inc.; Paragon Offshore plc; Patriot Coal Corporation; Penn Virginia Corporation; Quicksilver Resources, Inc.; Relativity Fashion, LLC; Samson Resources Corporation; SemGroup; TerreStar Networks Inc.; Triangle USA Petroleum Corporation; Tribune Company; Walter Energy, Inc.; W.R. Grace & Co.; Winn-Dixie Stores, Inc.; Venoco Inc.; and Verso Corporation. In addition, the Restructuring and Special Situations

3

Group has provided general restructuring advice to such major companies as Clearwire Corporation, Ford Motor Company, The Goodyear Tire & Rubber Company and Xerox Corporation.

5. Since its engagement by the Debtors on February 1, 2016, PJT has advised the Debtors and in connection with their efforts to explore restructuring alternatives. During this time, PJT has become intimately familiar with the Debtors' businesses, affairs, assets and contractual agreements. PJT has worked closely with the Debtors and their management to analyze the Company's financial positions and to assist the Debtors in evaluating various restructuring options. As a result of the prepetition work performed on behalf of the Debtors, PJT has acquired significant knowledge of the Debtors' financial affairs, debt structure, business operations, capital structure, key stakeholders, financing documents, and other related material information. PJT performed diligence on the Debtors' business plan and utilized the business plan to forecast and analyze the Debtors' cash flows, debt capacity and liquidity, as well as perform valuation analysis. The business plan and underlying financial models enabled PJT and the Debtors to evaluate restructuring alternatives. PJT was then responsible for assisting management in presenting the business plan and a restructuring framework to various financial advisors, legal advisors and various creditor groups. PJT was also active in the negotiation of a potential restructuring with the various creditor groups and helped lead negotiations, which resulted in the execution of the Restructuring Support Agreement. In addition, PJT participated in numerous meetings of the Debtors' Board of Directors throughout its retention. If the Application is approved, PJT's professionals will continue to work closely with the Debtors' management and other professionals throughout the reorganization process. Accordingly and as a result of PJT's prepetition representation of the Debtors, I believe that PJT has the necessary

background to deal effectively and efficiently with the many financial issues and problems that may arise in the context of the Debtors' Chapter 11 Cases.

### Services to be Provided

6. If the Application is approved, PJT, in its capacity as the Debtors' investment banker, will render the following investment banking services pursuant to the Engagement Agreement and as requested by the Debtors:

   a. assist in the evaluation of the Debtors' businesses and prospects;

   b. assist in the development of the Debtors' long-term business plan and related financial projections;

   c. assist in the development of financial data and presentations to Holdings's Board of Directors, various creditors and other third parties;

   d. analyze the Debtors' financial liquidity and evaluate alternatives to improve such liquidity;

   e. analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

   f. provide strategic advice with regard to restructuring or refinancing the Debtors' Obligations;

   g. evaluate the Debtors' debt capacity and alternative capital structures;

   h. participate in negotiations among the Debtors and their creditors, suppliers, lessors and other interested parties;

   i. value securities offered by the Debtors in connection with a Restructuring;

   j. advise the Debtors and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

   k. assist in arranging financing for the Debtors, as requested;

   l. perform and provide a valuation of the Debtors;

   m. provide expert witness testimony concerning any of the subjects encompassed by the other investment banking services; and

   n. provide such other advisory services as are customarily provided in

5

connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed.

7. To perform these services in a cost-effective manner, PJT will endeavor to coordinate all of its services to the Debtors with the other professionals retained in the Chapter 11 Cases so as to minimize (and, wherever possible, avoid) any unnecessary duplication of services.

**Professional Compensation**

8. In consideration of the services to be provided by PJT, and as summarized in the Application and more fully described in the Engagement Agreement, the Debtors and PJT have agreed that PJT shall, in respect of its services, be compensated under the Fee Structure.

9. The Fee Structure is consistent with PJT's typical fee for work of this nature. The fees are set at a level designed to compensate PJT fairly for the work of its professionals and assistants and to cover fixed and routine overhead expenses. It is PJT's policy to charge its clients for all disbursements and expenses incurred in the rendition of services.

10. The Fee Structure is comparable to those generally charged by investment banking firms of similar stature to PJT and for comparable engagements, both in and out of court, and reflect a balance between a fixed, monthly fee and a contingency amount that is tied to the consummation and closing of certain transactions as contemplated in the Engagement Agreement.

11. The Engagement Agreement was negotiated at arm's length and in good faith, and I believe that the provisions contained therein are reasonable terms and conditions of PJT's employment by the Debtors.

12. With respect to the Engagement Agreement's indemnification provisions, as summarized in the Application and more fully described in **Attachment A** of the Engagement

Agreement, unlike the market for other professionals that a debtor may retain, indemnification is a standard term of the market for investment bankers. The indemnity, moreover, is comparable to those generally obtained by investment banking firms of similar stature to PJT and for comparable engagements, both in and out of court. The Engagement Agreement's indemnification and contribution provisions were fully negotiated by the Debtors and PJT at arm's-length and in good faith, and I respectfully submit that these indemnification and contribution provisions of the Engagement Agreement are reasonable, subject to the modifications set forth in the Proposed Order.

