UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re

HALCÓN RESOURCES CORPORATION,
*et al.,*

Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Chapter 11
Case No. 16-11724 (BLS)

Jointly Administered

Objection Deadline: Aug. 29, 2016 at 5:00 p.m.
Hearing Date:  Sept. 8, 2016 at 10:30 a.m.
Docket #16

LIMITED OBJECTION OF THE U.S. SECURITIES AND EXCHANGE
COMMISSION TO APPROVAL OF THE DISCLOSURE STATEMENT AND
CONFIRMATION OF JOINT PREPACKAGED
PLAN OF HALCÓN RESOURCES CORPORATION, *et al*.,
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The U.S. Securities and Exchange Commission ("Commission"), a statutory party

to these proceedings[1] and the federal agency responsible for regulating and enforcing

compliance with the federal securities laws, objects to approval of the disclosure

statement ("Disclosure Statement") and confirmation of the Joint Prepackaged Plan

("Plan") of Halcón Resources Corporation ("Halcón") and its affiliated debtors

(collectively, "Debtors"), dated June 20, 2016.  In support of its objection, the

Commission respectfully states as follows:[2]

## INTRODUCTION

The Commission objects to the third party releases contained in the Plan on two

grounds.  First, to the extent the third party releases purport to release direct claims

---

[1]  As a statutory party in corporate reorganization proceedings, the Commission "may raise and may appear and be heard on any issue[.]"  11 U.S.C. § 1109(a).

[2]  In accordance with Rule 9013-1(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Commission does not consent to the entry of a final order by the Court to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

between non-debtor parties, the releases have no impact on the assets or administration of the Debtors' estates and the Court therefore lacks subject matter jurisdiction to approve them.  Second, as a general matter, nonconsensual non-debtor third party releases contravene Section 524(e) of the Bankruptcy Code, which provides that only debts of the debtor are affected by Chapter 11 discharge provisions.  Such releases have special significance for public investors because they may enable non-debtors to benefit from a debtor's bankruptcy by obtaining their own releases with respect to past misconduct, including violations of the federal securities laws or breaches of fiduciary duty under state law.  While such releases may be allowed in exceptional circumstances, those circumstances are not present here.

Thus, the releases should be deleted from the Plan or the Plan should be amended to state that bondholders, preferred shareholders, and general unsecured creditors are not bound by the release provisions.  Alternatively, if the Court determines that unimpaired creditors are bound by the release provisions, the Commission requests that the Court carve out the Commission from the Non-Debtor Release (as defined herein).  The Commission also requests that the Debtors confirm that common shareholders are not subject to the third party releases.

## BACKGROUND

On July 27, 2016, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware and are seeking simultaneous approval of their Plan and Disclosure Statement.

Halcón is a public company focused on the acquisition, production, exploration and development of oil and gas assets in the United States, and its common stock trades

on the New York Stock Exchange under the symbol "HK".  Disc. St. at 14 & 55.

Halcón's capital structure is also comprised of (i) $812 million in privately placed second

lien notes; (ii) $1.2 billion in publicly held third lien notes; (iii) $650 million in publicly

held unsecured notes; (iii) 222,454 shares of publicly offered preferred stock; (iv) one

privately held convertible note in the amount of $289.7 million; and (v) secured bank

debt. *Id.* at 14-18.

Prior to the petition date, the Debtors entered into a restructuring support agreement

regarding the Plan with holders of the Debtors' senior secured third lien notes, senior

secured second lien notes, senior unsecured notes, senior unsecured convertible note, and

preferred stock. *Id.* at 20-21; Plan, Ex. A.  The Debtors solicited votes prepetition on their

Plan from the third lien noteholder creditors, the unsecured noteholder creditors, the

preferred shareholders, and the convertible noteholder creditor, whose classes all voted to

accept the plan. *Debtors' Motion for Entry of Scheduling Order (DKT #7) at 4-5.*  Common

shareholders were deemed to have rejected the plan and their votes were not solicited.  *Id.* at

11.