13. Other than as set forth above, there is no proposed arrangement between the Debtors and PJT for compensation to be paid in these cases. PJT has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under Bankruptcy Code section 504(b)(1). PJT is willing to be retained by the Debtors as its investment banker and will make appropriate applications to this Court pursuant to the Bankruptcy Code for compensation and reimbursement of out-of-pocket expenses, all in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any orders of this Court.

14. PJT has requested, pursuant to Bankruptcy Code section 328(a), payment of its fees on a fixed-rate and/or fixed-percentage basis. It is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys. PJT's restructuring professionals, when formally retained in chapter 11 cases, and when required by local rules, do, and in these cases will, keep time records in half-hour increments describing their daily activities and the identity of persons who performed such tasks. PJT will also supplement this information with a list of the non-restructuring professionals who assist the restructuring

7

department on this matter but who do not, as a matter of general practice, keep records in the same manner.

15. According to the Debtors' books and records, the Debtors paid PJT $525,000 for monthly fees and $34,350.72 for expenses during the 90-day period before the Petition Date. In February 2016, PJT also received a prepetition expense advance of $100,000 (the "**Prepetition Expense Payment**"). As of the time of the filing of this Application, PJT was unable to complete the final prepetition reconciliation of its actual expenses against the Prepetition Expense Payment. In the event that PJT's expenses are less than the Prepetition Expense Payment, PJT will credit the Debtors for any overage. However, in the event that the actual expenses exceed the Prepetition Expense Payment, PJT will waive its rights to any deficiency.

### No Duplication of Efforts

16. PJT is aware that the Debtors have also sought to retain Ernst & Young LLP, to assist the Debtors with preparation of certain first day motions and tax matters, and Alvarez & Marsal North America, LLC, to assist primarily with the preparation of the Debtors' liquidation analysis and Budget.[4] PJT has worked with the Debtors and their other advisors to ensure that there will be no duplication of efforts and will continue to do so throughout the course of these Chapter 11 Cases.

### PJT's Disinterestedness

17. PJT has performed a conflict search and based on the results, to the best of my knowledge, neither I, PJT, nor any member or employee thereof, insofar as I have been able to

---

[4] As defined in the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 and Fed. R. Bankr. P. 2002, 4001, 6003, 6004 and 9014 for Interim and Final Orders (I) Authorizing the Debtors to Obtain Senior Secured, Superpriority, Postpetition Financing, (II) Authorizing Use of Cash Collateral, and (III) Granting Liens and Superpriority Claims, (IV) Granting Adequate Protection to Prepetition Secured Parties and (V) Scheduling a Final Hearing* (ECF No. 4).

ascertain, is an insider of the Debtors, nor has any connection with the Debtors, their creditors, or other parties-in-interest as reasonably known to us prior to completion of our more detailed conflict search, except as described further in the Cuminale Declaration.

18. As part of its diverse practice, PJT appears in numerous cases, proceedings and transactions involving many different professionals, including attorneys, accountants, investment bankers, and financial consultants, some of which may represent claimants and parties in interest in the Chapter 11 Cases. In addition, PJT has in the past and will likely in the future be working with or against other professionals involved in this case in matters unrelated to this case. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors' estates herein, and none are in connection with these cases.

19. James Cuminale, General Counsel of PJT (in such capacity, the "**General Counsel**"), who is responsible for, among other things, supervising the compliance function at PJT. As part of that job, he maintains, for purposes of monitoring and avoiding conflicts of interest, a list (the "**Restricted List**") of companies with which PJT is doing business, either as an advisor or with respect to which PJT is in possession of material nonpublic information or has entered into a confidentiality agreement. The General Counsel and his staff have received a list of parties in interest provided by the Debtors (the "**Parties-In-Interest**") and has compared this to PJT's Restricted List to determine the existence of any possible conflicts (the "**Conflict Check**"). The results of this Conflict Check are disclosed in the Cuminale Declaration.

20. PJT does not believe that any of its involvement with any of the parties included in the Parties-In-Interest list will adversely affect the Debtors in any way. PJT does not believe

9

that any potential relationship it may have with any of the Parties-In-Interest would interfere with or impair PJT's representation of the Debtors.

21. Given the large number of parties in interest in the Chapter 11 Cases, despite the efforts to identify and disclose PJT's relationships with the Parties-In-Interest, I am unable to state with absolute certainty that every client relationship or other connection has been disclosed in this Declaration. PJT, therefore, has informed the Debtors that PJT will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, PJT will promptly file a supplemental declaration with the Court as required by Local Rule 2014-1(a).

Executed on: August 1, 2016

By: /s/ Timothy R. Coleman<br>
Timothy R. Coleman<br>
Partner<br>
PJT Partners, LP