The Plan contains a third party release (the "Non-Debtor Release") of the

"Released Parties"[3] which binds "(i) the holders of all Claims or Interests who vote to

---

[3] The Released Parties are defined as "(a) the Debtors; (b) the Revolving Credit Agreement
Agent; (c) the Revolving Credit Agreement Lenders; (d) the other Secured Parties under and as
defined in the Revolving Credit Agreement; (e) the Consenting Third Lien Noteholders; (f) the
Consenting Unsecured Noteholders; (g) the Convertible Noteholder; (h) the Consenting Preferred
Holders; (i) the Third Lien Note Trustee and Third Lien Note Collateral Agent; (j) the Unsecured
Note Trustee; and (k) with respect to each of the foregoing entities in clauses (a) through (j), such
entities' predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds,
and all of their respective current and former officers, directors, principals, shareholders,
members, partners, employees, agents, advisory board members, financial advisors, attorneys,
accountants, investment bankers, consultants, representatives, management companies, fund
advisors and other professionals, and such Persons' respective heirs, executors, estates, servants
and nominees."  Plan at 10.

accept the Plan, (ii) the holders of Claims or Interests that are Unimpaired under the Plan, (iii) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, and (iv) the holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein" (the "Releasing Parties").  Disc. St. at 44-45; Plan at 35-36.[4]  The Non-Debtor Release releases all claims and other obligations other than "claims or causes of action arising out of or related to any act or omission that is a criminal act or constitutes fraud, gross negligence or willful misconduct."  Disc. St. at 45; Plan at 36.

## **DISCUSSION**

### I.    The Court Lacks Subject Matter Jurisdiction to Approve the Non-Debtor Release

Bankruptcy courts are courts of limited jurisdiction.  28 U.S.C. § 1334 confers upon the district courts "jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  28 U.S.C. §157(a), in turn, permits district courts to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to a bankruptcy court.  28 U.S.C. §157(a).

"'Arising under' refers to those causes of action specifically created by the bankruptcy statute.  'Arising in' cases involve the administration of the bankruptcy estate. A 'related to' case does not invoke a substantive right under the bankruptcy statute and exists outside of bankruptcy, but its outcome could conceivably have an effect on the

---

[4] Common shareholders were deemed to have rejected the Plan and were not entitled to vote. Because the Non-Debtor Release applies only to creditors and equity holders who are unimpaired or whose votes were solicited, it appears that common shareholders are not subject to the release. However, the Commission would request that the Debtors confirm that common shareholders are not subject to the Non-Debtor Release.

bankruptcy estate." *Mellon Trust Co., NA v. Becker (In re Lower Bucks Hosp.)*, 488 B.R. 303, 312-13 (E.D. Pa 2013) (citing *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261 (3d Cir. 1991); *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984)), *aff'd*, *In re Lower Bucks Hosp.*, 571 Fed. App'x 139 (3d Cir. 2014).

Here, the purported Non-Debtor Release of direct claims by the Releasing Parties against the Released Parties are not creatures of the bankruptcy statute nor do they involve administration of the bankruptcy estate.  Accordingly, in order for the Court to have jurisdiction to approve them they must be "related to" the bankruptcy case.

In *Pacor, Inc. v. Higgins*, the Third Circuit articulated the following test for "related to" jurisdiction:

> An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor*, 743 F.2d at 994.  In *Pacor*, the Third Circuit held that an action between non-debtors that "is a mere precursor to the potential third party claim for indemnification" against a debtor is not "related to" the debtor's bankruptcy case.  *Pacor*, 743 F.2d at 994; *see also* In re *Combustion Eng'g, Inc.*, 391 F.3d 190, 232 (3d Cir. 2004) (holding that non-derivative asbestos liability suits against two non-debtors whose contributions were essential to the debtor's reorganization were nonetheless *not* related to the debtor's bankruptcy case because "any indemnification claims against Combustion Engineering [by the non-debtors] . . . would require the intervention of another lawsuit to affect the bankruptcy estate").

Applying the Third Circuit's test for "related to" jurisdiction, the court in *Becker* concluded that it had jurisdiction over non-debtor releases by certain of the debtor's bondholders against the indenture trustee for the bonds.  Significantly, in *Becker*, the

bondholders had sued the indenture trustee and that suit gave rise to an indemnification obligation by the debtor "that had an immediate effect on [the debtor's] bankruptcy estate when it triggered [the indenture trustee's] claim for defense costs against [the debtor]." *Id.* at 312.  However, the district court made clear that mere "potential impact upon the debtor's estate" in the form of "contingent indemnification liability" is insufficient to invoke "related to" jurisdiction.  "Only when the right to indemnification is clearly established and has accrued upon the filing of a civil action is the proceeding deemed 'related to' the bankruptcy case." *Id.* at 314.  *See also In re Johns-Manville Corp.*, 600 F.3d 135, 152 (2d Cir. 2010) ("A bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the *res* of the bankruptcy estate.").

Here, there is no evidence in the Disclosure Statement that the Non-Debtor Release of direct claims against the Released Parties would have any impact on the assets or administration of the Debtors' estates.  Even if one or more of the Released Parties were to have a contingent indemnification claim against the Debtors, there is no evidence that any such right has accrued.[5]  Accordingly, under the holdings of *Pacor* and *Combustion Eng'g*, the Court lacks jurisdiction to approve the Non-Debtor Release.

Moreover, any future potential indemnification claim by any of the Released Parties against the reorganized Debtors would have no impact on the Debtors' estates and would not be "related to" the bankruptcy cases because under the Plan general unsecured claims ride through bankruptcy unimpaired and will be paid by the reorganized Debtors in the ordinary course of business with no impact on any other creditors or interest holders.  *See In re Resorts Int'l, Inc.*, 372 F.3d 154, 166-167 (3d Cir. 2004) ("related to" jurisdiction over a

---

[5]  According to the Disclosure Statement, the only litigation pending against the Debtors is litigation arising in the ordinary course of business.  Disc. St. at 24.

post-confirmation dispute requires a showing of a "close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter"; Third Circuit held that action by post-confirmation litigation trustee against accounting firm for malpractice was not "related to" the debtor's bankruptcy case notwithstanding the fact that it would affect the former creditors as litigation trust beneficiaries).   Accordingly, the Non-Debtor Release is not related to the Debtors' bankruptcy cases and the Court lacks subject matter jurisdiction to approve these third party releases between non-debtors.

**II.      The Non-Debtor Release Is Not Consensual and Does Not Meet the Standard for Nonconsensual Releases**

A.   The Non-Debtor Release is Not Consensual

Section 524(e) of the Bankruptcy Code addresses the scope of a bankruptcy discharge and states, in relevant part, that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).   The Bankruptcy Code contemplates that a discharge only affects the debts of those submitting to its burdens.   *Gillman v. Continental Airlines (In re Continental Airlines),* 203 F.3d 203, 211 (3d Cir. 2000).   Nonetheless, the case law in this District has held that third party releases of non-debtors may be allowed if they are consensual.[6]   *See In re Washington Mutual, Inc.,* 442 B.R. 314, 352 (Bankr. D. Del. 2011), *citing In re Coram Healthcare Corp.,* 315 B.R. 321, 335 (Bankr. D. Del. 2004); *see also In re Zenith Electronics Corp.,* 241 B.R. 92, 111 (Bankr. D. Del. 1999); *In re Arrowmill Dev. Corp.,* 211 B.R. 497, 506-07 (Bankr. D.N.J. 1997) (court held that

---

[6] The fact that a third party non-debtor release might be consensual does not, in and of itself, confer subject matter jurisdiction to approve the release. *Combustion Eng'g,* 391 F.3d at 228 ("Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization.").

debtors must give creditors and interest holders an opportunity to individually consent to the release, apart from voting on the plan.).

In the Commission's view, releases should be considered to be consensual only if the affected parties provided affirmative consent beyond simply voting in favor of the plan.  Here, the solicitation process did not provide bondholders, preferred shareholders or unsecured creditors with a mechanism to consent separately to the releases because both creditors who are unimpaired under the Plan and other creditors and preferred shareholders who vote to accept the Plan are deemed to have consented to the third party releases.

With respect to opt-out provisions, bankruptcy courts in this Circuit have generally held that an opt-out mechanism is not sufficient to support a third party release, particularly with respect to those who are not entitled to vote or do not return a ballot. *See Washington Mutual*, 442 B.R. at 355 ("[f]ailing to return a ballot is not a sufficient manifestation of consent to a third party release"); *In re Exide Techs.*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (court found non-debtor releases consensual and binding only on creditors and interest holders voting to accept the plan).  While this court held that an opt-out mechanism for impaired creditors entitled to vote was sufficient in a non-public company case, it rejected a "hard and fast rule" with respect to affirmative consent and noted that some courts take "a more flexible approach in evaluating whether a third party release was consensual[.]"  *In re Indianapolis Downs, LLC*, 486 B.R. 286 at 305 (Bankr. D. Del. 2013).  *See also In re Spansion, Inc.*, 426 B.R. 114, 144-45 (Bankr. D. Del. 2010) (court found releases consensual only with respect to parties voting to accept the Plan,

and unimpaired creditors deemed to have accepted the Plan).  This flexible approach should reflect the facts and circumstances of the particular case.

Here, bondholders and preferred shareholders who vote to reject the Plan must also specifically opt out of the releases in order to not be bound by them, rather than being provided a mechanism  to affirmatively opt in to the releases.  More troubling, bondholders and preferred shareholders who abstain from voting are deemed to have consented to the releases, meaning that investors who may never have seen the Plan could lose their rights to bring claims.  Under these circumstances, bondholders, preferred shareholders and unsecured creditors did not affirmatively consent to the releases.

B.  Because the Non-debtor Third Party Releases are Not Fair to the Bondholders, Preferred Shareholders, and Unsecured Creditors, Not Necessary to the Reorganization, and Not Supported by the Facts of this Case, they Do Not Meet the Standard for Nonconsensual Releases

The Third Circuit has held that allowing nonconsensual non-debtor releases is an "extraordinary" remedy.  *See Continental Airlines*, 203 F.3d at 217.  If the Debtors seek to bind, without their consent, (i) bondholders and preferred shareholders who vote in favor of the plan; (ii) bondholders and other general unsecured creditors whose claims are not impaired under the plan; (iii) bondholders and preferred shareholders whose votes on the plan are solicited but who do not return a ballot; and (iv) bondholders and preferred shareholders who vote to reject the plan unless they affirmatively opt out of the releases, they would need to show that the impacted classes received fair consideration and that the releases are necessary to their reorganization.  *See Id.* at 215[7]; *In re Spansion, Inc.*, 426

---

[7]  In *Continental Airlines*, the Third Circuit rejected a plan provision that released and permanently enjoined shareholder lawsuits against present and former officers and directors who were not in bankruptcy. The court held that the release and injunctive provisions fell squarely into

B.R. 114, 144-145 (Bankr. D. Del. 2010).  In particular, the Third Circuit in *Continental*

focused on whether the releases were given in exchange for reasonable financial

consideration, separate and apart from the consideration to which the class was entitled as

creditors under the Plan.  *Continental Airlines, 203 F.3d* at 215.  Courts in Delaware

consider a number of factors, including whether: "(i) the non-consensual release is

necessary to the success of the reorganization; (ii) the releasees have provided a critical

financial contribution to the debtor's plan; (iii) the releasees' financial contribution is

necessary to make the plan feasible; and (iv) the release is fair to the non-consenting

creditors, i.e., whether the non-consenting creditors received reasonable compensation in

exchange for the release."  *In re Spansion, Inc.*, 426 B.R. at 144-145.  Here, the

distributions to bondholders, preferred shareholders, and other general unsecured

creditors are simply a function of the mechanics of the Plan, not a payment in exchange

for the releases.

When applying the *Continental* factors to the facts of this case, it is clear that the

release provisions contained in the Non-Debtor Release contravene Bankruptcy Code

Section 524(e) and applicable Third Circuit law.  There is no evidence that consideration

was provided specifically in exchange for the release of claims against non-debtors or

that all of the non-debtors made contributions to the Plan. Therefore, the Debtors have

not shown that the Non-Debtor Release is fair to the Debtors' bondholders, preferred

shareholders, or general unsecured creditors.  Moreover, there has been no showing that

the Non-Debtor Release is necessary to the Debtors' reorganization.  Based on the above,

---

the Section 524(e) prohibition because they amounted to "nothing more than a lockstep discharge
of non-debtor liability."  *Continental Airlines*, 203 F.3d at 217.  But the Court held open the
possibility that "there are circumstances under which [it] might validate a nonconsensual release
that is both necessary and given in exchange for fair consideration." *Id.* at 214, n. 11.

it is the Commission's position that the Non-Debtor Release should be stricken from the

Plan or the Plan should be amended to provide that bondholders, preferred shareholders,

and general unsecured creditors are not bound by the Non-Debtor Release.

     C.   <u>The Non-Debtor Release Cannot Apply to the Commission</u>

If the Court determines that unimpaired creditors are deemed to have consented to

the Non-Debtor Release, the Commission requests that the Court carve out any Commission

claims from the Non-Debtor Release. Any potential claim by the Commission might be

classified as a general unsecured claim subject to the Plan and the releases in light of the

broad definition of "claim" in the Bankruptcy Code. The Plan provides that claims of

general unsecured creditors, including any potential claim by the Commission, are

unimpaired and will be treated in the ordinary course of business as if the bankruptcy

cases had not been filed. Disc. St. at 30; Plan at 19. Such unimpaired creditors are

conclusively presumed to have accepted the plan and to have consented to the Non-

Debtor Release without any opportunity to opt out. Disc. St. at 44-45; Plan at 35-36.

Accordingly, the Plan might be interpreted to bind the Commission to the Non-Debtor

Release even if the staff subsequently learns of pre-confirmation conduct that could give

rise to a Commission claim under the federal securities laws.

Although this court has previously held in *Indianapolis Downs* that a non-debtor

release by unimpaired creditors who are not entitled to vote can be deemed consensual,

that case did not involve a governmental unit enforcing its police and regulatory powers

against non-debtor third parties who may have liability independent of the debtor. The

rationale of *Indianapolis Downs* simply does not apply to the Commission, which has

standing to assert claims, including claims based on ordinary negligence, against

11

individuals for their own violations irrespective of any liability of the Debtors. *See, e.g.,*
*SEC v. Smart*, 678 F.3d 850, 857 (10th Cir. 2012) (action charging each of LLC and its
principal for securities laws violations including for fraud in the offer or sale of securities
in violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933, which
requires only a showing of negligence).

## CONCLUSION

In this case the Court does not have subject matter jurisdiction to approve the
Non-Debtor Release because it has no conceivable impact on any assets of the estates or
administration of the estates.  If the Court does determine that it has subject matter
jurisdiction, the Court should nonetheless strike the Non-Debtor Release from the Plan
because bondholders, preferred shareholders, and general unsecured creditors did not
consent to the Non-Debtor Release, and are not receiving anything in exchange for the
Non-Debtor Release apart from what they are entitled to as a class under the Plan.  If the
Court determines that unimpaired creditors are bound by the Non-Debtor Release, the
Commission requests that the Court carve out the Commission from the Non-Debtor
Release.  The Commission also requests that the Debtors confirm that common shareholders
are not subject to the Non-Debtor Release.

Dated:  New York, New York
        August 29, 2016

                        UNITED STATES SECURITIES AND
                        EXCHANGE COMMISSION

                        By:/s/Neal Jacobson
                            Neal Jacobson
                            New York Regional Office
                            Brookfield Place
                            200 Vesey St., Suite 400
                            New York, New York 10281
                            Phone: (212) 336-0095

Fax: (212) 336-1348
Jacobsonn@sec.gov

Of Counsel: Alistaire Bambach
            Morgan Bradylyons
            Therese Scheuer